GCD8BACC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

ORRIN BACOTE,

              Plaintiff,

          v.                   16 Cv. 1599 (GHW)

RIVERBAY CORPORATION, et al.,

              Defendants.

------------------------------x

                          December 13, 2016
                          3:00 p.m.

Before:

              HON. GREGORY H. WOODS

                         District Judge

                APPEARANCES

COHEN & FITCH LLP
     Attorneys for Plaintiff
BY:  GERALD M. COHEN
     ILYSSA S. FUCHS

ARMIENTI DeBELLIS GUGLIELMO & RHODEN, LLP
     Attorneys for Defendants
BY:  HORACE O. RHODEN
     VANESSA M. CORCHIA

GCD8BACC

```
 1              (Case called)

 2              THE DEPUTY CLERK:  Counsel, please state your

 3    appearances.

 4              MR. COHEN:  Gerald Cohen with Ilyssa Fuchs for Mr.

 5    Bacote, the plaintiff.  Good afternoon, your Honor.

 6              THE COURT:  Good afternoon.

 7              MR. RHODEN:  Good afternoon, your Honor.  Horace

 8    Rhoden, for the defendants, with Vanessa Corchia from my

 9    office.

10              THE COURT:  Thank you very much.  Good afternoon.

11              So we are here for a conference with respect to a

12    number of discovery related disputes that have been brought to

13    my attention by a letter dated December 9.  I would like to

14    take up those issues in turn, beginning with the plaintiff's

15    request that I compel the deposition of one of the defendants,

16    Mr. Leath.

17              Let me hear from you first, Mr. Cohen.  What is the

18    request and what is the basis for the request?

19              MR. COHEN:  Your Honor, just by way of background, as

20    I detailed in the letter, Mr. Leath, when he was originally

21    disclosed to plaintiffs, shortly before the last discovery

22    deadline, formally with a supplemental disclosure, we moved to

23    immediately amend the complaint to add Mr. Leath.

24              I asked defense counsel if he was representing Mr.

25    Leath.  He said, as he said with all the other defendants, I
```

1   don't know, I can't tell you, I'm not sure.  He said,

2   potentially Riverbay might, but he no longer works there,

3   here's the last known address.

4          Per your Honor's order, I immediately filed an amended

5   complaint, literally the day after your order was issued.  We

6   used a private investigator to track down Mr. Leath because I

7   couldn't find him with the last known address.  We couldn't

8   find him with a regular process server.  After some time we

9   were able to finally serve Mr. Leath.

10          It turns out that Mr. Leath and my client apparently

11   had worked together at the Department of Corrections many years

12   ago, and Mr. Leath called my client and said, What's this

13   about?  And my client said, I remember seeing you at the

14   precinct.  I didn't know you were actually there during the

15   incident.  In any case, I didn't even know you were going to be

16   named as a defendant.  I am learning of it as you are.

17          So my client calls me and says, He wants to speak to

18   you.  I said, I can't speak to him if he is represented by

19   counsel.  He said, He is not represented by counsel, he wants

20   to speak to you.  So I said, Listen, you can give him my phone

21   number, but I can't really speak to him until I confirm that he

22   is not represented by counsel.

23          So Mr. Leath gives me a call.  I tell him, Before we

24   say anything --

25          THE COURT:  Before you begin, in your description of

GCD8BACC

1 | your client's call with Mr. Leath, you did not reference any

2 | comments made by your client to Mr. Leath about his dismissal

3 | from the case.  There is a reference to such a comment being

4 | made to him in the joint letter.  Can you please address that

5 | before you move on?

6 |       MR. COHEN:  I never once --

7 |       THE COURT:  Not you; rather, your client.

8 |       MR. COHEN:  My client never once -- well, I wasn't

9 | privy to that conversation.  As far as I understand, my client,

10 | when I spoke to him, said, Why did you name him?  I told him he

11 | was the one that accompanied you to the van.  And he said to

12 | me, Well, I was beat up in the van.  I said, Well, do you think

13 | it was him?  He said, I'm not sure it was him, my eyes were so

14 | full of Mace I don't know who it was.  I said, I am telling you

15 | that the other officers mentioned that he accompanied you to

16 | the van.  And that was my understanding.

17 |       I don't know what my client said to Mr. Leath, the God

18 | honest truth.  I did not ever tell Mr. Leath that I was going

19 | to dismiss the case if he spoke to me.

20 |       THE COURT:  I am sorry for taking you out of order.

21 | Please proceed.

22 |       MR. COHEN:  Thank you.

23 |       Before I ever spoke to him about any incident, other

24 | than to tell him, look, I represent Mr. Bacote, I said, I have

25 | to write you an e-mail; I want to explain to you the risks of

GCD8BACC

speaking to me.  I detailed the risks in writing.  I said,
Listen, you have to respond to me and say you fully understand
and you wish to continue to speak to me.  He said to me over
the phone, when I told him that, I don't believe I did anything
wrong; I am confident you're going to dismiss the case against
me.  He jumped to that conclusion on his own.  So go ahead and
send your e-mail and then we can talk.  So I had a conversation
with Mr. Leath shortly after he responded to my e-mail.

My issue here is at that time, when I spoke to Mr.
Leath, he told me, I am starting a new job the 10th.  He also
told me he has no intention of being represented by Riverbay;
he doesn't like the people at Riverbay, and he wanted to go
forward without Riverbay, and he is so confident that we are
going to drop the case because he was trying to help my client
out.  Those were his words to me.

So I say, OK, we need to get you on the record; we
need to have a deposition.  What dates are you free?  He gave
me a couple of dates, and I looked at my calendar.  I took
those dates.  I immediately, the next day, served him with a
notice of deposition, provided it to Mr. Rhoden, and asked Mr.
Rhoden if that date was free.

