H15PBACC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    ORRIN BACOTE,

4                    Plaintiff,

5              v.                          16 CV 1599 (GHW)
                                           Telephone Conference
6    RIVERBAY CORPORATION, ET AL.,

7                    Defendants.

8    ------------------------------x
                                           New York, N.Y.
9                                          January 5, 2017
                                           4:05 p.m.
10
     Before:
11
                      HON. GREGORY H. WOODS,
12
                                           District Judge
13
                        APPEARANCES VIA TELEPHONE
14
     COHEN & FITCH, LLP
15        Attorneys for Plaintiff
     BY:  GERALD M. COHEN
16        ILYSSA S. FUCHS

17   ARMIENTI, DeBELLIS, GUGLIELMO & RHODEN, LLP
          Attorneys for Defendants
18   BY:  HORACE RHODEN
          VANESSA CORCHIA
19

20

21

22

23

24

25

H15PBACC

```
 1                (In chambers; telephone conference)

 2                THE COURT:  This is Judge Woods.  Do I have counsel

 3      for plaintiff on the line?

 4                MR. COHEN:  Yes, Gerald Cohen here, with Ilyssa Fuchs.

 5                THE COURT:  Thank you.  And do I have counsel for

 6      defendants on the line?

 7                MR. RHODEN:  Horace Rhoden with Vanessa Corchia.

 8                THE COURT:  Thank you.  Good afternoon.  I scheduled

 9      this conference in response to the request by counsel for

10      defendants for a pre-motion conference with respect to a

11      potential of what I construe to be a rule 56 motion.

12                I've reviewed the letter dated December 23rd submitted

13      by defendants and also the responsive letter submitted by

14      plaintiff.  I'd like to hear from each of you in turn.

15                First, I'd like to hear from counsel for defendants

16      regarding the proposed bases for your motion for summary

17      judgment.  Your letter was not precise as to the nature of the

18      motion in terms of the claims that you'll be seeking to dismiss

19      as against which defendants and the basis for your contention

20      that there is no disputed issue of material fact with respect

21      to the relevant arguments.  So I'd like to give you the

22      opportunity to focus your presentation on those issues now.

23      Then I will hear from counsel for plaintiff.

24                All of this in anticipation of setting a briefing

25      schedule for any potential motion.  Let me hear first from
```

1     counsel for defendants.  What's the proposed basis for your

2     motion?

3                MS. CORCHIA:  Good afternoon, your Honor.  This is

4     Vanessa Corchia.  I just wanted to bring you up to date first

5     that earlier today, Mr. Rhoden and plaintiff's counsel had a

6     discussion about narrowing the causes of action at issue

7     originally in the complaint, taking into account the number of

8     defendants and the number of different causes of action, there

9     were 82 claims.  At this point, there's been an agreement that

10    there will be a voluntary discontinuance or withdrawal of 28 of

11    those claims.

12               The first item I'd like to address as to causes of

13    action that we believe are viable in having dismissed --

14               THE COURT:  I'm sorry, can I ask you to come back to

15    your prior comment?

16               MS. CORCHIA:  Yes, your Honor.

17               THE COURT:  What are the prior claims you expect to be

18    dismissed?

19               MS. CORCHIA:  One second, your Honor.  I do have a

20    list.  Your Honor, okay, the false arrest claim will be

21    dismissed against Riverbay, the unlawful search and seizure

22    claim will be dismissed as to Codero, Ifill, Rivera, Lambert,

23    Marsonico, Mendoza, Leath and Riverbay Corporation.

24               The right to a fair trial claim will be dismissed as

25    against Officers Ifill, Lambert, Leath, Rivera and Riverbay

H15PBACC

1    Corporation.

2          The malicious prosecution claim, the federal-based

3    claim, will be dismissed as to Officers Ifill, Lambert, Leath,

4    Rivera and Riverbay Corporation.

5          The malicious prosecution claim, which is the State

6    claim will be dismissed as to Police Officer Ifill, Lambert,

7    Leath and Rivera.

8          The excessive force claim will be dismissed as to

9    Mendoza and Riverbay Corporation.

10          The corporate liability claim with regard to Riverbay

11    Corporation will be dismissed in its entirety, and the

12    negligence hiring claims against Riverbay Corporation will be

13    dismissed in its entirety.

