H21JBACC                        Teleconference

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ORRIN BACOTE,

 4                   Plaintiff,

 5            v.                             16 Civ. 1599 GHW

 6   RIVERBAY CORPORATION, et al.,

 7                   Defendants.

 8   ------------------------------x

 9

10                                      February 1, 2017
                                        4:05 p.m.
11

12

13   Before:

14                    HON. GREGORY H. WOODS,

15                                        District Judge

16

17                         APPEARANCES

18

19   COHEN & FITCH, LLP
          Attorneys for plaintiff
20   BY:  GERALD M. COHEN, Esq.
                    Of counsel
21

22   ARMIENTI, DeBELLIS, GUGLIELMO & RHODEN, LLP
          Attorneys for defendants
23   BY:  HORACE OWEN KIRK RHODEN, Esq.
          VANESSA MARY CORCHIA, Esq.
                    Of counsel
24

25
```

1          (Teleconference in Chambers)

2          THE COURT:  This is Judge Woods.  Do I have counsel

3    for plaintiff on the line?

4          MR. COHEN:  Yes, your Honor.

5          THE COURT:  Please identify yourself.

6          MR. COHEN:  Gerald Cohen for plaintiff.

7          THE COURT:  Do I have counsel for defendants on the

8    line.

9          MS. CORCHIA:  This is Vanessa Corchia from Armienti,

10   DeBellis, Guglielmo & Rhoden, and also with me is Horace

11   Rhoden.

12         THE COURT:  Good afternoon.

13         We're here to discuss the joint letter that was

14   submitted to me on January 30th, which was filed at Docket No.

15   97.  The issue relates to prospective testimony by Dr. Toosi in

16   this matter.  There have been a number of grounds raised by

17   counsel for plaintiff for exclusion of the testimony of that

18   witness.

19         I think I'd like to focus at the outset on the first

20   issue identified; namely, whether this expert testimony should

21   be precluded as a result of defendants' noncompliance with the

22   case management plan and the untimeliness of the expert

23   disclosures.  I would like to hear from defendants first about

24   this if I can.

25         Counsel, can you tell me how it is that you came to

1    the conclusion that expert testimony would be necessary here,

2    when you came to that conclusion, when and how you identified

3    Dr. Toosi, how you view that impacting the discovery process

4    going forward, and then ultimately what your views are

5    regarding how this approach functions under the existing case

6    management plan.

7         First, however, I would like to get a sense of the

8    facts here, what happened, when and how.  To that I just turn

9    over to counsel for defendants, whichever one of you would like

10   to address the issue.

11        MR. RHODEN:  Horace Rhoden here.

12        Your Honor, this issue actually first came up on

13   December 12th during the deposition testimony of Officer

14   Mendozo.  As your Honor may recall, Officer Mendozo is one of

15   the officers who no longer works for Riverbay Corporation, and

16   she lives outside of New York State.  She lives in Virginia.

17        So we were able to produce her, bring her back to New

18   York and produce her for a deposition on December 12th.  That

19   was the first time that we had an opportunity to discuss with

20   her the case.  On that day it was the first time we learned

21   about this leg lock maneuver where plaintiff, Mr. Bacote,

22   actually performed on Mr. Catala that caused his injuries, and

23   that is what she testified to also at the deposition.

24        Once there, once we learned about the leg lock

25   maneuver, we had to decide what will be done about it.

H21JBACC                    Teleconference

1    Sometime in December we thought it would be a very good idea to

2    have an expert on board who can discuss this and to determine

3    whether this type of injury -- how did Mr. Catala end up with

4    the type of injury that he had.  I want to point out to the

5    court this type of injury is not a simple ankle fracture; it is

6    a multiple ankle fracture with also ligament derangements as

7    well.

8            In the early part of January, I do not know the actual

9    date, we were able to identify Dr. Toosi and see if he would

10   assist us.  Along with that we were also trying to get the

11   actual records from for Officer Catala.  We have been trying to

12   get that since November.  We had a real difficult time in

13   obtaining it.  We did not get the actual record until January

14   10th, if my memory serves me right, when we got the actual

15   medical records for Officer Catala.

16           Once we got the actual medical records, we got the

17   deposition transcript of Officer Mendoza and also Mr. Bacote's

18   records, and we sent it off to Dr. Toosi for him to do the

19   reports.  We did not receive his report until January 21st, I