As is per the case with dealing with Mr. Rhoden
throughout this entire litigation, he did not respond to me for
quite a while.  I kept asking him if the 7th was available.
Then I learned he had issued -- a week or two later he had

GCD8BACC

1    issued a bunch of depositions to nonparty witnesses for dates

2    that he never consulted me about, which I was also upset about

3    because I didn't learn about them until the witnesses started

4    calling me and said, I got noticed for a deposition.  There was

5    no indication that he was going to serve them for those dates.

6    He didn't consult me if I was available.  It has been par for

7    the course for this litigation.  There is no consideration for

8    my time.

9            THE COURT:  I'm sorry.  Were you served with copies of

10   the notices of deposition?

11           MR. COHEN:  After they were served.

12           THE COURT:  Thank you.

13           MR. COHEN:  After I wrote a long e-mail about how, in

14   general practice in the federal rules, to serve notices of

15   deposition.  He pointed out that he wasn't asking for documents

16   so they don't have to be served pursuant to Rule 45.  I believe

17   that's technically the rule, but I know, as a matter of

18   courtesy, I know when I have issued deposition notices or

19   subpoenas, I reach out to the other party and make sure that

20   they are available, and that was not done.  That consideration

21   was not done, as has been really par for the course for this

22   entire litigation with Mr. Rhoden.

23           Then thereafter he said one of the subpoenas he issued

24   was for a nonparty witness named Natalie Jardine for the 7th.

25   I got in touch with Ms. Jardine -- actually, I got in touch

GCD8BACC

1   with my client, who was in touch with Ms. Jardine, who said she

2   is not going to be in town on the 7th.  So I repeatedly

3   e-mailed Mr. Rhoden and said, Listen, I know she is not

4   available that date.  Could we keep the 7th because you are

5   available that date, I know you are because you issued a

6   subpoena for that date, let's keep that date for Mr. Leath so

7   we can get this discovery done.  We are really getting close to

8   the deadline.

9            Again, there was no response for quite a bit.  Finally

10  he said, if you could get me another date with Ms. Jardine, I

11  will agree to change the date for Mr. Leath.  I could not get

12  in touch with Ms. Jardine.  Apparently, he had finally served

13  the subpoena on her and was able to get a new date.  And we

14  confirmed, I think around November 28, 29, the date for Mr.

15  Leath.  That communication is included in the exhibits that I

16  submitted to the Court.

17           Mr. Rhoden then asked me if I had any notes -- first,

18  we had a conversation with this Court, and he explained that I

19  had spoken with Mr. Leath.  He had said to your Honor that he

20  wasn't representing him yet.  He doesn't know if he is

21  representing him.  Mr. Leath hadn't done whatever he needed to

22  do to get representation.  That continued.  It wasn't until

23  December 5 that I actually got a notice by phone call from Mr.

24  Rhoden that he was actually going to be representing him at the

25  deposition already scheduled for the 7th.

1          He asked me on that conversation whether I had any

2     written notes of my conversation, at least that's what I

3     understood.  I said I had no written notes of our conversation.

4     Then he said, I am going to follow up in writing.  I am going

5     to confirm the date of the 7th and other deposition dates that

6     we discussed.  In that e-mail, he asked me if there were any

7     statements, and I did have a recording of Mr. Leath, and I

8     provided it on the next business day, I think -- that day, the

9     5th, and the deposition was scheduled for the 7th.

10          There was one communication done the next day, I think

11     on the 6th, around 4:00 in the afternoon.  No indication that

12     the 7th was not going.  He asked me if there was any more of

13     the recording.  I said, that's all I captured in our

14     conversation.  There was apparently some missing parts of the

15     recording, the initial part and the ending part.  I am not used

16     to dealing with recordings because I don't generally do them.

17     I did consult with the ethical opinion that he cited in his

18     paper before I did any recording, and I am fully aware of the

19     rules and I believe the narrow exception under which you can

20     record someone.

21          THE COURT:  Just on this point, would you mind telling

22     me what the basis was for your decision to record that

23     conversation?

24          MR. COHEN:  Yes.  After advising this defendant that

25     he was an adversary, that our interests are not aligned, I am

GCD8BACC

only representing plaintiff, I warned him completely of those

facts.  The decision from the bar that Mr. Rhoden had cited

says in situations -- I am going to quote right from it.  It

says, In situations involving the investigation of ongoing

criminal conduct or other significant misconduct that those

questions will be often easy to answer in the affirmative.  I

am referring to whether you can record them without giving

notice.  And they said, Or when an attorney has reasonably -- a

witness may be willing to commit perjury in either a civil or

criminal matter.

This is a civil rights case, your Honor.  This

particular defendant is charged with either being involved in

beating my client while he was in handcuffs or present while

other officers were beating my client while he was in

handcuffs.  I think this is a very significant matter in terms

of this case.  I think it actually has criminal implications.

There are officers who have been prosecuted for far less.  I

believe, because he was an adverse party, if he were to change

his testimony, which I believe is highly likely now that he is

being represented by Mr. Rhoden, I would have something to

impeach him with.

So I know there is a narrow exception under which an

attorney can record a conversation.  I believe this squarely

fits in that narrow exception, your Honor.  I consulted with

this particular opinion by the Bar Association where they

GCD8BACC

1   overturned the general ban on attorneys recording witnesses.

2   This is not a common occurrence in my practice.  I do not

3   record my conversations.  In fact, that is the reason why I was

4   missing part of the recording, because I am not even sure -- I

5   wasn't very familiar with the process when I was doing it, and

6   I didn't know when the witness would be calling me.  So that's

7   why there is something missing at the beginning, and I think at

8   the end there were some technical difficulties that I had.

9       The entirety of the recording that I captured I turned

10  over to Mr. Rhoden, which, by the way, I don't believe I was

11  required to, but because the discovery deadline was

12  approaching, I didn't feel like it was proper to wait 30 days

13  from the written request.