14          THE COURT:  Good.  Thank you.  Please proceed.

15          MS. CORCHIA:  Okay.  Now, your Honor, one of the

16    issues that we would like to move on with regard to our

17    proposed summary judgment has to do with the false arrest

18    causes of action.  We would like to move for dismissal as to

19    all police officers with the exception of Catala and Gregory.

20          Our theory, your Honor, is that, yes, there are

21    disputed facts as to the initial interaction between Mr. Bacote

22    and the first two officers that arrived, which are Catala and

23    Gregory.  So we know there's a dispute as to that interaction,

24    who started what, who placed their hands on who.

25          Okay, so acknowledging that there's a factual dispute,

1    what's not in dispute is later on -- well, I should add one

2    more fact, your Honor.  At some point with this initial

3    contact, Catala winds up injured with a broken leg,

4    incapacitated.  A call is made that there's a fight in

5    progress.  Other officers arrive.

6         From their perspective, your Honor, what they are

7    seeing is they see an officer down.  Catala's leg is visibly

8    broken.  It's an actual visible injury.  His foot is twisted in

9    the opposite direction.  They see officers arriving, see some

10   type of fracas going on in front of them.  They see civilian

11   officers, and at that point, their state of knowledge is

12   they're responding to a fight in progress; so they have

13   probable cause for any part of the arrest that takes place.

14        So that, by way of an example, a probable cause would

15   be a defense to a false arrest claim.  So even though there's

16   really one arresting officer, according to the paperwork, which

17   is Codero, we believe that the officers that come after the

18   fact, after the initial interaction between Mr. Bacote and

19   Catala and Gregory, we believe we have a viable dismissal

20   motion on the false arrest cause of action, your Honor.

21        THE COURT:  Thank you.  Proceed.

22        MS. CORCHIA:  Okay.  Also, similarly with regard to

23   the malicious prosecution claim, we believe that there's no

24   probable cause -- I'm sorry, one second, your Honor.  I'm

25   sorry, your Honor, yes.  For the same reason, because lack of

H15PBACC

probable cause is a defense with regard to that claim.  For the

same reasoning, we believe the same officers have a viable

claim.

Additionally, with regard to malicious prosecution,

there has to be a showing of actual malice as a motivation, and

we believe that that's a different element that can't be

satisfied as to the officers that arrived later.

Your Honor, with regard to the -- Okay.  Your Honor,

there's one other point with regard to the malicious

prosecution that involves a requirement that evidence be

fabricated, and we don't believe that there's any such instance

of that in this case.

With regard to a denial of a right to a fair trial,

your Honor, that requires fabrication of evidence of a material

nature.  In this particular case, there are three reports that

potentially could be pointed at as being the, quote, fabricated

evidence.  One of the reports is actually prepared by the

New York City Police Department, another of these reports is a

Riverbay Corporation report.  However, that report is issued

actually after the -- five days after the arrest; so it could

not have impacted the arrest because it's after the fact.

The final report does contain as the arresting

officer, Officer Codero, but we believe that the other

individuals can't be held for denial of a right to a fair

trial.  As to Codero, we actually have an alternative argument

1   with regard to Officer Codero.

2          The report -- in the report he says that he received

3   some information with regard to Officer Gregory -- from Officer

4   Gregory and that he was told that Officer Gregory -- I'm sorry,

5   that Mr. Bacote pushed Officer Gregory or grabbed him and threw

6   him to the ground.  Now, even assuming that that's what he was

7   told, that would have been hearsay and could not have been

8   utilized with regard to a trial because it's pure hearsay of

9   what someone told him, and it also cannot be considered to be

10  fabricated because he said that's what he believed he was told.

11         Fabrication implies an intent to give false

12  information; so, therefore, that's why we believe, in addition,

13  Officer Cordero has a viable dismissal claim with regard to the

14  denial to the right to a fair trial.

15         THE COURT:  Thank you.  On the denial of right to fair

16  trial claims, can I ask why you believe that the focus should

17  be limited to the reports and not, for instance, potential

18  testimony provided by the officers or other information

19  presented to prosecutors?  And similarly, can I ask why you

20  believe that the fact that the reports happened after the

21  arrest result in a denial of fair trial claim being unviable?