20   believe that is a Saturday, January 21st when we received his

21   report.  Then the deadline was due that Monday, January 23rd,

22   which we sent it out that Monday.

23           It was in the afternoon of that Monday simply because

24   the morning of that Monday I actually appeared in court in the

25   Bronx, I had two separate cases in the Bronx that morning.

1   Once I got back to the office that Monday, it was ready to go

2   and I made sure, as trial attorney, it was appropriate to go

3   out, and we sent it out that Monday.

4              THE COURT:  Thank you.

5              Let me ask, I understand that you assert that you

6   first heard about the leg lock from Officer Mendoza.  It was

7   Officer Catala's leg that was broken.  Did you hear, I take it,

8   there is no testimony or evidence from any person other than

9   Officer Mendoza that a leg lock was performed?

10             MR. RHODEN:  That's correct, your Honor.

11             I would like to point out, once your Honor gets an

12  opportunity to actually see the videotape, it was in a manner

13  of several seconds, four or five seconds, you know, from the

14  interaction to Officer Catala falling to the ground.  Officer

15  Catala did not know or was not aware of this leg lock maneuver.

16  There was another officer right beside him trying to apprehend

17  Mr. Bacote in the middle of it who did not know about the leg

18  maneuver.  It was officer Mendoza standing behind them, five

19  feet behind them and away from them who saw them do this leg

20  lock maneuver.

21             Additionally, Officer Mendoza happens to be also a

22  former corrections officer who was trained in the procedure of

23  the leg lock maneuver, just as the plaintiff, Mr. Bacote, is

24  also a former corrections officer who was also trained in that

25  maneuver as a corrections officer.  It was Officer Mendoza who

 1  was standing behind them and not involved in the fracas that

 2  was going on, she was able to see him perform the maneuver

 3  because of her position where she was, your Honor.

 4          That was the only officer that was in the vicinity

 5  that could have seen this.  All of the other officers were 50

 6  to 80 feet away from where this was going on.

 7          THE COURT:  Thank you.

 8          Can you specify when it was that you identified Dr.

 9  Toosi as a potential expert?

10          MR. RHODEN:  It would have been about January of this

11  year, your Honor.  I cannot say specifically what date in

12  January.

13          MR. COHEN:  You identified it to who?

14          THE COURT:  Let me be clear.  When the counsel for

15  defendants identified, i.e., found and -- let me refine it

16  more -- when they retained Dr. Toosi to act as an expert

17  witness in this case?

18          MR. RHODEN:  Yes, it would have been January of this

19  year, your Honor.  I could not tell you specifically what date

20  in January, but it was January of this year.

21          THE COURT:  Thank you.

22          How long did it take him to prepare the report from

23  the date that you gave him the medical records?

24          MR. RHODEN:  I would have to check on that, your

25  Honor.  We did not -- I don't know.  I don't know.  It was some

 1  time, I am sorry, I don't have the exact dates on that, but we

 2  didn't get it from him until January 21st.  He e-mailed it to

 3  us that Saturday, January 21st.

 4          THE COURT:  Thank you.

 5          I understood that he sent it to you on January 21st.

 6  Did he prepare the report in a question of days or weeks?  Can

 7  you estimate?

 8          MR. RHODEN:  It would be weeks, your Honor, but not

 9  many weeks.  Maybe a week and a half probably.  A week and a

10  half to two weeks, your Honor.

11          THE COURT:  Thank you.

12          Now, in the joint letter defendants note that, on Page

13  8 of the letter, that:

14          "Plaintiff is entitled to depose defendants' expert,

15  obtain a rebuttal expert, and defendants are entitled to depose

16  plaintiff's expert."

17          When you were providing this expert disclosure, can

18  you tell me what you understood the likely impact of that to be

19  on the expert discovery schedule in the case?

20          MR. RHODEN:  Your Honor, as per the federal rules, we

21  fully understand once we provide our expert disclosure,

22  plaintiff does have 30 days from the date we provide the expert

23  disclosure.  We understand that plaintiff, you know, has to do

24  whatever he needs to do if he wants to take depositions, you

25  know, we understand Federal Rule 26 does give him 30 days from

1    the time we provide the expert's disclosure to obtain that.

2              THE COURT:  Thank you.

3              You knew that at the time you made the disclosure on

4    the afternoon of the 23rd?

5              MR. RHODEN:  Yes, your Honor.

6              THE COURT:  Thank you.

7              Now let me circle back to one of your other comments.