14      In any case, I did respond to Mr. Rhoden's request

15  about whether this was the entirety of the recording.  I said,

16  this is all I have, these are all the statements that he has

17  made, including the e-mail exchange that I had with Mr. Rhoden,

18  I included that, including the notice of deposition that I sent

19  to Mr. Rhoden.  I said, I am just confirming we will see each

20  other tomorrow morning at 11.  No response.  In fact, there was

21  no response until about 11, 11:30 a.m. the next morning when I

22  was waiting for Mr. Rhoden to come to my office for the

23  deposition.

24      At that time -- and I didn't want to raise this in my

25  portion of the papers because usually settlement negotiations

GCD8BACC

1    are confidential, but Mr. Rhoden raised it in his portion -- he

2    called me and said, Do you want to settle the case?  I told Mr.

3    Rhoden, Now we have expended a significant amount of resources

4    and time.  This is a 1983 case.  We have attorneys' fees that

5    are attached at this point.  And I made a much higher demand

6    than I initially made before we had expended that many

7    resources.  Mr. Rhoden hung up and said, I'll call you back.  I

8    said, Well, are we going through this deposition or not?  No

9    response.

10        About a half an hour or so later, while the court

11    reporter is still waiting there, I get a call and he says, We

12    are not going to be able to resolve this case.  I said before

13    he hung up, Mr. Rhoden, why don't you come down here, we can

14    talk about settlement and whatever while you're down here, and

15    if we don't resolve this case, we can do the deposition.  He

16    said, No, I can't do it that way.

17        He hung up the phone, called me back another half an

18    hour later saying, OK, I will agree to produce my client if you

19    don't ask him about conversations you had with him that's not

20    captured in the recording.  I said, Well, let me know the rule

21    that says that I can't do that.  I don't know what rule that

22    you're referring to.  I am happy to look at whatever you have

23    got to show me that I am not allowed to do that, and I will

24    abide by that rule.  He said, I am not going to produce the

25    witness unless you agree to that.

GCD8BACC

1              I said, OK.  I said, Are you telling me you're not

2      coming?  He said, Wait a minute, wait a minute.  He said, I

3      will call you back.  Again, he wouldn't confirm one way or the

4      other.  I sent him several e-mails about, Listen, there is a

5      reporter here, I have been waiting here, can you just tell me

6      one way or the other if you're coming?  There wasn't a response

7      till about five minutes to 1:00 or so, where he finally writes

8      out his position, and I take it as he is not coming.  I told

9      him that I don't presently intend to ask him any questions

10     outside of what's in the recording, because there really wasn't

11     much that was discussed outside of those recordings, but I

12     don't see why I would be precluded from asking those questions.

13     He didn't provide me any reasons as to why that would be a

14     rule.  He said, if I were going to ask him questions about

15     stuff outside the recording, I would have to provide a synopsis

16     of those conversations that I had with Mr. Leath.

17             That was really it.  There was no indication in those

18     conversations that he was going to move to disqualify me or

19     that he was going to move to preclude the recordings or

20     anything like that, which is really just a sideshow to distract

21     the Court from the fact that he just, again, is delaying

22     discovery and not moving forward.  Had I just said, I agree not

23     to use any statements made to me either on trial or in a

24     deposition, then he would have produced the client.  I didn't

25     even understand if that's a rule.  Again, I was asking him for

GCD8BACC

1    some guidance as to where he was coming from with that request,

2    but I was not getting any.

3            THE COURT:  Thank you.

4            So I understand the request at this point is that I

5    compel the appearance of Mr. Leath for a deposition.  When are

6    you proposing that I order that the deposition take place?

7            MR. COHEN:  Well, we have depositions scheduled on the

8    15th and then on the 19th.  In this case, I am leaving for

9    vacation on the 19th.  My associate is going to be handling the

10   deposition on the 19th, which happens to be the last day of

11   discovery in this case.  Then I am not going to be back in town

12   until the week between Christmas and New Year's.  I potentially

13   can do a deposition Friday.  It's not going to be a very long

14   deposition.

15           THE COURT:  How many hours do you anticipate the

16   deposition will last?

17           MR. COHEN:  Would you mind if I just check real quick?

18           THE COURT:  Please.

19           MR. COHEN:  I can do it tomorrow from 10 to 2.

20           THE COURT:  How many hours do you anticipate?

21           MR. COHEN:  Not more than four hours, potentially

22   less.

23           THE COURT:  Is there anything else you would like to

24   tell me with respect to your application?

25           MR. COHEN:  No, your Honor.  I just want to express

GCD8BACC

1   my -- and I don't know if I have already done so --

2              THE COURT:  I think you have.

3              MR. COHEN:  -- my frustration with this process.

4              THE COURT:  Understood.  I don't think I need to hear

5   more on that particular topic, understanding that the topic you

6   wish to raise is your frustration with Mr. Rhoden's conduct

7   during discovery as a whole.  I don't think we need to spend

8   more time on that rather than to focus on the particular issues

9   before the Court.

10             Mr. Rhoden, would you like to be heard on this issue?

11             MR. RHODEN:  Yes, your Honor.  Thank you.  Good

12  afternoon.

13             Your Honor, the last time we had a conference was on

14  November 18, 2016.  At that time, your Honor, I brought up the

15  understanding that I heard, which he told me verbally, that he

16  had a conversation with Mr. Leath.  I brought that up to your

17  Honor in our conference, which was recorded.

18             Mr. Cohen spoke to this Court and told him what he did

19  and what he said to Mr. Leath.  The recitation that he just

20  gave here today, as to what he did and what he spoke to Mr.

21  Leath about, is totally different from what he told your Honor

22  back on November 18 on that record, and I have a copy of the

23  record that was done on that date with me today.  His

24  recitation that he gave today is totally different from what he

25  said to the Court.