22         MS. CORCHIA:  Because, your Honor, for example, with

23  regard to the report that was issued after charges were made,

24  it can't have been the source of the arrests or for the charges

25  being initiated because it was after the fact.  So that's the

1    explanation for that.

2             Also, your Honor --

3             THE COURT:  I'm sorry, I'm sorry.  Let me ask on that.

4    It's your view that a defendant cannot be guilty of a denial of

5    a right to fair trial claim if they provide false information

6    to the prosecution following the initiation of charges?

7             MS. CORCHIA:  But they never provided this report to

8    the prosecution, your Honor.  This was an internal report.

9             THE COURT:  Thank you.  Proceed.

10            MS. CORCHIA:  Okay.  There's also issues with the

11   failure to intercede cause of action, your Honor.  If you are,

12   for example, the officer that is involved in excessive force,

13   for the sake of argument, you can't, at the same time, be held

14   for failure to intercede.  It's one or the other.

15            Now, for example -- and plus, you also have to have

16   the ability to intercede.  For example, on that instance,

17   Officer Catala becomes disabled almost right away after the

18   initial encounter with Mr. Bacote.  And, again, I repeat, I do

19   acknowledge that there is an issue about the initial encounter,

20   but there's no issue that Mr. Catala, very early in the

21   interaction, winds up disabled, on the ground with a broken

22   leg.

23            So it is the claims, which I believe is Mr. Bacote's

24   testimony, he does claim Officer Catala placed his hands on him

25   and was an aggressor in the matter.  So if we assume, arguendo,

1   that's true, then Officer Catala cannot, at the same time, be

2   liable on a failure to intercede cause of action.  And

3   certainly Officer Catala, who early on in the interaction is

4   now disabled on the ground, can't get up with a broken leg.  He

5   is disabled.

6          So even if one says, well, he didn't intercede when

7   other officers were acting with excessive force, well, he was

8   physically unable at that point to intercede.  Likewise --

9          THE COURT:  I'm sorry, counsel, can I ask on that.

10   Was he rendered mute as a result of his injury?

11          MS. CORCHIA:  I'm sorry, did you say "mute"?

12          THE COURT:  Yes.

13          MS. CORCHIA:  He was not, your Honor.  He was on the

14   ground, and medical attention was being given by Officer

15   Mendoza, who had training, and which was going to bring up my

16   next point that she likewise cannot be liable for failure to

17   intercede since she, at that point, is concerned with tending

18   to Officer Catala, who is on the ground, in pain with a leg

19   broken in three places.

20          And, your Honor, on the excessive force issue,

21   interestingly, aside from the initial encounter, I will say,

22   Mr. Bacote is unable to identify specifically who did what, you

23   know, there was a punch, a kick, multiple punches, who did

24   what.  He simply does not know.  There's only one individual

25   that he does identify, only by a description, as having kicked

H15PBACC

1   him after he's handcuffed, but other than that -- and that

2   somewhat matches -- that description somewhat matches one of --

3   not exactly but somewhat matches one of the officers.

4           But other than that, there's no identification of the

5   one officer did one punch, you know, who punched, who kicked,

6   what was going on, and it's difficult.  I would submit that you

7   would have to know what particular officer did what in order to

8   claim that that particular officer engaged in excessive force

9   because a simple -- a punch is not, in and of itself, excessive

10  force, your Honor.

11          Right.  And, again, I reiterate that under the

12  circumstances, most of these officers are coming after Officer

13  Catala is already on the ground, and all they know is there's a

14  fight in progress.  They receive a radio call.  They come.

15  There's an officer on the ground.

16          And, your Honor, I'm going to point out two other of

17  the officers also were injured and had to be taken to the

18  hospital during this incident.  So I believe we have a viable

19  motion on the excessive force claim.

20          At least, your Honor, for the officer that had come

21  after this initial incident, confrontation, whatever you want

22  to call it because, again, to be fair, we do acknowledge

23  there's a question of fact as to who did what initially.

24          Thank you, your Honor.  That's a summary of our

25  anticipated motion.

H15PBACC

1          THE COURT:  Thank you.  Mr. Cohen, this is not oral

2     argument on the motion itself, but I'd like to give you the

3     opportunity to respond.  First, I'd like to hear your response

4     with respect to the first two issues identified by defendants,

5     namely, their concerns regarding the viability of the false

6     arrest and malicious prosecution claims as they go to the

7     later-arriving officers.  If those claims were dismissed, as I

8     understand it, we would have a trial with those issues with

9     respect to Officers Catala and Gregory.