8    Your comment was that the 23rd was the date that the initial

9    disclosure -- I am paraphrasing -- the 23rd was the date that

10   the initial disclosure for your expert was due.  Can you tell

11   me on what you base that statement?

12             MR. RHODEN:  Well, that was the deadline, your Honor.

13   That was the deadline for the initial disclosure, your Honor.

14             THE COURT:  Thank you.  What is the basis for that

15   statement?

16             MR. RHODEN:  That is the deadline?  That is in your

17   order, your Honor.

18             THE COURT:  Please take a look at it and point me to

19   the language you're referring to.

20             (Pause)

21             MR. RHODEN:  On your October 20th, 2016 order, the

22   last page, second to last paragraph, the deadline for the

23   completion of all expert discovery is extended to January 23rd,

24   2017.

25             THE COURT:  Thank you.  That makes reference to the

H21JBACC                          Teleconference

1   original May 2nd, 2016 case management plan.

2           Is that correct?

3           MR. RHODEN:  Yes, yes, your Honor.

4           THE COURT:  Thank you.

5           You appear to construe that as the deadline for

6   submission of initial reports for experts.  What's the basis

7   for that construction, based on the language in the October

8   order and the May order?

9           MR. RHODEN:  No, your Honor, I am not saying that is

10  the deadline for initial disclosures, your Honor.  That is the

11  deadline for expert disclosure, your Honor.

12          THE COURT:  I am sorry, counsel.  Let me ask you about

13  that.  What is the basis then for your statement that that is

14  the deadline for expert disclosures?

15          MR. RHODEN:  I am not following you, your Honor.  I

16  don't think I am following your Honor.

17          THE COURT:  Let me help you.  The words in the case

18  management plan are:

19          "All expert discovery shall be completed no later than

20  October 7."

21          That is the language from the May order which was

22  modified by the October order.  Those words are not initial

23  disclosures shall be exchanged.  They're not initial reports

24  shall be exchanged.  Those words are:

25          "All expert discovery shall be completed by date

1    certain."

2                What I am trying to understand is how you, as a

3    qualified lawyer, construed those words to mean that the

4    initial document in expert discovery would be disclosed for the

5    first time on that date as opposed to completion of all expert

6    discovery no later than that date, and you understood, counsel,

7    as you have told me now, that you knew that disclosure of this

8    information would then trigger a series of other steps,

9    including depositions, rebuttal experts and further discovery,

10   all of which are, I believe, expert discovery.

11               So my question is, how did you come to the belief that

12   the words in the order that, "All expert discovery shall be

13   completed no later than" means instead the very beginning of

14   expert discovery shall begin no later than that date.

15               Can you, please, help me with that, Mr. Rhoden.  Does

16   that help you?

17               MR. RHODEN:  I do not believe that January 23rd was

18   the date for me to submit the expert disclosure, your Honor.  I

19   am not saying that.

20               What I am saying is based on the time of when we

21   actually received the expert report, we had no choice but to

22   serve it on January 23rd, your Honor.  I agree with the court

23   that it should have been done before then and so that other

24   expert disclosures, if plaintiff wanted it, could have taken

25   place.  I agree, your Honor, with the court on that.

H21JBACC                      Teleconference

1          THE COURT:  Thank you.  Let me just inquire further.

2          Mr. Rhoden, did you not understand Paragraph 7 (b) of

3    the case management plan to set a deadline for completion of

4    all expert discovery?

5          MR. RHODEN:  I understood that, your Honor.

6          THE COURT:  Thank you.

7          You, prior to January 23rd, as early as mid-December,

8    were aware that you might wish to use an expert, you retained

9    an expert well before January 23rd, and at no point prior to

10   the expiration of the expert discovery deadline did you request

11   an extension of the expert discovery period in order to permit

12   additional expert discovery.  Is that correct?

13         MR. RHODEN:  That is correct, your Honor.

14         THE COURT:  Thank you.

15         I hope that you appreciate my difficulty here.  You've

16   quoted the October order which makes it very clear that further

17   extensions of the deadlines in this case would be scrutinized

18   by me, and given the repeated extensions that I previously

19   granted, I am confronted now by a situation in which,