GCD8BACC

1          On that day, he did not indicate to the Court that

2     this conversation that he had was recorded, at no time.  Once

3     the conversation was over, I spoke with Mr. Cohen, and I asked

4     him specifically whether or not he had recorded the statement.

5     And he told me, No, he did not.

6          On December 2nd, we came up with a schedule, a

7     discovery schedule.  I reached out to him.  I reached out to

8     all the nonparty witnesses.  I got the nonparty witnesses

9     scheduled, I got his scheduled, and after we talked we came up

10    with a schedule for the remaining discovery.  And I e-mailed

11    him the schedule for the remaining discovery that we had

12    between my clients and his clients.

13         Also, when I sent that e-mail, I realized he told me

14    verbally that there was no recording.  Let me put it in writing

15    here.  Let me get an answer from him in writing that there is

16    no recording.  And so on December 5, I asked him again, Do you

17    have any statements from Mr. Leath?  For the first time he then

18    produced this recording, a recording, by his own admission, he

19    had since November 17.  Before the conversation with this Court

20    on November 18, he had had that recording.  By the federal

21    rules he was required, it is electronic -- it's documents

22    stored electronically.  Federal Rule 26 says those things must

23    be disclosed, even without me asking for it.

24         Secondly, in my initial demands, initial discovery

25    demands back in May, I believe, I asked for any statements that

1  he had.  So if he had had these things, one, he was obliged to

2  turn it over without me asking; and, two, back in May, I asked

3  him in my initial discovery demands, and I have copies of my

4  initial discovery demands with me, and at no time after

5  receiving this conversation had he informed me prior to

6  December 5.

7          So for the first time on December 5 he sent me the

8  recording, and I was somewhat surprised.  So I sent him an

9  e-mail -- I sent him two e-mails since he sent me that

10  recording, and I said to him, you know, you told me that you

11  did not have any recordings of my client, but here you are now

12  sending me a recording.  And when I sent him that e-mail, he

13  responded to that e-mail, and he never denied that he had told

14  me this.  And I sent it in two separate e-mails, and I believe

15  I attached a copy of those e-mails to the Court.  He responded

16  to the e-mails and never denied that he told me that.  Both

17  times he responded and both times he never denied that he told

18  me he did not have any recordings.  The first time that he said

19  he never said this was when he did this letter saying he never

20  made any such statement to me, but he had a full opportunity to

21  say that, which he did not.

22          Your Honor, once I received this recording, to my

23  surprise, it was 20 minutes long and portions of the

24  conversation was missing; the beginning of the conversation was

25  missing, the ending of the conversation was missing.  I reached

GCD8BACC

1    out to my client.  My client came into the office on December 7

2    at 9:30 a.m. with the full intention that he would go to the

3    deposition, that was the date that the deposition was

4    scheduled.  And my client informed me he had three

5    conversations with Mr. Cohen.

6           And, also, during our November 18 conversation, when

7    we brought up the statement, what was indicated to us was that

8    my client had told him that he was proceeding pro se.  I asked

9    him, Did you tell him you were appearing pro se?  He says, No,

10   I never told him that.  I don't even know what pro se means.  I

11   informed him I would talk to him because he told me, both him

12   and his client, Mr. Bacote, told me that they would let me out

13   of the case.  And in his e-mail to my client, which was turned

14   over, there is an indication here.  My client -- I would like

15   to read a portion of the e-mail.

16           THE COURT:  Thank you.  I have seen the sentence

17   you're referring to.

18           MR. RHODEN:  Where Mr. Cohen indicated that he would

19   potentially let him out.  And then my client responded and

20   said, I understand that you're going to let me out of the case.

21           THE COURT:  Thank you.  Let me just correct the record

22   on that.

23           The November 17, 2016 e-mail from Mr. Leath says, "In

24   addition, as I see no need for representation at this time, as

25   I expect to be removed from this action."

GCD8BACC

 1              MR. RHODEN:  Yes, your Honor.

 2              In Mr. Cohen's letter to Mr. Leath, "I represent Orrin

 3    Bacote, the plaintiff in this matter, and you are now (at least

 4    for the time being) one of the defendants."  Again, an

 5    indication that he was going to let him out.  That's an

 6    indication that they did have this conversation.  And that was

 7    the understanding with Mr. Leath, that he was going to let him

 8    out, and here again that's why, when Mr. Leath responded, he

 9    put that in there.  So that was his full understanding.

10              During our November 18 conversation, one of my

11    concerns was that Mr. Leath, in speaking to him, doesn't

12    realize that he is entitled to representation and at no cost to

13    him.  Mr. Cohen indicated that he explained all this to Mr.

14    Leath.  Mr. Leath says no.  Mr. Leath -- and you have a copy of

15    his affidavit -- says, yes, I could get my attorney, but at no

16    time did he indicate to me that, one, I can get it from

17    Riverbay, that it would be of no cost to me.  I believe that I

18    had to get my own attorney at my own expense, and with him

19    saying that he was letting me out, that is why I decided to go

20    ahead and have the conversation.  Secondly, he never informed

21    him at any time that this conversation would be recorded.  It

22    was done without his consent, without his knowledge.

23              So seeing this on the morning of the 7th, talking to

24    Mr. Leath with the recording, I just could not go ahead and

25    send him to a deposition where he could be clearly ambushed by

GCD8BACC

questions that I am not aware of, about conversations that I

have no information about.

       So my concern, after discussing with my office, the

parties in my office, What do we do here?  My first thought

was, let's see if we can resolve this case.

       Now, in his letter to the Court, he claims that I

didn't do anything until 11:30, when I first called him and

started talking about the taping, which is not the case.  I

called him well before that, and we had about 30 minutes back

and forth regarding settlement.  That was my first thing, can

we resolve this case, let's see if we can do that.  And he

apparently went and called his client to call me back, I called

my client to call him back, and there was a conversation going

back and forth for about 30 minutes.  But after more than

doubling his settlement demand it was decided, no, we could

not.