10          MR. COHEN:  Well, so the later-arriving officers that

11     I could identify are, I think it was Leath.  I think everybody

12     else was pretty much there.  I would consider maybe dropping

13     him, as well, for the false arrest potentially, but everybody

14     else was there for the whole -- the whole reason or the

15     probable cause they claim was the reason for approaching or the

16     reasonable suspicion for approaching my client, which is to say

17     that he had gotten -- they had information from a witness that

18     he had assaulted someone.

19          Now, that witness testified and said he never told the

20     officers that, and there's where we have an issue of fact.  So

21     the whole very basis for all of these officers who were present

22     and heard this -- allegedly came up with this -- well, our view

23     is they came up with the story afterwards, that was their basis

24     for stopping and detaining my client.

25          And so they're all -- I think they're all liable

H15PBACC

1    equally for assisting in helping detain my client, if that is

2    their story, which I believe is a lie and a fabrication.

3             THE COURT:  Thank you.  Can I ask regarding an

4    apparent difference of opinion regarding the facts as you

5    assert them, compared with the description by counsel for

6    defendants.  Why do you say that only Officer Leath was late

7    arriving, as opposed to --

8             MR. COHEN:  The video shows all these other officers

9    were there.  The video shows Officer -- the officers identified

10   that Codero was there, that Marsonico was the one holding the

11   video, Officer Mendoza was there.  They all testified that they

12   were there when the initial interaction started.

13            THE COURT:  I'm sorry, let me take a moment then to go

14   back to counsel for defendant.  Counsel for defendants, are you

15   asserting that only Officers Catala and Gregory were there at

16   the initiation of the incident, or in other words, do you

17   dispute counsel's description of what is shown on the

18   videotape?

19            MR. RHODEN:  Your Honor, Horace Rhoden, your Honor.

20   What we're saying at the initial contact with Mr. Bacote, only

21   two officers were present with the initial contact, and only

22   those two officers know why the contact was made -- well, the

23   two officers and Mr. Bacote know why the contact was made.

24            THE COURT:  I'm sorry, counsel.  Let me interrupt you

25   because what I was told earlier was that your view was that the

H15PBACC

other officers were there responding to a fight and that they
arrived on the scene and that they saw Officer Catala on the
ground with a broken leg.  That is not entirely consistent with
your comments.  Could you please explain to me defendants' view
of the facts?

MR. RHODEN:  Your Honor, there was a struggle going on
some 75 to 80 feet away from where Mr. Bacote, the plaintiff,
was at the time, and this struggle caused for a call.  The
officers made a call of a fight in progress.  Now, once that
call was made, officers came on the scene, you know, at
different times.

THE COURT:  Thank you.  Let me ask again.  My
understanding from the description of the proposed motion from
defendants' presentation earlier was that the basis for the
probable cause of the later-arriving officers was that they
were responding to the call regarding a fight, which I
understood to be a reference to the fight involving Mr. Bacote.

Otherwise, it's not apparent to me why another fight,
not involving Mr. Bacote, would form the basis of probable
cause to arrest Mr. Bacote.  Could you please explain further?

MR. RHODEN:  Yes, your Honor.  The fight in progress
call was not the fight with Mr. Bacote.  The fight in progress
call was something that was going on some 75 feet away from
where Mr. Bacote was, and that's the call that caused the
officers to come to the scene.

1          Officer Gregory and Officer Catala was one of the

2    first officers that got to the scene, and once they got to the

3    scene, they were told information that the fight was caused by

4    Mr. Bacote, that the struggle involved Mr. Bacote, who was

5    standing some 80 feet away from where the struggle was going.

6          Officer Catala and Gregory then went over to

7    Mr. Bacote to question him regarding this fight.  Now,

8    obviously, there's a dispute here as to what happened when

9    Officer Catala and Officer Gregory went to Mr. Bacote and

10   questioned him, but needless to say, that contact was made

11   between the two.

12         The officers said Mr. Bacote put his hands on them.

13   Mr. Bacote said it was the officers that put their hands on

14   him, but needless to say, contact was made and a struggle began

15   between Officer Gregory, Catala and Bacote.  Within 30 seconds

16   of that struggle that began, Officer Catala and Mr. Bacote went

17   to the ground, and Officer Catala ended up with a broken leg.