20   Mr. Rhoden, you have told me you knew that the order required

21   that expert discovery be completed by a date certain, you knew

22   that you wanted to use an expert before that date, you allowed

23   a month and a half to elapse following your knowledge of that

24   fact, filed the initial disclosure at 4:00 pm on the last day

25   of the deadline, and never took any steps to, despite our

H21JBACC                        Teleconference

intervening conferences, to request an extension of the expert

discovery deadline, all of this against the backdrop of an

order, initial order, that requires that modifications of the

scheduling order must requested no later than two business days

before the expiration of the relevant deadline and against the

backdrop of a series of prior extensions of fact and expert

discovery by the court.

            So I understand now from your comments, Mr. Rhoden,

the facts are as I described them; namely, you knew that there

was a deadline, you did not notify the court or your opponent

of your intent to use an expert, you did not request an

extension of the expert discovery deadline despite the fact

that you're aware that the consequences of your decision would

be a dramatic extension of the expert discovery period in this

case, and you said nothing to me or plaintiff during our prior

conferences in the intervening periods.

            So that is the frame in which I am considering this

application, and with that frame in mind, I'd like to hear from

plaintiff, and then, Mr. Rhoden, as you're considering that

frame, I am going to come back to you and ask you to speak to

this issue.

            In light of all of the prior extensions of time and

what you knew at the time that you made these decisions not to

disclose and not to request an extension of time and to provide

this report at literally the 11th hour in the schedule, this

1    issue is one that is not straightforward and problematic and

2    somewhat troublesome.

3           So let me hear from counsel for plaintiff.  I would

4    like to hear your views on this issue.  Then I would like to

5    come back to Mr. Rhoden with that frame in mind to hear more

6    about why I should consider permitting this testimony, despite

7    what appears to be noncompliance with the terms of the Rule 16

8    order.  Mr. Cohen.

9           MR. COHEN:  Your Honor, I echo the sentiments that

10   you've made.  As you're aware, the defendants knew or appeared

11   to know they were going to retain an expert in earliest

12   mid-December.  I was never put on notice of that.  I was never

13   made aware of it.  I, in fact, in no way was even considering

14   an expert until I received the expert disclosures on January

15   23rd, even after they had hired one, given him all the records

16   and so forth.  So I think just looking at your prior rulings on

17   this very issue which I have cited in the letter, we are

18   looking at all the factors, I don't believe Mr. Rhoden's

19   explanation for failure to comply with the disclosure

20   requirement has been met, is persuasive.

21          Number two, the importance of the testimony being

22   precluded.  I highly question whether this would even pass

23   Daubert muster, as I put in the letter.  This witness doesn't

24   know anything about marshal arts, has never been in training

25   for any marshal arts.  There is only one witness here that even

1    saw this supposed leg lock.  The video doesn't capture a leg

2    lock.  The other witnesses that were there did not even see a

3    leg lock, not even the individual who was injured could even

4    say his leg was locked in any way.  He said he was pushed down

5    with the use of his hands.  I see that this testimony would

6    just confuse the jury and confuse the issues here.

7            There is also a main issue in the case, how Officer

8    Catala got injured.  No one is disputing that he was injured.

9    No one is disputing he fell to the ground, and really the

10   issues of the case are whether they had cause to arrest my

11   client and whether they were lying to the prosecutors when they

12   filed a complaint with the Court, stating that my client threw

13   Officer Catala to the ground, picked him up by his upper

14   body -- no mention of the legs at all in the complaint --

15   picked him up by the upper body and threw him to the ground,

16   which is clearly not what happened here and not what any of the

17   witnesses say happened.

18           I think this is just going to add more to discovery,

19   and it really shouldn't be the case given how much delay has

20   already happened in this case.

21           THE COURT:  Thank you.

22           Mr. Rhoden, can I hear from you with respect to the

23   set of issues that were presented in the letter.  How do you

24   respond?  In your response, I would be interested in any

25   comments regarding your understanding of the order and any