       The second thing is, what can I still do to go forward

with this deposition, because I understand the Court's desire

that these depositions go forward, and I wanted to follow the

Court's rules, I did not want to not follow the Court's rules.

So what I said to him is, if you can give me -- because I know

there was another conversation that's not on this tape, and if

you could give me the sum and substance of those conversations,

let me know what those conversations are, or, if you don't want

to do that, if you can tell me that you won't be asking him any

GCD8BACC

questions regarding any statements that was not turned over to
me, I will bring him for the deposition.  I am just located
four blocks from his office, approximately four blocks from his
office.  We will come down and bring him to the deposition.

Over the phone he told me he would not be asking any
questions that's not part of the recording that he turned over
to me.  However, when I asked him to put it in writing, he
refused to do that.  That's when he told me, if something comes
up, I don't know of anything, but if anything comes up, I
reserve the right.  That's what he told me on paper.  But
initially he told he would not be asking any questions.  Had he
done that, I would have brought him in for the deposition.  He
was in my office.  He was prepared.  What I couldn't do, and I
think it would be -- as an attorney, I wouldn't be doing my
client justice to know that there is a conversation that he had
with my client that I had known nothing about.  Now he can go
and ask my client, well, didn't you tell me this, with
information that I know nothing about.  I could not bring him
into that.

The next thing --

THE COURT:  Can I ask you about that, Mr. Rhoden.  At
an earlier stage in this case, you took issue with the
plaintiff's request for videotapes of the body camera, saying
that you thought it was, in essence, inappropriate for them to
have the recording in advance of the depositions, with the

GCD8BACC

1    concern that they would be able to modify the testimony to be

2    consistent with what was shown in the video recordings.  Why

3    isn't this the inverse of that issue?

4             MR. RHODEN:  Your Honor, regardless of what the issue

5    was, you ruled on that and we accepted your ruling.  You told

6    me to turn over the recording, and we did that.  We turned it

7    over within the time.  So regardless of what my feeling was, my

8    personal opinion was, I think it's the same.  I am not sure

9    exactly what your Honor is asking.

10            THE COURT:  Let me try to be more clear.  In that

11   instance, my recollection is that your argument was that it was

12   inappropriate for a party to have the videotaped evidence of

13   their interactions prior to the deposition, for fear that they

14   would then conform their testimony to the physical evidence.

15            Here, you're taking the position that you are

16   unwilling to proceed with the deposition unless you have

17   custody of the physical evidence.  In that prior conversation

18   you took the position that that was inappropriate because it

19   would allow the testifying witness to conform their testimony

20   to the physical evidence rather than, in your view, telling the

21   truth.  Here, you're saying that it would be improper for you

22   to allow your client to testify without having the opportunity

23   to review the recorded information.  How are those two

24   arguments consistent?

25            MR. RHODEN:  Well, your Honor, one, in this case, I

GCD8BACC

 1    believe the federal rules require that these recorded

 2    statements be turned over, and they should have been turned

 3    over, and should have been turned over a long time.  It is a

 4    requirement that it be turned over.

 5            THE COURT:  Let me be clear.  Let me try to focus this

 6    also for the sake of time.  The issue here is whether I compel

 7    Mr. Leath to appear, and the second issue is whether I should

 8    impose sanctions on you and your client for failing to appear

 9    at what I understand to be a properly noticed deposition.

10            The defendant did not make an application to me for a

11    protective order with respect to the deposition.  Therefore,

12    that basis for me declining to impose sanctions is not

13    available.  Alternatively, I understand that the rule would

14    require that I find that you were substantially justified in

15    your decision not to appear.  So what I am looking for now is

16    your argument regarding why I should find that your decision

17    not to appear was substantially justified.

18            What I have heard to this point is that it was

19    substantially justified, in your view, because you were

20    concerned that your client would be ambushed by the content of

21    the recording, and that you wanted to negotiate a limitation on

22    the scope of the deposition prior to his appearance in order to

23    avoid that occurrence.

24            Are there any other bases that you proffer having

25    provided substantial justification for your failure to appear?

1          MR. RHODEN:  Also, because the recording was, in my

2     view, illegally gotten.  For the attorney to make this

3     recording without his knowledge, then it was improper.  The

4     recording was done because the person was induced, improperly

5     induced to give the statement.  Mr. Leath was told that if he

6     will have the conversation with him, he will be let out of the

7     case.  He was improperly induced.  So this recording was

8     illegally gotten, your Honor.

9          Your Honor, I would also like to say we are also

10    requesting from this Court permission to make a motion to have

11    this recording precluded, and that they be disqualified is

12    another thing we are requesting.

13         THE COURT:  I will take that issue up separately.

14         I would like to first deal with the plaintiff's

15    motion, which is that I compel the testimony of Mr. Leath and

16    that I impose sanctions as a consequence of the defendants'

17    failure to appear at the deposition.

18         I understand that in your mind the two issues are

19    interrelated, and they are interrelated.  At the same time, I

20    will evaluate each of them separately.

21         Are there any other statements that you would like to

22    make with respect to the motion to compel or the grounds for me

23    to conclude that your failure to appear with your client for

24    the noticed deposition should not trigger imposition of

25    sanctions?

1          MR. RHODEN:  Your Honor, it was fair and reasonable.

2     The reason why this did not go forward, for one, is because he

3     held on to statements that he should have produced.  He had

4     these recordings since November 17.  He held on to it until the

5     eve of the deposition.