18         THE COURT:  Thank you.  Can I ask regarding --

19   Mr. Rhoden, I'm sorry --

20         MR. RHODEN:  He went to migrate over to where this was

21   going on, but only Officer Gregory and Officer Catala could say

22   what happened to cause hands being placed on each other,

23   whether it was they put their hands on the plaintiff,

24   Mr. Bacote, or whether Mr. Bacote initiated the contact, only

25   those three.

1           But any other officers who came later on, once they

2      saw the tussling that was going on between two officers and a

3      civilian, then they certainly would have had probable cause at

4      that moment, and their probable cause would have been different

5      than Officers Gregory and Officer Catala had.  Once the other

6      officers come and they saw the tussling going on, they would

7      have had probable cause to intervene, and that's what we mean,

8      your Honor.

9           MR. COHEN:  Your Honor, may I clarify a little bit?

10     The video shows most of the officers -- I can't say all of them

11     for sure, I don't believe Leath or Ifill, actually now that I'm

12     thinking about it.  I have to review the video again.  But the

13     video shows all of the officers approaching before Catala even

14     gets to the ground.  All of the officers are present before

15     Catala falls to the ground.

16          There's no call made over the radio for these

17     officers.  The only officers that appear, that are defendants

18     in this case, that appear as a result of a call, from what I

19     gather from the evidence, are Ifill and Leath.  And I have to

20     review the video to be sure of that, but I think that those are

21     the only two Officers that actually appear as a result of a

22     call.

23          All the other officers are already on the scene

24     dealing with this other incident, and as Mr. Rhoden says,

25     they're about 50 to 70 feet away.  They are -- they claim the

1    basis for approaching Mr. Bacote was because they were dealing

2    with this incident, and they all -- first, Gregory and Catala

3    start walking over, but then they all walk over and start to

4    deal with Mr. Bacote.

5         Even Officer Mendoza was standing literally two feet

6    away when they threw -- when Gregory threw Catala and Bacote to

7    the ground.

8         MR. RHODEN:  Your Honor, we certainly would like to

9    make the motion to flush this out because I think the

10   undisputed evidence will show it was only Officer Gregory and

11   Officer Catala who made the initial contact with Mr. Bacote.

12        It was when the other officer -- they all testified

13   when they heard a ruckus, when they heard that Officer Gregory

14   and Officer Catala saying:  Put your hands behind your back,

15   put your hands behind your back, that's when they started to,

16   one by one, walk towards, walk like 75 to 80 feet from where a

17   fight was -- what was called a fight in progress was going on,

18   to go over to Mr. Bacote.  But the initial contact, the initial

19   touching was done only with Officer Gregory and Officer Catala.

20        THE COURT:  Thank you.  Thank you.  Thank you.  I look

21   forward to seeing the evidence on this.  I will see sworn

22   testimony, presumably.  Presumably, I will see some version of

23   recounting of the version of the facts suggested by Mr. Cohen,

24   as well.

25        There appears to be dispute regarding where the

H15PBACC

1   officers were at the time of the incident.  Mr. Rhoden asserts

2   that they were 50-plus feet away at the time of the incident.

3   Mr. Cohen states that the videotape shows that they were in

4   much closer proximity at the time of the initiation of what

5   counsel described as the fracas and those are facts.  If it's a

6   disputed fact, I will be able to evaluate it.

7        In any event, I will see sworn affidavits and other

8   testimony assuming to each of the respective versions of fact,

9   and I will have the opportunity to assess whether there's a

10  disputed fact on the basis of that information.  It's not

11  apparent to me that there's not a disputed issue of fact on

12  this issue, on the basis of the colloquy that we've had here,

13  but I can't make that determination at this time.

14       So let's talk about the denial of the right to fair

15  trial claim.  Before we move on to that, Mr. Cohen, I'd

16  appreciate it if you would consider whether there is a viable

17  claim with respect to the false arrest and malicious

18  prosecution as to Defendant Leath.  That is an issue that I

19  leave to you, but to the extent that the parties can continue

20  to narrow the issues that will be subject to the motion in

21  anticipation of trial, it will be appreciated.