H21JBACC                        Teleconference

1    response to Mr. Cohen's comments right now.  Is there anything

2    you would like to say, Mr. Rhoden?

3              MR. RHODEN:  Yes, your Honor.

4              First off, your Honor, until we actually received the

5    expert report, we would not have known whether or not we would

6    use an expert or not.  We needed the report to make that

7    determination whether or not that expert could actually assist

8    us.

9              Just because we talked to the expert or retained an

10   expert does not mean that we would have used that particular

11   expert, and we would not have known that until we received his

12   report.  Again I would like to point out we received that

13   report on Saturday, January 21st, when we actually received the

14   report.  So we would not have known that we were going to

15   actually use the expert until then.

16             Furthermore, I think, your Honor, if we opened up the

17   expert discovery, not fact discovery, expert discovery for

18   another two weeks, that is certainly sufficient time for the

19   plaintiff to do a deposition if he needs to.

20             THE COURT:  I am sorry, counsel.  Let me inquire on

21   that comment.  Is it your understanding that the only

22   consequence of, the only additional work that will be required

23   as a result of this will be a deposition by plaintiff of your

24   expert?

25             MR. RHODEN:  And if he wants to retain his rebuttal

1  expert, I believe he has the right to do that as well.

2         THE COURT:  Thank you.

3         Can I ask, Mr. Rhoden, would you expect plaintiff to

4  depose your expert before they retain an expert of their own

5  with whom they can consult regarding the report?

6         MR. RHODEN:  I don't know, your Honor.  I have no

7  expectation in that regard, your Honor.

8         THE COURT:  Really?

9         So your belief is that the sum total of the impact of

10 this disclosure is an extension of expert discovery by

11 approximately two weeks, is that what you are stating to the

12 court, counsel?

13        That is what you just stated to the court?

14        MR. RHODEN:  Yeah.  Well, 30 days, your Honor, I

15 believe that is what the Federal rules stated, 30 days, and

16 within that time I believe a deposition -- I mean not

17 deposition, but summary judgment motion will still be ongoing

18 within that time-frame.

19        THE COURT:  Counsel, no, I am sorry.

20        The schedule under the case management plan, if you

21 studied it, as you must have, clearly provides for summary

22 judgment motions by a date certain following the close of all

23 discovery, including expert discovery.  That's the reason why

24 you had such an extended period between the close of discovery

25 when you submitted your letter to me requesting a premotion

1     conference and the deadline for submission of your motions.

2     That was because at that point in time I was operating under

3     the expectation, undispelled by you, that there would be no

4     expert discovery.

5             If there is a round of expert discovery that is to be

6     conducted following fact discovery, that will postpone the

7     entire process because we will complete expert discovery, then

8     summary judgment motions and any Daubert motion for any expert

9     testimony would be submitted.  These things will not overlap.

10    Expert discovery necessarily pushes back everything in the

11    case.  That is the structure under the case management plan

12    that has been established since May, and so I just wanted to

13    pause you to address that premise of your comments.

14            Let me come back to plaintiff regarding the

15    anticipated delay associated with potentially allowing the

16    defendant to use this untimely-disclosed expert.

17            What is your estimate, Mr. Cohen, of the amount of

18    time that it would take for you to review the report, identify

19    an expert, depose defendants' expert, propound a rebuttal

20    expert, if any, and to allow defendants to conduct a deposition

21    of your expert?  Mr. Rhoden, I understand, believes that

22    process will take approximately two weeks.

23            What is your view, Mr. Cohen?

24            MR. COHEN:  I think that is a gross underestimate of

25    how long that would take.  I would have to find an expert in

1    this field, and I am not even sure what this field is because

2    this expert doesn't seem to even -- it doesn't appear to me to

3    be qualified for this field.  In any case, I would have to find

4    an expert to review the report with me, develop a report myself

5    and consult me on how questions to ask and explore during the

6    depositions of this expert.

7         Then I would have to prepare a report with the expert,

8    we'll have the expert prepare a report, review the report and