6          THE COURT:  Thank you.  Let me just try to be clear.

7          Whether Mr. Cohen failed to comply with his Rule 26(e)

8     obligations by failing to supplement his discovery responses

9     with this recording, whether Mr. Cohen acted unethically in

10    recording the conversation, whether he inappropriately tricked

11    Mr. Leath into talking with him in the first instance are all

12    issues that we will discuss.  The issue that I want to assess

13    now is whether any of those things provides substantial

14    justification for your failure to appear at the deposition.  In

15    other words, if Mr. Cohen did all of those things, why is it

16    proper for you to take on the role of punishing those failures

17    by failing to appear at the deposition?

18         MR. RHODEN:  I just can foresee the deposition going

19    forward with the full understanding that he would be asking

20    questions -- which is why I believe he turned it over to me on

21    the eve of deposition, because he knew he was going to be

22    asking Mr. Leath questions regarding those recordings.  And the

23    recording was incomplete.  There were other conversations that

24    had taken place that I didn't have any recordings or any

25    statements about.

GCD8BACC

1          THE COURT:  Let me ask about that comment, Mr. Rhoden.

2          You said that you had no information about those

3   conversations.  Are you in a position to ask your client about

4   what happened in this conversation?

5          MR. RHODEN:  Absolutely, your Honor.

6          THE COURT:  So when you say, counsel, that you had no

7   information about those conversations, you're not referring to

8   a lack of any information about them; rather, you're saying

9   that you did not have the recording.  Is that correct?

10          MR. RHODEN:  I did not have any recordings, whether it

11   be tape recordings or written notes or anything from that.

12          THE COURT:  Thank you.

13          Is there anything else that you would like to say with

14   respect to this motion?  The motion to compel is joined with

15   this issue.  The plaintiffs have proposed that I order that the

16   deposition of Mr. Leath take place tomorrow or the following

17   day, with the expectation that it will last approximately four

18   hours.  What is your position regarding the motion to compel

19   the deposition of Mr. Leath?

20          MR. RHODEN:  Your Honor, it's tied into the

21   recordings.  My position regarding his deposition is tied into

22   the recordings.

23          THE COURT:  Mr. Rhoden, are you telling me that your

24   position is that no depositions at all should take place in

25   this case as a consequence of the fact that Mr. Cohen allegedly

GCD8BACC

1    recorded this conversation, or misled Mr. Leath?  Are you

2    asking that I stop all discovery in this case until this issue

3    is resolved?

4              MR. RHODEN:  No, your Honor.

5              THE COURT:  Thank you.  Then let's talk about the

6    issue of the motion to compel and the timing for it, that is,

7    Mr. Leath's deposition.  What is your position on that request?

8              MR. RHODEN:  Your Honor, I am not saying all discovery

9    should be stopped.  I am asking this Court that Mr. Leath's

10   deposition should not go forward until a decision is made

11   regarding the recordings, yes, your Honor.

12             THE COURT:  What decision, sir?

13             MR. RHODEN:  Whether it should be precluded

14   altogether, that the recordings should be precluded, the

15   recordings should not be used.  Because if that's not done,

16   then he can use the recordings at the deposition.  And should

17   his firm be disqualified.

18             THE COURT:  Thank you, sir.

19             That request is denied.  I am going to grant the

20   motion to compel Mr. Leath's deposition, and I am going to

21   impose sanctions on defendant for failing to appear at the

22   deposition.

23             Let me ask you, Mr. Rhoden, when would you propose

24   that the deposition take place?

25             MR. RHODEN:  On Friday, your Honor.

GCD8BACC

1        THE COURT:  Thank you.

2        Counsel, is that acceptable?

3        MR. COHEN:  I am a sabbath observer so I do leave

4   early on Friday, so I have to be done by 2.

5        I have a conference in the Eastern District in the

6   morning at 11, but I believe it's going to be canceled.  I just

7   have to write a letter to the court because we settled that

8   case.

9        THE COURT:  Good.  Thank you very much.

10       So the motion to compel the deposition of Mr. Leath is

11  granted.  The deposition will take place this Friday in the

12  offices of Mr. Cohen.

13       Beginning what hour, Mr. Cohen?

14       MR. COHEN:  10 a.m.

15       THE COURT:  Beginning at 10 a.m.

16       I am ordering that the deposition take place at that

17  date and time.

18       Mr. Rhoden, your arguments are misplaced.  The rules

19  regarding depositions are that depositions proceed.  You cannot

20  order a client not to answer a question unless there is an

21  issue of privilege.  While I understand that there are

22  significant issues regarding Mr. Cohen's interactions with Mr.

23  Leath, I am unable to conclude at this time that the

24  appropriate sanction, if any, for that behavior is the further

25  extension of discovery in this matter and the barring of

GCD8BACC

1    discovery as against Mr. Leath.  I am not taking that issue off

2    of the table as a potential consequence at trial, or otherwise

3    in the future, but I am not going to allow the deposition to be

4    deferred as a consequence.

5           Furthermore, the rules are very clear with respect to

6    discovery.  Rule 37 provides that a court must require that a

7    party or its attorney or both "pay the reasonable expenses

8    including attorneys' fees caused by the failure to attend that

9    party's deposition, unless the failure was substantially

10   justified or other circumstances make an award of expenses

11   unjust."

12          The rule makes it clear as well that a failure

13   described under Rule 37(d)(1)(A) is not excused on the ground

14   that the discovery sought was objectionable, unless the party

15   failing to act has a pending motion for a protective order

16   under Rule 26(c).

17          Mr. Rhoden, you believed that the discovery here was

18   objectionable.  However, you did not file a motion for a

19   protective order under Rule 26(c).  As a consequence, I am

20   required to analyze whether your failure was substantially

21   justified or whether other circumstances make an award of

22   expenses unjust.