22       MR. COHEN:  Absolutely, your Honor.  I will definitely

23  continue to see if I can narrow those issues.

24       With respect to the denial of fair trial, I think this

25  is possibly one of the strongest claims.  The criminal

1    complaint says that my client picked up -- you know, grabbed

2    Mr. Catala, Officer Catala, by the upper body and threw him to

3    the ground.  The video is -- completely shows something

4    different, but aside from that, the officers now have changed

5    their story.

6           One officer says that, no, he actually swung his arm

7    and he made him fall to the ground.  Another officer said he

8    did this leg lock, which apparently the defendants are now

9    adopting as their theory.  There's no appearance of a leg lock

10   in this video.  My client denies that there's any of this.

11          I mean, it's a pretty big fabrication here because it

12   was snowing, it was slippery outside.  They all admit it was

13   slippery outside.  The idea that my client actually physically

14   threw or kicked or pushed Officer Catala is just -- is a big

15   fabrication.  I think that's a material fabrication.

16          The officers all testified to telling prosecutors that

17   they believed my client intentionally pushed Catala to the

18   ground or leg locked him to the ground or did all those things.

19   When you look at the video, it's very clear to me, at least

20   from my interpretation of the video -- and, again, that's why

21   we need a fact finder -- that Gregory, in tussling with my

22   client and Catala, threw both of them to the ground.  And you

23   see both of them fall to the ground at the same time.

24          The other major fabrication is Louis Codero was in

25   charge of preparing the arrest reports.  Now, they do this

through the Omniform system in the NYPD, and because they don't have their own IDs, they have to use -- you know, user names and passwords to do the Omniform system, they use the officers from their local precinct, I think it was the 45th, who entered in a narrative.

And in that narrative, it says my client, as soon as he was approached by officers, started swinging, punching and kicking the officers. I showed the police report to all of the officers that were present, and I asked them if they saw my client doing that, and they said, no. And in fact, one officer says that's a total fabrication.

Now, Mr. Rhoden and defendants are playing a game and saying, well, he didn't actually prepare that report, the NYPD prepared the report. When I asked the Officer Codero if he prepared the report, he said -- he said he doesn't remember, but more importantly than that, I said: Did you actually printout the report? He said yes. And did you bring it to the district attorney's office? He said: Yes. I said: Did you read it before you brought it to the district attorney's office? He said: Yes. And did you make sure it was accurate? He said: Yes.

So whether he prepared the report or didn't prepare the report, he forwarded this fabricated evidence, which all the officers agreed did not occur, to the district attorney's office. And I think it's also, you know, it's also another big

1   fabrication here that I think makes this probably the strongest

2   claim, if not -- that we have.

3           THE COURT:  Thank you.  Counsel, can I pause you on

4   that because as I understand it, there's one report that was

5   forwarded to the prosecutor's office.  Counsel for defendant

6   pointed to three separate reports.  What's your view regarding

7   the significance of the reports, other than the initial report

8   that you just described?

9           MR. COHEN:  Well, it doesn't matter if they're written

10  or they're oral.  The information -- it's really the

11  information that's transmitted to the DA's office, and we also

12  have the -- we've got the DA summary from the district

13  attorney's office, and we're still waiting for the whole

14  district attorney file.

15          And the information is clearly -- it contradicts what

16  my client says, and it contradicts what some of the other

17  officers say.  So I don't I think there's a -- you know, the

18  reports are just evidence of what information was ultimately

19  transmitted to the DA's office.

20          There's another what appears to be an internal Co-Op

21  City report, and I'm not sure if it was transmitted to the DA's

22  office or not because the officer said he doesn't know if he

23  turned it over.  It doesn't matter whether the actual physical

24  document was turned over, as long as the information was turned

25  over.  And I think that this is evidence that this information,

 1   if it's in fact fabricated, would be the basis for the claim.

 2        THE COURT:  Thank you.  Can you remind me who the

 3   individual defendants are who are, I'll call it, the subject of

 4   your pretrial claim?

 5        MR. COHEN:  Sure.  So Sergeant Gregory, who testified

 6   in the grand jury and who also testified that he spoke to the

 7   district attorney's office and went there several times during

 8   the course of the pendency of the case.