9    submit it to Mr. Rhoden, and then Mr. Rhoden would have to

10   depose him.  I think this would take probably two to three

11   months, and then there would be a round of Daubert motions.  I

12   don't know if Mr. Rhoden would make a Daubert motion on my

13   expert, but I will certainly make one on his.  This will delay

14   this case several months, as your Honor suggested.

15        THE COURT:  Mr. Rhoden, there is a discrepancy between

16   Mr. Cohen's estimate of the time delay associated with this and

17   yours, your estimate of two weeks.  Mr. Cohen estimates two to

18   three months.  Can you give me your position regarding the

19   discrepancy so I can evaluate which position is more credible

20   and likely?

21        MR. RHODEN:  Yes, your Honor.

22        Your Honor, when I say "two weeks," I was simply

23   speaking of the time to depose my expert, your Honor.  I would

24   not think this is all.  I do concur, the Federal rule gives 30

25   days to do this.  I am in full concurrence with this.  I would

1  not say this would delay this case two weeks, that was not my

2  intention.  The Federal rules does give him a right to 30 days

3  after the initial disclosure, your Honor.

4            THE COURT:  Thank you.

5            Is your estimate then consistent with that of Mr.

6  Cohen's; namely, that allowing this expert testimony will add

7  two to three months for completion of expert discovery and that

8  it will also implicate a round of Daubert motions with respect

9  to the expert testimony?

10           MR. RHODEN:  No, your Honor, I don't see why two to

11 three months at all.  It is certainly outside of the

12 time-frame.  I believe 30 days is sufficient time to complete

13 the expert disclosure, to have him retain an expert and depose

14 our expert, and to give us time to depose their expert if we so

15 feel is necessary.  At least 30 days is sufficient time.

16           THE COURT:  Thank you.

17           The original case management plan required that the

18 parties confer on a schedule for expert disclosures, including

19 reports, production and underlying documents and depositions no

20 later than 30 days prior to the completion of fact discovery.

21 That clearly did not happen.  I assume that didn't happen

22 because the parties were not anticipating expert testimony, I

23 assume without knowing.

24           The purpose of that provision, however, is to

25 establish a schedule for those things at least two and a half

1   months prior to the close, prior to the close of expert

2   discovery.  I think that the structure of the case management

3   plan that I originally put in place anticipated that there

4   would be a conference, and that these issues would be

5   discussed, and that following their discussion, there would be

6   an orderly period of 30 days following the conferral required

7   pursuant to Paragraph 7 (c), and then an additional 45 days

8   thereafter for completion of all expert discovery.

9           I again expect that counsel reviewed that order and is

10  aware that it established a structure, which essentially there

11  would be a two-and-a-half-month period for these issues to be

12  disclosed, discussed and fully litigated.  As a result, because

13  of that structure, and because of I think the simple practical

14  experience, the two-to-three-month period that Mr. Cohen is

15  suggesting is more, much more likely than Mr. Rhoden's original

16  estimate of two weeks, and it seems also more likely than what

17  I understand perhaps to be Mr. Rhoden's subsequent estimate of

18  30 days.

19          So even if I push this, I expect that this will result

20  in a two and a half or so month delay in the process plus, as

21  Mr. Cohen identifies, it will require a round of Daubert

22  motions which, coincidentally, if they are tied at all to the

23  issues in the summary judgment motion, I would need to resolve

24  prior to ruling on the summary judgment motion.  So most likely

25  we're talking about a three-to-four-month delay.

1          MR. COHEN:  Your Honor, may I?

2          THE COURT:  Yes.

3          MR. RHODEN:  Mr. Rhoden, your Honor.

4          THE COURT:  Proceed.

5          MR. RHODEN:  Your Honor, these experts, your Honor,

6    this opposition has nothing to do with the summary judgment

7    motions, your Honor.  We believe the summary judgment can

8    proceed while this expert is proceeding.  The two issues are

9    separate and apart, your Honor.  The expert has nothing to do

10   with our motion for summary judgment and it will not impact the

11   motion for summary judgment schedule, your Honor.

12         THE COURT:  Thank you.

13         MR. COHEN:  Your Honor, they've indicated they're

14   moving on excessive force, they're moving for summary judgment

15   on excessive force.  I don't know how that wouldn't impact it.

16         If I anticipate the argument being that my client