23          In this instance, I have reviewed the exchange of

24   e-mails, and in the exchange of e-mails, Mr. Rhoden, you wrote

25   on December 7, "I am prepared to go forward with the deposition

GCD8BACC

today if you agree that you will not be asking Mr. Leath any

questions at the deposition or at trial regarding any

conversation you had that was not recorded.  Otherwise I

require that you provide the sum and substance of the portion

of the conversation that you had with Mr. Leath that was not

recorded."  That was sent by you in an e-mail on December 7 at

12:50 p.m.

          I understand that your justification for failing to

appear was that the party taking the deposition was unwilling

to agree with you regarding your proposed limitations on the

scope of the deposition.  I cannot find that to be a

substantial justification and, as a consequence, the rule

requires that I order that you and your client pay the

reasonable expenses caused by your failure to appear at the

deposition as noticed.

          As a practice note, Mr. Rhoden, in the future, in the

event that you find discovery objectionable, the rules make

plain what the process is.  It is not that you become the judge

and decide not to appear.  Rather, they set forth the

possibility of making a request for a protective order under

Rule 26(c), a practice that you did not undertake here.

          As a result, I am going to order that you pay the

attorneys' fees for Mr. Cohen with respect to the morning spent

waiting for you to appear at the deposition.  I am also going

to order that you pay the court reporter fees for the

GCD8BACC

1    deposition that did not go forward.

2            I am going to ask that Mr. Cohen -- I should say

3    reasonable fees.  I am going to ask that Mr. Cohen submit a

4    letter, together with an affidavit, setting forth the amount of

5    those costs and fees.

6            Mr. Rhoden, you will have the opportunity to object to

7    the amount of those fees and costs, if you wish, before I issue

8    an order imposing the obligation that you make that payment in

9    the amount that I will establish in my order.

10           So that is the issue with respect to the deposition.

11           There are a number of other issues that you have

12   raised which are substantial, namely, whether Mr. Cohen acted

13   improperly with respect to the recording and with respect to

14   whether Mr. Cohen misled Mr. Leath into the phone conversation

15   at issue here.

16           Those are substantial issues, and I understand that

17   you wish to raise the prospect of disqualifying Mr. Cohen and

18   his firm from this case as a consequence of that asserted

19   unethical behavior.  And I would like to give you the

20   opportunity to discuss those issues now.

21           MR. RHODEN:  Thank you, your Honor.

22           Ms. Corchia from my office will discuss that issue,

23   your Honor.

24           If I may just say briefly, your Honor, when we brought

25   this motion to the Court, I believed that's what we were doing.

GCD8BACC

1    When bringing the issue regarding the deposition of Mr. Leath,

2    this motion was that we were asking the Court for a protective

3    order so that this tape -- maybe I mistakenly did not word the

4    motion papers properly, but that's what I believed we were

5    doing when we brought this motion to the Court.  We were asking

6    for a protective order regarding the deposition.

7          THE COURT:  Thank you.  I understand that you are

8    framing this conference in that way.  However, I have to

9    observe that the letter submitted to the Court was dated

10   December 9.  The deposition was scheduled to take place on

11   December 7.  No prior application with respect to the

12   deposition that did not go forward, with respect to which Mr.

13   Cohen and the court reporter waited in vain for your

14   appearance, took place before you made an application to the

15   Court.  As a consequence, the ruling that I made previously

16   stands and I am compelling the deposition.

17         Counsel, please proceed.

18         MS. CORCHIA:  Good afternoon, your Honor.  My name is

19   Vanessa Corchia from Armienti DeBellis.

20         As the Court will be aware from our portion of the

21   correspondence of December 9, we are making an application for

22   this Court to permit us to formally move to disqualify

23   plaintiff's counsel, and, also, for preclusion of not only the

24   actual recording of the telephone conversation between Mr.

25   Cohen and Mr. Leath that took place on November 17, but also to

GCD8BACC

1   preclude any use or any information gleaned from Mr. Leath for

2   which there is no tape recording so that we don't have those

3   portions of the tape.

4          I agree with your Honor that this is a significant

5   issue, and that's why it is something that would need to be

6   fully briefed and fully supported.  Some of the statements I

7   have heard for the first time today with regard to how the

8   statement came about, your Honor.  But I can only tell you that

9   we were advised by Mr. Leath for the first time on the morning

10  the deposition was to take place, as to when we played the

11  audio recording for him, he did give us input about it, and he

12  was completely taken aback that he had been recorded.  When we

13  got the tape it was late in the game.  It was our first

14  opportunity to play it for Mr. Leath and that's why things sort

15  of happened very quickly that morning.

16         But, your Honor, there are a number of rules in the

17  Code of Professional Responsibility that we feel that it could

18  fall under.

19         THE COURT:  Thank you.  Just for the sake of

20  efficiency, I will grant you leave to file a separate motion

21  with respect to potential disqualification of Mr. Cohen on the

22  bases that you have articulated in your letter.  I am going to

23  set a briefing schedule for that momentarily.

24         Let me just ask you, just to focus your remarks,

25  understanding that generally I, as a federal court, do not

GCD8BACC

1    enforce state bar disciplinary rules, nonetheless, that I have

2    the inherent authority to address attorney misconduct during

3    the course of a litigation before me, the question that I have

4    is whether disqualification is the appropriate sanction here.

5           So your letter describes the ethical rules, or one of

6    the principal ethical rules that you believe that Mr. Cohen may

7    have breached, but you don't clearly address the standard

8    required for disqualification of counsel.  How does this

9    conduct meet that high standard, given the assertions of

10   several courts that a party seeking disqualification must meet

11   "a heavy burden of proof in order to prevail with respect to

12   such a motion," and that disqualification is warranted only if

13   an attorney's conduct tends to taint the underlying trial?

14          Let's assume the ethical violations of the rules that

15   you have described, just for argument sake.  How did those

16   ethical violations lead you to conclude that disqualification

17   is the appropriate sanction here?  And this is not oral

18   argument.  I am just curious.