 9        Same with Officer Catala did the same thing.  They

10   all, you know, alleged to the district attorney's office that

11   my client threw him or knocked him to the -- knocked Officer

12   Catala to the floor.

13        There is also Codero.  He is the one who was the

14   arresting officer, who was actually present for a lot of the

15   incident and submitted wildly changing stories in his report

16   and in his communication with the district attorney's office.

17        There's Officer Marsonico, who testified in the grand

18   jury, and Officer Mendoza, who also testified in the grand

19   jury.

20        We -- speaking of which, we got a decision from the

21   State court judge on the grand jury minutes.  She denied my

22   application.  I submitted a proposed letter that I'd like to

23   submit to your Honor as my basis for reviewing that decision,

24   and I'm waiting for Mr. Rhoden to give me his portion.  He said

25   he'll have it by the end of the week.

H15PBACC

```
 1              THE COURT:  Thank you.  I'm happy to review your

 2     letter.  It's not apparent to me what authority I have to

 3     review a decision by a State court judge.

 4              MR. COHEN:  I have cases that cite that you are

 5     absolutely authorized to review such a decision.

 6              THE COURT:  Thank you.  I will happily review those.

 7              MR. COHEN:  Okay.

 8              THE COURT:  Why would grand jury testimony, in and of

 9     itself, be a basis for any claim against these officers?

10              MR. COHEN:  They wouldn't be, actually, your Honor.

11              THE COURT:  I know.  Counsel, that's why I asked the

12     question.  I know.

13              MR. COHEN:  They explicitly are not the basis for a

14     claim.  What they are are circumstantial evidence of what was

15     told to the district attorney's office and what was told to the

16     district attorney.  You know, it's consistent with what

17     information -- it would also be impeachment for how their story

18     has changed from when they stated it close in time to when the

19     incident occurred and to now and at the various time frames in

20     this case.

21              THE COURT:  Thank you.  Continue.

22              Failure to intercede.

23              MR. COHEN:  Failure to intercede.  Okay.  So there are

24     two aspects of the failure to intercede, your Honor.  One is

25     the classical aspect, which is, they did not get involved when
```

1    they -- when there was a fight -- when they were using

2    excessive force, but there was also another failure to

3    intercede when other officers observed the violation of

4    constitutional rights, like fabricating evidence and the like.

5             You know, with respect to failure to intercede, one of

6    the -- Officer Leath, who was the subject of a prior

7    discussion, testified -- told me over the phone, in the

8    recorded conversation I had with him, which may or may not be

9    admissible in court, we'll find out -- told me that they

10   were -- that all the officers were trying to assault him and

11   were not interested in putting the handcuffs on him, and he

12   stepped in to put the handcuffs on because the other officers

13   were assaulting him.

14             THE COURT:  Thank you.

15             MR. COHEN:  So, I mean, to me, I think it's very

16   clearcut that there was a lot of officers there that were not

17   getting involved -- were not interested -- were really

18   attacking him and not interested in handcuffing him.

19             There was also an incident at the van, where my client

20   said he was being assaulted while in handcuffs, and there were

21   other officers present that didn't stop it.  And I believe even

22   Officer Catala could be in violation -- you could have a claim

23   of failure to intercede because during the incident, he didn't

24   tell them to stop or anything of that nature.  And during the

25   prosecution, during the case, he didn't tell the district

H15PBACC

1   attorney or anybody else that the other officers were

2   fabricating evidence, and same with Mendoza.

3           THE COURT:  Thank you.  Good.  Can I ask you to

4   respond to the proposed motion with respect to the excessive

5   force claims?

6           MR. COHEN:  Well, your Honor, I think the video has --

7   first of all, a lot of the officers admitted what kind of force

8   they employed.  One officer admitted that he used his baton.

9   Another officer admitted that he sprayed OC spray in my

10  client's eyes.  Another officer -- the video shows one officer

11  very explicitly, and this is a highly disputed fact, but it

12  shows an officer, after they've already put handcuffs on my

13  client, and everybody acknowledged the handcuffs were on, you

14  see him stepping into the center of the pile, where my client

15  is, which corresponds pretty closely with the injuries of a big

16  gash on his head.

17          So I don't believe that it can't be parsed out.  I

18  believe a fact finder can determine, using the video evidence,

19  using the officer's testimony, who is responsible for what

20  injuries and, you know, who is responsible for excessive force.