17   performed some sort of leg lock which would justify them using

18   the force that they did against my client, I don't know how

19   that could not, could not be included in the summary judgment

20   motion.

21         MR. RHODEN:  Your Honor, we're moving for summary

22   judgment on excessive force not for all the officers, your

23   Honor, just for some officers that have nothing to do with what

24   happened to Mr. Bacote or Mr. Catala.

25         Even Mr. Bacote has agreed with us, he already agreed

1    to dismiss some of the charges against some of the officers.

2    So it is not for all the officers and, no, your Honor, we are

3    absolutely not relying on this leg lock maneuver in our summary

4    judgment motion, nor are we relying on our expert report.  We

5    are here relying on the summary judgment.  We are not relying

6    on that.  It has nothing to do to do with the summary judgment

7    motion.

8         THE COURT:  Mr. Rhoden, very recently I denied Mr.

9    Cohen leave to make a motion to this Court for grand jury

10   materials from the state court, pointing to the case management

11   plan.  Why is your noncompliance with the case management plan

12   something I should deal with differently?

13        MR. RHODEN:  Your Honor, simply because of the time

14   limits, that there is nothing we could have done regarding the

15   time limits.  Once we found out on December 12th regarding this

16   leg lock maneuver, and then we had to then go and obtain

17   Officer Catala's record, which took some time to do, and, of

18   course, even Mr. Cohen admits -- because we sent him the

19   authorization back in November, and today he still was not able

20   to get Officer Catala's record -- he admits to us he could not

21   get the records, so there was an issue in getting these

22   records.

23        Once we got the records, we immediately, forthwith

24   sent them out to the experts.  We did not know until we

25   received the expert reports, we could not have known whether or

1   not we were going to, in fact, use this expert or not, your

2   Honor.  The only time when we got the report was on January

3   21st, that Saturday.

4           This was outside of our control, and your Honor says

5   we could have requested the court for an extension.  Honestly,

6   your Honor is correct, I did not think of that.  That is my

7   fault.  I did not think of that, to ask for an extension.  I

8   certainly did not think of that.  That is absolutely my fault.

9           Yes, your Honor, as I was saying, I did not think of

10  that, that is my fault, but we just ask, whatever the time he

11  needs to do whatever he needs to do, we agree with it, to give

12  it to him, your Honor, but as to summary judgment motion, it is

13  our belief this will not require you to push back the dates

14  that you've already established for the summary judgment

15  motion.

16          THE COURT:  Thank you.  Fine.

17          I need to think about the parties' arguments on these

18  issues.  The exclusion of this expert on the basis of

19  noncompliance with the Rule 16 order is not an issue that I

20  take at all lightly, and I want to consider the information

21  that the parties have presented to me here.

22          If either of you would like to submit more written

23  statements beyond what you've already put forth in your January

24  30th letter in connection with this issue, I'd ask that you let

25  me know no later than sometime tomorrow morning, just let me

 1    know if you want to do it.  If you do, I will set a briefing

 2    schedule for more formal motion practice on this issue.

 3              If I do not hear from you by noon tomorrow, I will

 4    assume that you are willing for me to make the decision on the

 5    basis of the letter and your arguments here.  I will try to

 6    make this decision promptly.  I can tell you that I really

 7    wanted to hear from both of you before making this decision.  I

 8    didn't want to do so on the basis of the letter alone.

 9              Let me address the remaining bases for potential

10    exclusion of Dr. Toosi.  I will just say this to close the

11    circle on the set of issues raised in the letter.  I expect

12    that if I do allow defendants to go forward with the testimony

13    of Dr. Toosi, that I would set a briefing schedule for any

14    Daubert motions.

15              As I said earlier, my usual practice is to require

16    briefing of Daubert motions concurrent with summary judgment

17    motions and, as a result, we would have to consider both the

18    summary judgment schedule and the Daubert schedule, and that is

19    an issue that I will decide after I've considered this gating

20    issue.

21              Thank you very much for sharing all of the information

22    that you have, and I am sorry for not being in a position to

23    give you a decision at this moment.

24              Is there anything that either of you would like to add