19          MS. CORCHIA:  Your Honor, that's why our request is,

20   combined with our request for preclusion of the contents of the

21   tape, any evidence regarding the tape, any evidence of the

22   nonrecorded portions of the conversation.  Because the problem

23   is now Mr. Cohen is uniquely privy to a discussion with Mr.

24   Leath, at a time when it certainly should have been expected

25   that representation would be imminent, because Riverbay had

GCD8BACC

1    retained us as counsel for the other police officers.  And so

2    it really -- I think you even began -- the whole thing does

3    smack of trickery, it smacks of the appearance of impropriety.

4            THE COURT:  Thank you.  A question that you will have

5    the opportunity to address in your briefing is whether the

6    remedy that you are seeking is the appropriate remedy.

7            Just for conversation purposes, you may look at some

8    of the commentary on the criminal exclusionary rule.  Here,

9    there are alternative means to sanction Mr. Cohen for

10   violations of any ethical rules, if there are any.  So a

11   question that I would appreciate seeing addressed in your

12   papers is why it is that you believe that a cognate of an

13   exclusionary-type rule is the appropriate sanction for the

14   asserted ethical violations by Mr. Cohen.

15           So is there anything else you would like to tell me

16   about that proposed motion and request to preclude evidence?

17           MS. CORCHIA:  Not at this time, your Honor.

18           THE COURT:  Thank you.

19           Let me be clear with respect to the deposition of Mr.

20   Leath that's going forward.  I am not permitting any

21   constraints on the subject matter of that deposition.  The

22   usual rules apply.  The witness generally should not be

23   instructed not to answer questions unless there is a basis for

24   an assertion of privilege.

25           Mr. Cohen, is there anything you would like to say

GCD8BACC

regarding the proposed motion for disqualification and other

consequences of the asserted ethical breaches alleged by

defendant?

MR. COHEN:  I just want to quickly address, there were

statements made about the e-mail exchange I had with Mr. Leath,

where there is this parenthetical.  I was specifically

addressing his repeated statements -- I didn't even hear his

story.  How could I even say that I would let him out of the

case -- where he says, once you hear what happened, you will

let me out of this case.  I never once, and I want to make that

very clear on the record, I took particular care to make sure I

explained his risks in speaking to me.  In this e-mail, I did

it in writing, I said very clearly that you told me you were

going to be going pro se, that you're going to be representing

yourself.  I made that very clear and explained him the risk,

and I believe that I acted within the confines of what is

permissible in the state of New York.

That's really all I have to say about that.  I guess I

will address that more further in the motion that your Honor is

going to set a briefing schedule for.

THE COURT:  Thank you very much.

Counsel for defendants, when would you propose to make

this motion?  I should say that I am not in a position now to

draw any conclusions regarding the disputed facts underlying

this motion.  The parties should give some thought as to the

GCD8BACC

```
 1    appropriate procedure for any factual issues to be resolved by

 2    the Court in connection with the motion.  With that comment,

 3    counsel, when will you anticipate submitting the motion?

 4              MS. CORCHIA:  May we have 30 days?

 5              THE COURT:  Mr. Cohen, is that acceptable to you?

 6              MR. COHEN:  Sure.

 7              THE COURT:  How much time would you propose that I

 8    allot for your response?

 9              MR. COHEN:  I think a 30-day response would be fine.

10              THE COURT:  Counsel?

11              MS. CORCHIA:  Yes.  I will agree to that.

12              THE COURT:  The briefing schedule follows:  The motion

13    for disqualification and preclusion, presumably of evidence to

14    be used at trial, will be due 30 days from today.  Any

15    opposition will be due 30 days thereafter.  Any reply will be

16    due two weeks following service of the opposition.

17              Let me foreshadow for you that there is a good

18    probability that I will refer this motion to Magistrate Judge

19    Peck.  My hope is that the substance of this case will proceed

20    forward while this issue is litigated in parallel.

21              So I believe that we have addressed the issues that

22    were raised in your joint letters.  I understand that otherwise

23    the parties are on track to complete discovery with the limited

24    scope that I articulated in my October 20 letter, and as a

25    result, the discovery should be concluded in this case on the
```

GCD8BACC

```
1    19th, as I ordered.
2              MR. COHEN:  Your Honor, there are couple of exceptions
3    to that that are outside our control.  One is the motion to
4    unseal the grand jury minutes is still pending in Bronx supreme
5    court, or Bronx criminal court, for that matter.  We FOIL'd the
6    district attorney's file, which was in storage, and I don't
7    believe we have gotten the full file yet; we have gotten bits
8    and pieces, but not the whole thing.
9              Finally, I only received the fully executed originals
10   of the HIPAA authorizations for the three officers that got
11   injured, I only received them a couple of weeks ago, the actual
12   originals, and I immediately sent them to be processed, and I
13   still have not received the medical records.
14             These are three items that are still outstanding that
15   I probably will not have by the 19th, but not because I haven't
16   tried.
17             THE COURT:  Thank you.  If that information rolls in
18   after the 19th, you will be able to retain it, but as set in my
19   order, December 19 is the deadline for the completion of fact
20   discovery.
21             Fine.  Expert discovery ends on January 23rd.  Summary
22   judgment motions are due on February 20, if any such motions
23   are to be made.
24             Let me remind you, counsel, of the obligation to
25   submit a premotion conference request letter within a week
```

GCD8BACC

1    following the close of discovery, and in accordance with the

2    case management plan and my authority under Rule 16, if you

3    fail to submit such a premotion conference request letter on

4    that schedule, you will have waived your opportunity to bring a

5    Rule 56 motion in this case.

6            Mr. Cohen, anything further?

7            MR. COHEN:  Nothing further.

8            THE COURT:  Mr. Rhoden, anything further?

9            MR. RHODEN:  No.

10           THE COURT:  I am going to step down while we call the

11   next case.

12           Thank you very much.

13           (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25