21  So I disagree with the claim that just because my client can't

22  identify who threw what punch, that that makes any difference.

23          THE COURT:  Thank you.  Good.  So let's talk about the

24  schedule for this proposed motion.

25          Counsel for defendants, when would you propose to file

H15PBACC

1    the motion?

2            MS. CORCHIA:  Your Honor, I thought we earlier had had

3    a February 20th date.

4            THE COURT:  Thank you.  Is that still your proposal,

5    or can you do it sooner?

6            MS. CORCHIA:  I think we would like to keep to that

7    date, your Honor.

8            THE COURT:  Thank you.  I ask in large part because we

9    know now, at this point, that we will be going to trial in this

10   matter with respect to certain claims in any event; so I'd like

11   to keep the case moving at a pace so that we can move to trial

12   promptly.

13           Counsel for plaintiff, what's your view?

14           MR. COHEN:  Of response time, opposition?

15           THE COURT:  No, first, the initiation date for the

16   motion practice?

17           MR. COHEN:  That's fine.  February 20th is fine.

18   Whatever is acceptable to the Court, your Honor.

19           THE COURT:  Thank you.  Good.  I will adopt that

20   proposal.

21           Counsel for plaintiff, how much time would you propose

22   to prepare your opposition?

23           MR. COHEN:  Can I have the same amount of time that

24   they have for moving, which is -- it looks like it's a little

25   bit more, like a month and a half?

1          THE COURT:  No.  I'm willing to give you up to a

2     month, but I prefer three weeks.

3          MR. COHEN:  Can I have a month, please?

4          THE COURT:  Thank you.

5          Counsel for defendants, what's your view?

6          MS. CORCHIA:  We have no objection, your Honor.

7          THE COURT:  Thank you.  Good.  Then the schedule for

8     the motion follows.  The motion for summary judgment is due no

9     later than February 20th.  Any opposition will be due no later

10    than one month following service of the motion.  Any reply will

11    be due two weeks following service of the opposition.

12          Let me take a moment just to direct each of you to the

13    SDNY's rules regarding 56.1 statements and, in particular,

14    opposition and replies to 56.1 statements.  First, as you know,

15    the rules generally require that you point to record evidence

16    in support of any contested piece of what you claim to be

17    undisputed material fact.

18          The local rules and my individual rules require that a

19    party that is presenting a 56.1 response basically cut and

20    paste out all of the 56.1 statements, and then respond

21    immediately below the statement by the opposing party.

22          I remind you that a 56.1 statement is not an answer to

23    a complaint; so you cannot simply say "denied" or "disagree."

24    There is a disputed issue of material fact.  Rather, you must

25    point to the record evidence that supports that position.

1    Failure to do so can be deemed an admission of the disputed

2    fact, even if you say "I disagree" or "this point is disputed."

3    You must point to record evidence establishing that.

4              I'll remind everybody that these motions, like all

5    others, are certified by counsel; so you are certifying, as

6    counsel, that there are disputed issues of material fact.

7              And in connection with the motions, as with everything

8    in the submissions that you're making to me, you must present

9    proper evidence supported by sworn affidavits in connection

10   with any documents that are to be considered by the Court in

11   connection with the motion, including deposition transcripts.

12             I think that's all that I'll point you to.  You should

13   also be aware that I request two courtesy copies of all of the

14   materials in connection with the motions which are to be

15   compiled by the moving party.  Those materials should include

16   the motions, the memorandum of law in support of the motions,

17   the affidavits and any evidentiary support that's presented in

18   connection with the motions.

19             So I look forward to seeing all of that, and I will

20   try to focus on these motions a little earlier on my list,

21   given that I understand we will be going to trial with respect

22   to a number of these claims.  I'd like to be able to move to

23   that promptly with respect to any claims that survive the

24   motion to dismiss and with respect to the false arrest and the

25   malicious prosecution, at least, as against defendants Catala

H15PBACC

1   and Gregory, as to whom I understand that no motion is being

2   made.

3          All right.  Is there anything else that we should

4   discuss in this conference, counsel for plaintiff?

5          MR. COHEN:  No, your Honor.

6          THE COURT:  Good.  Thank you.

7          Counsel for defendants?

8          MR. RHODEN:  No, your Honor.

9          THE COURT:  Good.  Thank you, all.

10          (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25