25    before we adjourn?  First Mr. Cohen?

 1          MR. COHEN:  Your Honor, if I could just have some

 2     clarification.  We think if we are adding additional briefing,

 3     would you like more on the issue of Rule 16 or more on -- it

 4     sounds like the Daubert issue would be something we would get

 5     briefing on if you decide the threshold matter as to whether

 6     you're going to permit the extension of the discovery schedule.

 7          THE COURT:  That is correct.

 8          MR. COHEN:  I just want to, if I may, I just want to

 9     add, going back to whether it affects the summary judgment, one

10     other issue, not just the excessive force I just thought of

11     while we were on the phone, my client was charged with

12     assaulting a police officer, and the manner in which the

13     assault was done, it is very relevant to this case because in

14     the criminal complaint and in the police paperwork, it says the

15     manner it was done in one way, and then now the officers and

16     the defendants are taking a position it was done another way.

17          This issue as to whether that has been done is

18     definitely relevant to summary judgment on the malicious

19     prosecution claim and even the false arrest claim.  I think it

20     definitely affects summary judgment here.

21          I think this is going to delay the case tremendously

22     and add certainly a lot of burden on plaintiff to scramble to

23     find a rebuttal witness, and I just think that Mr. Rhoden knew

24     maybe not 30 days before, he certainly knew in mid-December

25     that he was going to get an expert, and he could have discussed

1    this with me even outside the court's presence so that I can

2    make arrangements, but nothing was done, nothing was done until

3    literally 4:00 pm on the date discovery was due.

4          I ask this Court to really -- already your Honor's

5    raised all the concerns I have discussed, and I just ask the

6    court to really consider that, especially in light of the fact

7    that plaintiff also was seeking discovery not too long ago on

8    items that I thought, plaintiff thought informed the court

9    about and was giving up on the court on whether we could get

10   that discovery.  I think in terms of fairness, I don't think

11   this will be fair to allow the defendants to reopen discovery

12   when plaintiff didn't have that opportunity as well.

13         THE COURT:  Thank you.

14         Let me just say one thing simply because neither party

15   has raised it, but it is an issue I have in mind and I want to

16   make sure that I take a moment to put it on the table, which is

17   that I understand that Mr. Rhoden does not expect that his

18   expert's testimony will be pertinent to the summary judgment

19   motion.

20         I also have to anticipate that plaintiff will be

21   retaining an expert, and it may be that plaintiff would seek to

22   use testimony obtained from or information obtained from his

23   expert in connection with the summary judgment motion.  So I

24   appreciate Mr. Rhoden's comments about his intent not to rely

25   on this expert testimony in connection with his, what I will

1    call affirmative summary judgment motion, but the flip side

2    also exists; namely, plaintiff could attempt to use their

3    rebuttal report in opposition to the motion.

4                MR. COHEN:  Absolutely.  Since I don't know what my

5    rebuttal is going to be at this point because I haven't

6    retained an expert, that definitely is a possibility.

7                THE COURT:  Thank you.  Mr. Rhoden, do you have

8    anything further before we break?

9                MS. CORCHIA:  I have a question, your Honor, just some

10   clarification.  You indicated that tomorrow you would like to

11   know if the parties want to make a further submission on this

12   issue.  Do you want that by ECF-filed letter or simply a letter

13   to your Chambers?

14               THE COURT:  ECF-filed letter, please.

15               MS. CORCHIA:  Thank your Honor.

16               THE COURT:  Thank you.

17               MS. CORCHIA:  And you said that is only a statement

18   that we would like to do a further submission?  We don't have

19   to actually do the further submission?

20               THE COURT:  Correct.  If I see nothing from either

21   party by noon tomorrow, I will proceed to making my decision,

22   and I am giving you this opportunity, if you wish to take it,

23   but I believe that you have given me sufficient information to

24   make my decision.  I, however, would want to give you the

25   opportunity if you wish to take it.

H21JBACC                        Teleconference

1            MS. CORCHIA:  Thank your Honor.

2            THE COURT:  Good.  Thank you, all.  This proceeding is

3    adjourned.

4            (Court adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25