UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ORRIN BACOTE,

                         Plaintiff,

                                                         **16 CV 1599**

                -against-

RIVERBAY CORPORATION, et al.

                        Defendants.
-------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISQUALIFY COUNSEL AND
<u>PRECLUDE EVIDENCE</u>**

GERALD M. COHEN
JOSHUA P. FITCH
ILYSSA FUCHS
COHEN & FITCH LLP
Attorneys for Plaintiff
233 Broadway, Suite 1800
New York, N.Y. 10279
(212) 374-9115
gcohen@cohenfitch.com
jfitch@cohenfitch.com
ifuchs@cohenfitch.com

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 1

ARGUMENT ................................................................................................................. 5

I.     PLAINTIFF'S COUNSEL DID NOT VIOLATE ANY ETHICAL RULES ............. 5

     A. Plaintiff Counsel's Undisclosed Recording of Lamont Leath Did Not Violate Any Disciplinary Rules ........................................................................................ 6

         i. According to Any Interpretation of the Model Rules, Recording Mr. Leath Was Perfectly Proper Under These Circumstances ..................................... 8

         ii. Defendants Cannot Point to A Single Case that Disqualified an Attorney For Surreptitiously Recording A Witness .................................................. 10

     B. Counsel's Discussion With Lamont Leath, Who Was An Unrepresented Party At The Time, Did Not Violate Rule 4.2 Of Professional Code of Responsibility ...... 11

     C. Plaintiff's Counsel Was Not Required to Advise Lamont Leath of His Right to Counsel ........................................................................................................ 13

     D. Plaintiff's Counsel Will Not Be a Necessary Witness At the Trial ....................... 15

II.    DEFENDANTS HAVE UTTERLY FAILED TO ESTABLISH THE NECESSARY PREREQUISITES FOR DISQUALIFICATION ........................................................ 16

     A. Defendants Have Not Articulated Any Cognizable Prejudice as a Result of Any of the Undersigned's Conduct .................................................................................. 17

         i. Defendants Suffered No Prejudice from the "Ethical Violations" ............ 17

         ii. There Was No Quid Pro Quo for Mr. Leath's Statements and No Resulting Prejudice .................................................................................................. 19

         iii. Plaintiff's Counsel Disclosed the Existence of the Recording and Turned It Over Immediately Upon Request So There Can be No Prejudice ............ 21

III.   THERE IS NO BASIS TO PRECLUDE COUNSEL'S TAPE RECORDED CONVERSATION WITH LAMONT LEATH ........................................................ 22

A.   The Manner in Which the Evidence is Obtained is Not Dispositive of Preclusion22

B.   The Cases Upon Which Defendants Rely Are Wholly Distinguishable and Not Relevant to Their Motion to Preclude...................................................................24

CONCLUSION..............................................................................................................................25

TABLE OF AUTHORITIES

Alexander Interactive, Inc. v. Adorama, Inc., 2014 WL 2968528 (S.D.N.Y. 2014)..............10, 11

Armstrong v. McAlpin, 625 F.2d 433, 446 n. 26 (2d Cir.1980)...................................................16

Beltran v. InterExchange, Inc., 2015 WL 7253286 (D. Colo. 2015) ...........................................23

Bermejo v. New York City Health & Hosp. Corp., 135 A.D.3d 116 (2nd Dept. 2015) .........10, 11

Bruske v. Arnold, 44 Ill.2d 132 (1970).......................................................................................24

Colburn Family Found. v. Chabad's Children of Chernobyl, 739 F. Supp. 2d 614 (S.D.N.Y. 2010) ............................................................................................................................................13

Decker v. Nagel Rice LLC, 716 F.Supp.2d 228, 231 (S.D.N.Y.2010) ........................................16

E.E.O.C. v. Hora, Inc., 239 F. App'x 728 (3d Cir. 2007) ...........................................................21

Evans v. Artek Sys. Corp., 715 F.2d 788 (2d Cir. 1983) .............................................................16

Fagiola v. Nat'l Gypsum Co. AC & S., 906 F.2d 53 (2d Cir. 1990) .............................................15

Faulkner v. Arista Records LLC, 797 F. Supp. 2d 299 (S.D.N.Y. 2011) ....................................16

Fox v. Idea Sphere, Inc., 2013 WL 119743 (S.D.N.Y 2013) .................................................16, 17

Gidatex, S.r.L. v. Campaniello Imports, Ltd., 82 F. Supp. 2d 119 (S.D.N.Y. 1999) ..................22

Glueck v. Jonathan Loaan, Inc., 653 F.2d 746 (2d Cir.1981) .....................................................16

Gurniak v. Emilsen, 995 F. Supp. 2d 262, 269–70 (S.D.N.Y. 2014) ............................................8

Harris v. New York, 401 U.S. 222 (1971) ..................................................................................24

Hecklerco, LLC v. Yuuzoo Corp. Ltd., 2016 WL 7742783 (S.D.N.Y. 2016) .............................18

Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127 (2d Cir. 2005) ...................16

Heng Chan v. Sung Yue Tung Corp., 154 Lab. Cas. P 35293, 2007 WL 1373118, (S.D.N.Y. 2007)................................................................................................................................................8

Kenyatta v. Kelly, 375 F. Supp 1175 (E.D.P.A. 1974) ...............................................................24

Lewis v. City of Albany Police Dep't, 547 F. Supp. 2d 191 (2d Cir. 2009) ..................................9

Marceaux v. Lafayette City-Par. Consol. Gov't, 731 F.3d 488 (5th Cir. 2013) ...........................6

McHugh ex rel. Kurtz v. Fitzgerald, 280 A.D.2d 771 (N.Y. App. Div. 3rd Dept. 2001) ........11, 12

Mena v. Key Food Stores Co-op., Inc., 195 Misc. 2d 402 (N.Y. Sup. Ct. 2003) ......................6, 7

Miano v. AC & R Advert., Inc., 148 F.R.D. 68 (S.D.N.Y.) ...........................................22

Michigan v. Harvey, 494 U.S. 344 (1990) ...................................................................24

Murray v. Metro. Life Ins. Co., 583 F.3d 173 (2d Cir. 2009) ........................................17

Nycomed U.S. Inc. v. Glenmark Generics Ltd., 2010 WL 3173785 (E.D.N.Y. 2010) ...............23

Obeid ex rel. Gemini Real Estate Advisors v. La Mack, 2015 WL 7180735, (S.D.N.Y. 2015) ..16

Pall Corp. v. 3M Purification Inc., 279 F.R.D. 209 (E.D.N.Y. 2011) ............................23

Papanicolaou v. Chase Manhattan Bank, N.A., 720 F. Supp. 1080 (S.D.N.Y. 1989) ................19

People v. Blankymsee, 196 Misc. 2d 240 (N.Y. Sup. Ct. 2003) ....................................8

People v. Herr, 158 Misc. 2d 306(N.Y. Sup. Ct. 1994), aff'd, 86 N.Y.2d 638 (1995) ..................8

Sackler v. Sackler, 15 N.Y.2d 40 (1964) ....................................................................22

Shabbir v. Pakistan Int'l Airlines, 443 F. Supp. 2d 299 (E.D.N.Y. 2005) .........................16

Stagg v. N.Y. City Health & Hosps. Corp., 162 A.D.2d 595 (1990) ...............................22

Trans-Cold Exp., Inc. v. Arrow Motor Transit, Inc., 440 F.2d 1216 (7th Cir. 1971) ..................25

United States v. Hammad, 858 F.2d 834 (2d Cir. 1988) .................................................22

United States v. Killian, 639 F.2d 206 (5th Cir. 1981) ...................................................24

United States v. Kusek, 844 F.2d 942 (2d Cir. 1988) ...................................................24

United States v. Prevezon Holdings Ltd., 2016 WL 96170 (S.D.N.Y. 2016) ...........................16

United States v. Rogers, 751 F.2d 1074 (9th Cir. 1985) ...............................................25

United States v. Thomas, 474 F.2d 110 (10th Cir. 1973) ..............................................24

Univ. Patents, Inc. v. Kligman, 737 F. Supp. 325 (E.D. Pa. 1990) ...............................17

W. T. Grant Co. v. Haines, 531 F.2d 671 (2d Cir. 1976) ........................................13, 14

Zegarelli v. Hughes, 3 N.Y.3d 64 (2004) ....................................................................15

<u>Zubulake v. UBS Warburg LLC,</u> 220 F.R.D. 212 (S.D.N.Y.2003) ...............................................23

<u>20th Century Wear, Inc. v. Sanmark-Stardust Inc.</u>, 747 F.2d 81 (2d Cir. 1984) .........................24

Plaintiff respectfully submits this Memorandum of Law in opposition to defendants' motion disqualify plaintiff's counsel and preclude the evidence of the undersigned's conversation with defendant Leath.

## PRELIMINARY STATEMENT

Defendants' motion to disqualify counsel and preclude his tape-recorded conversation with defendant Leath – an unrepresented party at the time –  is premised on baseless accusations of unethical conduct and ad hominem attacks on plaintiff's counsel, that are wholly unsupported by the facts of this case. Indeed, defendants' motion is plagued by distortions of the factual record and misguided legal arguments that fail under every conceivable standard to establish that any sanctions – let alone the drastic sanctions of disqualification or preclusion – are warranted here. Most significantly, defendants have failed to even *allege* the most indispensable prerequisite to any motion for disqualification or preclusion – namely, what, if any, prejudice they have suffered as the result of the undersigned's alleged unethical conduct – thereby illustrating that this motion is nothing more than a continuation of the dilatory conduct that they have engaged in throughout this entire case. Therefore, defendants' motion must be denied.

## FACTUAL BACKGROUND

These claims arise from an incident that occurred on February 1, 2015, where several Co-Op City (hereinafter "Riverbay Corporation") police officers brutally attacked him, and thereafter falsely arrested, imprisoned and prosecuted him in order to conceal their unlawful conduct. See Third Amended Complaint, annexed to the Declaration of Gerald Cohen ("Cohen Decl.") as Exhibit ("Ex.") A. Fortunately, there was a video of the incident exposing defendants' falsehoods, which was thankfully presented to a grand jury that refused to indict plaintiff and

1

ultimately caused the District Attorney's Office to dismiss the case. <u>See</u> Certificate of Disposition, Cohen Decl., Ex. B.

**The Initial Complaint and Discovery of Mr. Leath's Identity**

On March 2, 2016 plaintiff filed the instant civil rights action alleging *inter alia* that defendants had committed various constitutional torts against him. In his original complaint, defendant Leath was not named as a defendant because his name did not appear on any of the criminal court documents as a participant in this incident. Further, plaintiff's ability to identify all of the officers involved in the incident was hindered because his eyes had been sprayed with a chemical agent and he was disoriented from the attack. <u>See</u> Selected Portions of Leath Deposition ("Leath Dep."), Cohen Decl., Ex. C at 56. Compounding matters, defense counsel did not identify Mr. Leath in his initial disclosures, and in fact, did not identify Lamont Leath or his role in the incident[1] until one (1) week before the close of the discovery deadline, which had already been extended by the District Court once before for similar reasons.[2] <u>See</u> Selected Portions of Conference Transcript dated 10/20/16 ("CT 10/20/16"), Cohen. Decl., Ex. E at 22-23; 27-28. Thus, plaintiff was forced to amend the complaint for a third time to add Mr. Leath.

**Defense Counsel Represents to the Court that Mr. Leath's Representation is Uncertain**

In connection with the service of the Third Amended Complaint, defense counsel informed Judge Woods during a telephone conference that Mr. Leath was *no longer working* for the Riverbay Corporation, could not accept service for him, and could only provide a last known

---

[1] According to defendants, Mr. Leath placed Mr. Bacote in handcuffs, walked him back to the van, and remained with him until he was transported to the precinct. <u>See</u> Selected Portions of Ifill Deposition ("Ifill Dep."), Cohen. Decl., Ex. D at 83; Leath Dep., Ex. C at 45-46; 50-51. This is especially noteworthy, because plaintiff alleged that he was assaulted at the van, while in handcuffs. (<u>See</u>, Third Amended Complaint, Ex. A).

[2] On August 5, 2016 the parties requested an extension of the original discovery deadline (August 25, 2016) largely due to defense counsel's belated identification of certain other officers involved in the incident, which was reluctantly granted, and discovery was extended to October 11, 2016. (<u>See</u> Dkt. Nos. 39, 40). Thereafter, due to the fact defendants did not identify defendant Leath until one (1) week before the October 11, 2016 discovery deadline, plaintiff had to request permission to file a Third Amended Complaint and a further discovery extension. (<u>See</u> Dkt. Nos. 42, 44, 45).

address. (CT 10/20/16, Ex. E at 26-27). In addition, Mr. Rhoden explicitly stated that he did not

know whether the Riverbay Corporation was going to provide Mr. Leath representation.

> MR. COHEN: I'd like to know, its Riverbay not going to represent Officer Leath
> even though he's no longer working there? MR: RHODEN: I cannot make that
> decision. That decision is not up to me.

(Id. at 27). In response, the Court directed the parties to "ascertain whether [Leath is]

going to be represented by Mr. Rhoden or someone else quickly so that this [adding a party] does

not drag out this litigation unduly." (Id. at 28-29).

**Leath's Unsolicited, Self-Initiated Attempt to Contact Plaintiff's Counsel**

Shortly after he was served with the Third Amended Complaint, Mr. Leath called

plaintiff's counsel office, leaving a message for the undersigned, Gerald Cohen. (Leath Dep, Ex.

C at 60-61). Mr. Leath informed an associate at the firm that he was not represented by counsel,

was planning on proceeding *pro se* and wanted to speak to Mr. Cohen about his involvement in

the case, stating that he was certain the case would be dismissed against him since he committed

no harm to Mr. Bacote. See Gerald Cohen and Lamont Leath Email Exchange dated 11/17/16

("GC and LL Emails 11/17/16"), Cohen Decl., Ex. F.

**Leath Confirms his Unrepresented Status and his Understanding of Plaintiff's Counsel's
Role in Writing Before any Substantive Conversation Occurs**

Upon receipt of Mr. Leath's message, plaintiff's counsel returned Mr. Leath's phone call.

At no point during that brief conversation, did the undersigned ever tell Mr. Leath that he would

dismiss the case against him if he provided a statement. Rather, the undersigned repeatedly

cautioned Mr. Leath about the undersigned's role as plaintiff's counsel and acknowledged that if

Mr. Leath had *in fact* done nothing wrong as he protested, that the claims against him would

ultimately be dismissed. See Affirmation of Gerald Cohen ("GC Aff.") at ¶¶ 16-18. In addition,

the undersigned refused to speak with Mr. Leath about the substance of the case unless he

confirmed in writing that he was unrepresented by counsel, was not retaining counsel, and that

he understood his interests were *directly adverse* to plaintiff and the undersigned. (See GC and

LL Emails 11/17/16, Ex. F; GC Aff. at ¶¶ 19-20). In a written response, Mr. Leath stated:

> I do understand as you've explained on the phone that you are representing Mr.
> Bacote the plaintiff, in this matter and that He is your sole interest, In addition as I
> see no need for representation at this time as I expect to be removed from this
> action, I've agreed to speak freely with you as I have caused no harm to your
> client and he has acknowledged as such.

(Id.).

**Plaintiff's Counsel Records the Conversation With Mr. Leath in Order to Avoid any Allegations of Wrongdoing and to Prevent Future Perjury by Mr. Leath**

Following Mr. Leath's confirmation, the undersigned had a telephone conversation with

Mr. Leath, which counsel recorded without his knowledge only after consulting the various

ethics opinions cited in Section I.A., supra, and determining there was a reasonable basis to

believe that Mr. Leath might suborn perjury given the serious allegations of police misconduct in

which Mr. Leath and his colleagues had already engaged.  (See GC Aff. at ¶¶ 21-22).

**The Court Denies Defendants Request to Prohibit Further Conversations Between Mr. Leath and the Undersigned**

Following their conversation, plaintiff immediately informed Mr. Rhoden that Lamont

Leath had contacted him. See Gerald Cohen Emails dated 11/18/16 ("GC Emails 11/18/16"),

Cohen Decl., Ex. G. In response – even though defense counsel had still not "determine[d]

whether or not [they] w[ould] be representing him or not" – Mr. Rhoden requested that Judge

Woods direct plaintiff's counsel to "refrain from any further communication, from any

communication, with Officer Leath." See Selected Portions of Conference Transcript dated

11/18/16 ("CT 11/18/16"), Cohen. Decl., Ex. H at 7. However, the District Court denied this

request, stating:

I am not going to prohibit plaintiff from speaking with [Lamont Leath]. I understand the plaintiff is going to give you the contact information to reach out to him. I expect that you will do so. If you fail to do so timely, that will be your choice.

(Id. at 9). Thereafter, on Monday, December 5, 2016, a mere two (2) days before Mr. Leath's scheduled deposition, Mr. Rhoden finally informed plaintiff that he would be representing him and requested the undersigned to "forward a copy of any statements taken by [Leath] by *December 6, 2016.*" See Horace Rhoden Email dated 12/5/16 ("HR Email 12/5/16"), Cohen. Decl. Ex. I.[3] Within hours, and two (2) days prior to defendant Leath's deposition, the undersigned turned over the recording and all his communications with Mr. Leath. Nevertheless, Mr. Rhoden failed to appear with Mr. Leath at the scheduled deposition, notifying the undersigned of his refusal to conduct the deposition two (2) hours after its scheduled start time. Selected Portions of Conference Transcript dated 12/13/16 ("CT 12/13/16"), Cohen. Decl., Ex. J at 29. Thereafter, the District Court sanctioned Mr. Rhoden for this conduct and compelled Mr. Leath's immediate deposition, placing *no limitations* on the use of the recording at the deposition.[4] See id. at 34 ("Let me be clear with respect to the deposition of Mr.Leath… I am not permitting any constraints on the subject matter of that deposition.").

## ARGUMENT

### I. PLAINTIFF'S COUNSEL DID NOT VIOLATE ANY ETHICAL RULES

In the instant matter defendants' entire motion for disqualification and preclusion is premised on the claim that plaintiff counsel violated a series of ethical rules. However, before

---

[3] While plaintiff's counsel did not disclose the recording to defense counsel in the two (2) weeks following the court conference, it is undisputed that Riverbay was still determining representation of Mr. Leath during this period. In any event, at no time during this period did defense counsel ever ask plaintiff to produce anything other than notes – which did not exist – in connection with their conversation. (See GC Aff. at ¶¶ 24, 27-31).

[4] In response to plaintiff's motion for sanctions, defendants moved to make the instant motion. (See CT 12/13/16, Ex. J at 22-23).

reaching the actual standard for disqualification or preclusion – which defendants' brief never does – defendants' meritless accusations of unethical conduct must be addressed.

Specifically, as will be discussed herein, defendants have distorted and misrepresented the ethical rules upon which they rely – and in most instances, have imported *nonexistent* ethical requirements. In addition, they have blatantly manipulated and/or invented facts to plausibly support a motion that should never have been made. In sum, their motion is meritless. Nonetheless, despite defendants' blunderbuss of ad hominem ethical attacks on plaintiff's counsel – each less credible than the next – it is undeniably clear that none of them provide a sufficient basis for disqualification or preclusion in this case. See e.g., Mena v. Key Food Stores Co-op., Inc., 195 Misc. 2d 402, 407 (N.Y. Sup. Ct. 2003) ("the attorney's conduct, even had it involved more hands-on participation than it actually did [in surreptitiously recording witnesses], should not be subject to condemnation under the disciplinary rules and does not warrant the extreme sanction of *suppression* or disqualification.")(emphasis added).

## A. Plaintiff Counsel's Undisclosed Recording of Lamont Leath Did Not Violate Any Disciplinary Rules

Under the Model Rules of Professional Conduct – the ethical rules that govern attorney conduct in New York – there is no question that the undisclosed tape recording of a conversation by an attorney "is not, by itself, unethical if it is otherwise lawful in the particular jurisdiction."[5] Marceaux v. Lafayette City-Par. Consol. Gov't, 731 F.3d 488, 495 (5th Cir. 2013) (citing ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 01–422 (2001)("a lawyer who electronically records a conversation without the knowledge of the other party or parties to the

---

[5] New York is a one-party consent State, which legally permits individuals to record conversations with others without contemporaneous disclosure. Mena v. Key Food Stores Co-op., Inc., 195 Misc. 2d 402, 407 (Sup. Ct. 2003) ("where one party to the conversation has consented, cannot be deceitful per se, since such conduct is authorized by New York Penal Law §§ 250.00 and 250.05").

conversation does *not* necessarily violate the Model Rules of Professional Conduct"). Indeed, the New County Lawyers Association has explicitly stated that "[w]e believe that the secret recording of a telephone conversation, where one party to the conversation has consented, cannot be deceitful *per se.*" Mena v. Key Food Stores Co-op., Inc., 195 Misc. 2d 402, 407 (Sup. Ct. 2003) (citing New York County Lawyers' Association Committee on Professional Ethics Opinion 696). Accordingly, the undersigned's undisclosed recording of the only conversation ever had with Mr. Leath was completely permissible.

Nevertheless, defendants claim that the undersigned's undisclosed recording of the single conversation had with Mr. Leath was unethical. While, defendants base their entire argument on Formal Opinion 2003–02 of the Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York, this decision still did not find that undisclosed recording was *per se* unethical. Rather, the committee stated that a lawyer may "engage in the undisclosed taping of a conversation if the lawyer has a *reasonable* basis for believing that disclosure of the taping would impair pursuit of the generally accepted societal good." Formal Opinion 2003–02. For example, the committee recognized that it would be proper to record a conversation with someone "whom the attorney has reason to believe may be willing to commit perjury (in either a *civil* or a criminal matter)." Id. (emphasis added). Most significantly, the opinion found that:

> "even if a disciplinary body does not necessarily share an attorney's assessment of the need for undisclosed taping in a particular set of circumstances, there is little likelihood of, *and no need for,* the imposition of sanctions as long as the attorney had a *reasonable basis* for believing that the surrounding circumstances warranted undisclosed taping."

Id. (emphasis added). Notwithstanding the seeming inconsistencies within these opinions[6], based on the facts of this case, there is no question that the undersigned's conduct was ethical and permissible.

### i. According to Any Interpretation of the Model Rules, Recording Mr. Leath Was Perfectly Proper Under These Circumstances

In this case, plaintiff has alleged that his constitutional rights were violated at the hands of the individually named officers insofar as they falsely arrested him, violently assaulted him, and then lied to prosecutors about what happened, which caused plaintiff to be falsely prosecuted. In particular, Mr. Leath was alleged to have taken part in physically assaulting plaintiff while he was handcuffed, or at the very least failing to intervene while he watched his colleagues' assault plaintiff without justification. (See, Third Amended Complaint, Ex. A). These allegations, if true, would not only expose Mr. Leath to civil liability in this case, but could also subject him to criminal prosecution. Thus, this case involves precisely the type of "criminal conduct or other misconduct" contemplated by the committee as one that an attorney could easily justify secretly recording. See Formal Opinion 2003–02. Consequently, given the important societal interests at stake[7], finding the truth of what occurred here is undoubtedly a "circumstance[] in which the societal justification is compelling," since it pertains to restoring trust in our public officials and holding police officers accountable. See e.g., People v. Blankymsee, 196 Misc. 2d 240, 243 (N.Y. Sup. Ct. 2003) ("police misconduct cannot be countenanced by the court if the public is to retain its trust in the criminal justice system");

---

[6] It should be noted that neither the decisions of the ABA, the NYCLA nor the NYBC carry the force law. See e.g., People v. Herr, 158 Misc. 2d 306, 312 (N.Y. Sup. Ct. 1994), aff'd, 86 N.Y.2d 638 (1995)("It is manifest from Niesig that, although deserving respect, the Code and a fortiori the Ethical Opinions interpreting same are not controlling upon the courts of this State."); Gurniak v. Emilsen, 995 F. Supp. 2d 262, 269–70 (S.D.N.Y. 2014) (noting that state ethical decisions "may provide general guidance"). Further, it is unclear which, if any, of these decisions carry greater weight, since all of them are interpreting the same ethical rules.

[7] See e.g., Heng Chan v. Sung Yue Tung Corp., 154 Lab. Cas. P 35293, 2007 WL 1373118, at *7 (S.D.N.Y. 2007) (recognizing that "a successful civil rights plaintiff often secures important social benefits….").

<u>Lewis v. City of Albany Police Dep't</u>, 547 F. Supp. 2d 191, 209 (2d Cir. 2009)("it is particularly important to further the goal of deterring defendants such as Bonanni from participating in violations of constitutional rights given their positions of public trust…").

In addition, at the time of the recorded conversation with Mr. Leath, the undersigned had evidence that these defendant police officers – including Mr. Leath – had already engaged in perjury and/or serious misconduct. In particular, defendants submitted a sworn document stating that plaintiff grabbed one of the officers by the upper body and threw him to the ground causing him to break his leg, an allegation that is rendered empirically false by even a cursory view of the videotape of the incident. <u>See</u> Video of Incident at 30-45 seconds, Cohen Decl. Ex. K; <u>cf</u>. Criminal Court Complaint, Cohen Decl. Ex. L. In other words, at the time of the conversation, the undersigned had every "reason to believe [Leath] may be willing to commit perjury," which unquestionably justified the surreptitious recording under even the strictest ethical standards.[8] <u>See</u> Formal Opinion 2003–02. Similarly, it is clear from the substance of many of the unsubstantiated – and illogical – factual allegations contained in the instant motion, that Mr. Leath is simply willing to concoct baseless accusations out of whole cloth in order to serve his interests, which is precisely the reason the undersigned felt the need to record the conversation in the first instance. Finally, even assuming *arguendo* that the undersigned's undisclosed recording

---

[8] Indeed, the undersigned's concern about Mr. Leath's truthfulness in this case proved to be warranted as his deposition testimony is completely inconsistent with the recitation of events he gave in the recorded conversation. Specifically, at his deposition Mr. Leath claimed that defendants were only trying to get Bacote in handcuffs and denied that they had used any force greater than necessary. (<u>See</u> Leath Dep., Ex. C at 40-41; 93-94). However, in his telephone conversation, Mr. Leath confirmed that the officers "weren't interested in getting [Bacote] handcuffed" and that he had to yell at officers to "get off" of plaintiff because they were all trying to "get at him." <u>See</u> Agreed Upon Transcript of Gerald Cohen and Lamont Leath's Phone Conversation ("Leath Call"), Cohen Decl., Ex. M at 3. Similarly, while Mr. Leath's recorded conversation indicates Mr. Bacote's difficulty in walking to the van was due to the fact that "he had hurt his leg", (<u>see</u> Leath Call, Ex. M at 1), at his deposition, Mr. Leath claimed Bacote's difficulty was instead his attempt to continue resisting arrest. (Leath Dep., Ex. C at 87-89).

was technically unwarranted under the rules, it is clear that, at minimum, there was a *reasonable basis for believing* that an undisclosed recording was permissible, which would foreclose any *sanction* under the rules for this purportedly "unethical" conduct.

### ii. *Defendants Cannot Point to A Single Case that Disqualified an Attorney For Surreptitiously Recording A Witness*

In a feeble attempt to support their meritless claims of plaintiff counsel's alleged unethical behavior, defendants have peculiarly relied upon Alexander Interactive, Inc. v. Adorama, Inc., 2014 WL 2968528, at *3 (S.D.N.Y. 2014) and Bermejo v. New York City Health & Hosp. Corp., 135 A.D.3d 116 (2nd Dept. 2015).  However, as an initial matter, both Alexander and Bermejo dealt with the recording of non-party expert witnesses in personal injury actions – not police officer *defendants* specifically accused of civil rights violations *against the plaintiff*. Indeed, the court in Alexander noted this distinction remarking that the alleged recording in that case did *not* involve "the investigation of ongoing criminal activity or *significant misconduct* or conversations with persons who had *previously* made *threats against* the attorney or *a client*." Alexander, 2014 WL 2968528 at *3.  Further, the court in Bermejo found that the statutory rules specific to IMEs requires parties to make a "[r]equest[] for permission to videotape." Bermejo, 135 A.D.3d at 143. Here, no such statutory obligation exists. On the contrary, New York Penal Law § 250.00 explicitly permits the undisclosed recording of another party. Thus, because the recording here was both expressly authorized by statute, and was specifically for the purpose of investigating the alleged misconduct of a defendant, it is clear that neither Bermejo nor Alexander provide any analog to this case.

Moreover, neither of those decisions ever *actually* found the surreptitious recordings at issue to be *improper*.  In fact, the court Bermejo never even addressed this issue and was only called upon "to determine whether a plaintiff's attorney must obtain approval from the court

before making a video recording of an IME," under the CPLR. <u>Bermejo</u>, 135 A.D.3d at 119. Similarly, in <u>Alexander</u> the court specifically did "not determine the precise contours of the proscription against surreptitious recording."  <u>Alexander</u>, 2014 WL 2968528 at *4.  Accordingly, since neither of those decisions support defendants' protestations of unethical conduct – or disqualification for that matter – under the factual circumstances of the instant case, they are of no utility in determining this issue and defendants' reliance upon them to salvage their flawed theory is entirely misplaced.

**B. Counsel's Discussion With Lamont Leath, Who Was An Unrepresented Party At The Time, Did Not Violate Rule 4.2 Of Professional Code of Responsibility**

Defendants claim that plaintiff's counsel violated Rule 4.2, which prohibits a lawyer from communicating with an individual "the lawyer *knows to be represented by another lawyer*." (<u>See</u> Model Rule 4.2).  However, it is beyond cavil that Rule 4.2 contains no prohibition on attorney communications with a person who *might* be represented by counsel at some point *in the future*. (<u>See</u> Rule 4.2).  Rather, "a violation of the rule will, [] *only* occur where the party was *in fact* represented at the time of the communication." <u>McHugh ex rel. Kurtz v. Fitzgerald</u>, 280 A.D.2d 771, 773 (N.Y. App. Div. 3rd Dept. 2001)(alteration added).

Here, as defendants explicitly concede, at the time of the undersigned's communication with Mr. Leath, he was as an *unrepresented* party. (<u>See</u> Defendants' Memorandum of Law ("Defs. Memo") at 13). As such there is plainly nothing in Rule 4.2 that prohibited the undersigned's communication with Mr. Leath.  Indeed, these principles were already implicitly recognized by Judge Woods' earlier refusal to prohibit the undersigned from speaking to Mr. Leath upon defense counsel's request. (<u>See</u> CT 11/18/16, Ex. H at 9) ("I am not going to prohibit plaintiff from speaking with [Leath].").  Accordingly, there is simply no question that "per force

11

of fact" the undersigned's communication with Mr. Leath "could not be in violation of the rule." McHugh, 280 A.D.2d at 772.

Nevertheless, undeterred by the plain language of Rule 4.2, which clearly nullifies any of defendants' argument in this respect, defendants suggest that Rule 4.2 somehow *also* prohibits communication with an individual who an attorney "knew or should have known" *could* eventually be represented by a lawyer *at some point* and urge this Court to treat Mr. Leath "as one *akin* to being represented by counsel." (See Def. Memo at 13). This argument borders on the absurd as Rule 4.2 does not require an attorney to be clairvoyant or to *anticipate* future representation where it presently does *not exist*. See McHugh, 280 A.D.2d at 772:

> Nor do we accept defendant's contention that the rule is operative inasmuch as the law firm knew that defendant was insured and *should have anticipated* that the insurance carrier *would* provide her with legal representation *at some point in time*. The rule quite *plainly* proscribes communication when the lawyer knows the party to be represented by a lawyer in the matter. Here, there is no question that defendant was *not represented at the time she was interviewed* and per force of fact the law firm could *not* be in violation of the rule.

> Id. (emphasis added).

Notwithstanding this explicit rejection of defendants' proffered theory, even if anticipating future representation was the standard under 4.2 – which it is not – nothing in the record here indicates that Mr. Leath's future representation by Riverbay Corporation was imminent or should have even been reasonably expected in this case. First, Mr. Leath had been fired from Riverbay Corporation prior to the commencement of this lawsuit. (See Leath Dep., Ex. C at 18). Second, prior to ever speaking with the undersigned, Mr. Leath expressly stated in writing that he was *not* represented by counsel, that he *no intention* of retaining counsel and that he was planning on proceeding *pro se*. (See GC Email and LL Emails 11/17/16, Ex. F). Third, when plaintiff amended his complaint to add Mr. Leath as a defendant, defense counsel explicitly

informed the undersigned that he did not know whether Riverbay would provide Leath with any representation. (<u>See</u> CT 10/20/16, Ex. E at 26-29.)  Indeed, even after defense counsel learned of the communication between Mr. Leath and the undersigned, he was still unwilling to confirm Mr. Leath's representation before this Court. (<u>See</u> CT 11/18/16, Ex. H at 7) ("we [have to] determine whether or not we will be representing him or not."). Thus, it is dubious for defendants to claim that the undersigned "should have known" he would be represented when it took defense counsel several weeks to "know" whether he would represent Mr. Leath. Accordingly, defendants' motion must be rejected.

### C. Plaintiff's Counsel Was Not Required to Advise Lamont Leath of His Right to Counsel

In yet another baseless attempt to impugn the ethics of plaintiff's counsel, defendants preposterously allege that the undersigned committed a breach of his ethical obligations under Rule 4.3 by failing to advise Mr. Leath of his right to secure counsel – and more precisely, that the undersigned was required to advise Mr. Leath of this right. However, not only is the text of Rule 4.3 devoid of any such requirement[9], but this Circuit has explicitly rejected any such requirement under the rule, finding that "[w]hile a lawyer may advise an unrepresented adverse party to secure counsel, there is no requirement that the lawyer *must* provide such advice." <u>Colburn Family Found. v. Chabad's Children of Chernobyl</u>, 739 F. Supp. 2d 614, 623 (S.D.N.Y. 2010); <u>W. T. Grant Co. v. Haines</u>, 531 F.2d 671, 675 (2d Cir. 1976) ("While it is true that Haines was not advised of his right to counsel, except when he took the polygraph test, *there is no such*

---

[9] N.Y.R.P.C. 4.3 states, "[i]n dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. *The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel*, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client."

*requirement in a civil action*.”). Indeed, the only affirmative *requirement* in Rule 4.3 is that a lawyer “shall not state or imply that the lawyer is disinterested,” and “shall make reasonable efforts to correct [any] misunderstanding” regarding his role in the matter.  Thus, as the Second Circuit has noted, the ethical requirements of an attorney dealing with an unrepresented party are targeted at ensuring that there is no “deception either as to the [plaintiff counsel’s] representation of [plaintiff] or as to the nature of that representation.” <u>Haines</u>, 531 F.2d at 677.

Here, there is no question that the undersigned not only complied with his obligations under Rule 4.3, but in fact went above and beyond that which was required of him.  Specifically, before ever speaking with Mr. Leath, the undersigned sent him an email explaining:

> I represent Orrin Bacote, the plaintiff, in this matter and you are now (at least for the time being) one of the defendants in this action. As such, *our interests are directly adverse and I cannot speak to you if you are represented by an attorney*. I understand from your communications with my office that you are not represented by an attorney and have no intention of engaging one. In fact you told my associate, Ilyssa Fuchs, you plan on moving pro se. If this is the case we can speak, but I feel compelled to inform you that *I am only looking out for the best interest of my client, Orrin Bacote.*

(<u>See</u> GC and LL Emails 11/17/16, Ex. F). Further, in response – also prior to their conversation – Mr. Leath wrote an email stating, “I do understand as you've explained on the phone that you are representing Mr. Bacote the plaintiff, in this matter and that He is your *sole interest*.” (<u>See</u> GC and LL Emails 11/17/16, Ex. F). (emphasis added). Thus, an objective review of Leath’s email to Mr. Cohen shows that he both understood the nature of the relationship and a “*willingness to cooperate even though he was obviously a target* of the *investigation*,” all of which defeats any of defendants’ ethical claims. <u>Haines</u>, 531 F.2d at 677 (emphasis added); (<u>See</u> GC and LL Emails 11/17/16, Ex. F) (“I've agreed to speak freely with you *as I have caused no harm to your client*”). Accordingly, there is simply no plausible argument – aside from inventing

14

requirements of Rule 4.3 that do not exist – to suggest that counsel's conduct was anything but proper.

### D.  Plaintiff's Counsel Will Not Be a Necessary Witness At the Trial

In addition to the laundry list of other allegedly unethical conduct committed by the undersigned in this case, defendants also claim that plaintiff's counsel has violated the witness-advocate prohibition contained in Rule 3.7(a). However, as an initial matter, the fact that the conversation between Mr. Leath and Mr. Cohen was recorded obviates the need for Mr. Cohen to testify about the substance of their conversation. Further, defendants' allegation that the undersigned might have to authenticate the recorded conversation, thereby necessitating his testimony at trial, is similarly without merit. (See Def. Memo at 11).[10] Indeed, the audio recording was *already* authenticated by defendant Leath at his deposition, where he verified that the recording was authentic and unadulterated. (See Leath Dep., Ex. C at 87):

> Q. You've heard the recording before; right? Before coming in today. Before I ask
>    you to listen to the conversation, you recognize your voice in that recording?
> A. Yes.
> Q. So you admit that that is you speaking to me; correct?
> A. Yes.
> Q. You're not disputing that we had a conversation; right?
> A. No.

Id.

Accordingly, Leath's acknowledgement that the recording is accurate dispenses with the any argument concerning the need to have plaintiff's counsel testify at trial. See e.g., Fagiola v. Nat'l Gypsum Co. AC & S., 906 F.2d 53, 56 (2d Cir. 1990)("One hundred and thirty-five individual documents were specifically marked as Exhibits B7–B141 and authenticated during

---

[10] Curiously, defendants cite Zegarelli v. Hughes, 3 N.Y.3d 64 (2004) for this proposition, however, nowhere in that decision does the court even address Rule 3.7, let alone the issue of disqualification.  See id. at 69. Rather, in Zegarelli the Court found that the videographer could be cross examined as to whether the videotape evidence in that case was edited, altered, and was what it purported to be.

the deposition."); Faulkner v. Arista Records LLC, 797 F. Supp. 2d 299, 307 (S.D.N.Y. 2011)(recognizing that the arguments concerning authentication smacked of "gamesmanship" because "many of them were authenticated by Plaintiffs during depositions.").

## II. DEFENDANTS HAVE UTTERLY FAILED TO ESTABLISH THE NECESSARY PREREQUISITES FOR DISQUALIFICATION

It is well settled, that "[d]isqualifying counsel is a drastic measure that is generally disfavored in this Circuit." United States v. Prevezon Holdings Ltd., 2016 WL 96170, at *2 (S.D.N.Y. 2016) (citing Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)). Moreover, it is equally clear that "not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005).  In other words, State ethics and disciplinary rules "were not intended to be used as rules governing disqualification motions." Armstrong v. McAlpin, 625 F.2d 433, 446 n. 26 (2d Cir.1980) (en banc) (citations omitted). Thus, even if a court were to find that State disciplinary rules were violated, the court still "must consider the factual record underlying such a motion in detail to determine whether the party seeking a disqualification has sustained the high standard of proof" before granting such a motion. Obeid ex rel. Gemini Real Estate Advisors v. La Mack, 2015 WL 7180735, at *1 (S.D.N.Y. 2015)

Simply stated, "[d]isqualification is only warranted in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'" Fox v. Idea Sphere, Inc., 2013 WL 119743 at *22 (S.D.N.Y 2013) (quoting Decker v. Nagel Rice LLC, 716 F.Supp.2d 228, 231 (S.D.N.Y.2010) (quoting Glueck v. Jonathan Loaan, Inc., 653 F.2d 746, 748 (2d Cir.1981))). Accordingly, the single most important factor bearing on disqualification, is whether the "continued representation by the challenged attorney would result in serious prejudice." Shabbir v. Pakistan Int'l Airlines, 443 F. Supp. 2d 299, 305, (E.D.N.Y. 2005).

### A. Defendants Have Not Articulated Any Cognizable Prejudice as a Result of Any of the Undersigned's Conduct

As was discussed in Section I, <u>supra</u>, none of the undersigned's conduct even approaches anything tantamount to a violation of the ethical rules. Nonetheless, even assuming *arguendo* that any of plaintiff counsel's behavior has arguably even risen to the level of "unethical" conduct – which it has not – none that behavior provides a basis for disqualification in this case. Indeed, other than attempt to disparage plaintiff's counsel, defendants' motion has utterly failed to allege that they have suffered any cognizable or plausible prejudice and certainly nothing that even remotely rises to the level of a "significant risk of trial taint." <u>Fox</u>, 2013 WL 119743 at *22.

#### i.  Defendants Suffered No Prejudice from the "Ethical Violations"

The entirety of defendants' motion is spent on a panoply of meritless attacks on plaintiff's counsel in the hopes that one will gain traction with this court. However, in expending such effort on the quantum of plausible – but mostly implausible – ethical violations, they have failed to address the most crucial factor in determining disqualification – namely, any resulting prejudice. Moreover, while prejudice is an indispensable component of the disqualification inquiry as a whole, it is specifically connected to disqualification where it is based on the ethical violations alleged herein.

For example, "[i]n determining the proper sanction or remedy [in the case of a Rule 4.2 violation], the court must consider the client's right to be represented by the counsel of his choice, as well as the opposing party's right to prepare and try its case *without prejudice*." <u>Univ. Patents, Inc. v. Kligman</u>, 737 F. Supp. 325, 329 (E.D. Pa. 1990)(alteration in original). Similarly, because "Rule 3.7 lends itself to opportunistic abuse, [] disqualification motions that invoke the advocate-witness rule are subject to particularly strict scrutiny" in order to "guard against the tactical use of [such] motions." <u>Murray v. Metro. Life Ins. Co.</u>, 583 F.3d 173, 178 (2d Cir.

2009)(citations omitted).  As such, where a party seeks to disqualify for a violation of 3.7, "the party seeking disqualification must demonstrate *both* that: (1) the lawyer's testimony is 'necessary'; and (2) there exists a substantial likelihood that the testimony would be prejudicial to the witness-advocate's client." Hecklerco, LLC v. Yuuzoo Corp. Ltd., 2016 WL 7742783, at *4 (S.D.N.Y. 2016)(internal quotation marks omitted).

Defendants' motion, by contrast, has failed to allege a shred of evidence establishing any prejudice from the purported "ethical violations" of plaintiff's counsel. First, they have not asserted how they were meaningfully prejudiced by the communication plaintiff had with Leath. Indeed, defendants do not claim Leath divulged any privileged or otherwise confidential communication to counsel. (See Leath Dep., Ex. C at 95-96). On the contrary, Leath testified at his deposition that *all* of the information he provided Mr. Cohen was the truth, and consistent with his deposition testimony. (Id.). In other words, according to Mr. Leath, the only consequence of the recorded conversation was that the undersigned was able to obtain the exact same information that the undersigned inevitably received at Mr. Leath's deposition anyway. Second, with respect to the alleged Rule 3.7 violation, not only have defendants failed to demonstrate the need for plaintiff counsel's testimony, but defendants have also done nothing to "demonstrate[e] specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial.'" Hecklerco, 2016 WL 7742783, at *4 (internal citations omitted).[11]

---

[11] Even if defendants had even attempted to meet this standard, disqualification should still be denied where the "disqualification of the lawyer would work substantial hardship on the client." N.Y. R.P.C. Rule 3.7 (McKinney). Here, Mr. Cohen has taken nearly every defendant deposition in this case and has been lead counsel at every hearing, has been instrumentally involved with the discovery, which is now over, and will be opposing defendants' contemplated summary judgment motion. Accordingly, given the undersigned's role in the case thus far and the current stage of the proceedings, there is no question that disqualifying the undersigned would work an insurmountable hardship on plaintiff.

In fact, the only feigning allusion to any possible claim of prejudice in defendants' brief is defendants' allegation of "disparagement" arising out of undersigned's statement to Mr. Leath that the "Riverbay lawyer is not giving me any information." (See Def. Memo at 15). As a preliminary matter, a review of the record in this case – namely, Mr. Rhoden's failure to comply with his disclosure obligations under Rule 26 – establishes the absolute truth of this statement, which seems to belie any possibility that could be classified as "disparaging" in the first instance.[12] Regardless of its truth, this statement is nevertheless simply not the type of comment that would "upset the equilibrium of the relationship between [counsel] and its client," which is the standard for a court to even consider disqualification. Papanicolaou v. Chase Manhattan Bank, N.A., 720 F. Supp. 1080, 1087 (S.D.N.Y. 1989). Accordingly, defendants' motion for disqualification should be denied.

### ii. There Was No Quid Pro Quo for Mr. Leath's Statements and No Resulting Prejudice

Recognizing that an undisclosed recording would not violate any disciplinary rules, defendants lodge another baseless and fabricated allegation of deceitful conduct on behalf of Mr. Cohen. Specifically, defendants claim that counsel promised Mr. Leath he would dismiss the case against him if he gave a statement. This allegation is not only categorically false, but is also belied by the timeline of events and the evidence in this case. In particular, Mr. Leath contacted plaintiff first. (See Leath Dep., Ex. C at 60-61). He was anxious to clear his name, explain his side of the story and to obtain Mr. Cohen's information from plaintiff in order to attempt to convince the undersigned to drop the case against him. (See id.; GC and LL Emails 11/17/16, Ex.

---

[12] This statement was simply an explanation to Mr. Leath regarding his late addition as a defendant in this case, which was due to Mr. Rhoden's failure to identify Mr. Leath until three days prior to the discovery deadline in October. Indeed, plaintiff's counsel had to file multiple motions to compel and amend the complaint on three occasions precisely because defendants counsel was not providing information and was admonished repeatedly by Judge Woods for same. (See Dkt Nos. 28, 30, 33, 39, 40, 42, 44, 45).

F). In other words, it is illogical to suggest – as defendants' argument implicitly does – that plaintiff's counsel, who *never sought out* to speak with Mr. Leath and would never have spoken to him but for Mr. Leath's explicit written acknowledgement that he fully understood the undersigned's role in the matter, had an agenda to convince Mr. Leath to provide favorable information in exchange for dismissing him from the case.

Additionally, a review of Mr. Leath's emails and conversation with plaintiff's counsel also contradict defendants' claim. Specifically, conspicuously absent from any email or the conversation itself is any reference to this alleged promise made by the undersigned to dismiss him from the case in exchange for information to the plaintiff. (See GC and LL Emails 11/17/16, Ex. F; Leath Call, Ex. M). Further, it is Mr. Leath's emails and deposition that confirm it was his own expectation – and not one created by plaintiff's counsel – that his conversation would ultimately result in his dismissal from the action because "he caused no harm to [the] client…" (See GC and LL Emails 11/17/16, Ex. F; Leath Dep., Ex. C at 75-76).

More importantly, however, even assuming *arguendo* that this "quid pro quo" did occur, it had absolutely no effect whatsoever on the substance of Mr. Leath's testimony in this case. Indeed, he unequivocally testified that he did *not alter* the substance of his account in any way during his recorded conversation with the undersigned, but rather simply told the truth about what he observed. (Leath Dep., Ex. C at 95-96). In other words, Mr. Leath has not alleged that the undersigned's "promise" to him induced him to make any *untrue* statements or to tailor his testimony in order to obtain a dismissal. Instead, he has confirmed that this alleged "promise" by the undersigned caused *nothing different* to occur and that the substance of his recorded conversation is *exactly* what he eventually testified to at his deposition. (Id.). Accordingly, based on the lack of any actual evidence to supporting this "agreement," the incongruity of substance

20

of the agreement, and the lack of a single allegation of prejudice to defendants in this case, defendants simply cannot succeed on a motion to disqualify. See e.g., E.E.O.C. v. Hora, Inc., 239 F. App'x 728, 731 (3d Cir. 2007):

> Defendants conceded at the hearing on the motion to disqualify Barnett that all of the information that Barnett received from Richardson was disclosed during discovery. Because Defendants accordingly were not prejudiced by Barnett's communications with Richardson, the draconian measure of disqualification was not warranted.

> Id.

### iii.   *Plaintiff's Counsel Disclosed the Existence of the Recording and Turned It Over Immediately Upon Request So There Can be No Prejudice*

While defendants falsely state that plaintiff's counsel was not forthright regarding the existence of the recording, the record here could not be clearer. Specifically, as soon as Mr. Rhoden asked for the statements made by Mr. Leath, plaintiff's counsel provided them within hours. (See HR Email 12/5/16, Ex. I; Gerald Cohen Email dated 12/5/16 ("GC Email 12/5/16"), Cohen Decl., Ex. N). Defense counsel's attempts to distort this record by referring to a conversation with the undersigned in which he allegedly asked for the recording, but the undersigned was neither asked about any such recording by defense counsel *until his email* nor did the undersigned *ever* deny the existence of any such recording. (See GC Aff. at ¶¶ 27-31). In any event, the resolution of these baseless allegations is irrelevant because the recording was turned over well before the deposition. (See CT 12/13/16, Ex. J at 7-8). Accordingly, defendants ultimately received the recording with ample time to go over it with their client, which therefore nullifies any possible claim of prejudice in this case.[13]

---

[13] It should be noted that this disclosure was made even though the Federal Rules explicitly state that such materials need not be turned over, or even disclosed, if they are being used "solely for impeachment." FRCP 26 (a)(1)(A)(ii). Thus, even though counsel did not have a duty to disclose the recording, plaintiff's counsel did so out of an abundance caution.

## III.   THERE IS NO BASIS TO PRECLUDE COUNSEL'S TAPE RECORDED CONVERSATION WITH LAMONT LEATH

In their motion to preclude, defendants assume without any basis, that the recorded conversation with Mr. Leath was obtained in violation of the ethics rules. As discussed in Section I.C., _supra_, even under the most stringent ethics opinion, there is no legal or factual support for the assertion. Nevertheless, just as any _assumed_ violation of the ethical rules would not warrant the drastic sanction of disqualification – especially without a shred of resulting prejudice – the severe sanction of preclusion is similarly unwarranted under these facts.

### A. The Manner in Which the Evidence is Obtained is Not Dispositive of Preclusion

Although the Second Circuit has upheld the preclusion of unethically obtained evidence in limited circumstances,[14] it has done so with extreme "cautiou[n] and with clear cognizance that suppression imposes a barrier between the finder of fact and the discovery of truth." United States v. Hammad, 858 F.2d 834, 842 (2d Cir. 1988). For example, in Hammad, while the court acknowledged that preclusion might be an appropriate sanction for ethical violations in certain instances, it nevertheless found that "the district court abused its discretion in suppressing the recordings and videotapes" in response to prosecutorial ethics violations. Id. Indeed, this trend has continued throughout this circuit and sister circuits where courts have repeatedly found that "the remedy of preclusion would not serve the public interest or promote the goals of the disciplinary rules." See Gidatex, S.r.L. v. Campaniello Imports, Ltd., 82 F. Supp. 2d 119, 126 (S.D.N.Y. 1999); Miano v. AC & R Advert., Inc., 148 F.R.D. 68, 89–90 (S.D.N.Y.)("finding that even if the "clandestine taping" violated the ethics rules "it is not at all clear that suppression of

---

[14] Under New York law, it is clear that the method by which evidence is procured and its ultimate admissibility at trial are disjunctive inquiries, the former having no effect on the latter. See e.g., Stagg v. N.Y. City Health & Hosps. Corp., 162 A.D.2d 595, 596 (1990)("New York follows the common-law rule that the admissibility of evidence is _not affected by the means through which it is obtained_. Hence, absent some constitutional, statutory, or decisional authority mandating the suppression of otherwise valid evidence, such evidence will be admissible _even if procured by unethical or unlawful means_")(citing Sackler v. Sackler, 15 N.Y.2d 40, 44, (1964).

the tapes as evidence would be an appropriate remedy"); Beltran v. InterExchange, Inc., 2015 WL 7253286, at *2 (D. Colo. 2015) (noting that "courts are not obligated to exclude evidence even if it finds that counsel obtained the evidence by violating ethical rules"). In sum, there is no doubt that preclusion – like disqualification – are "extreme sanction[s]," the imposition of which "should not be given lightly." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y.2003). Consequently, preclusion – like disqualification – "requires the demonstration of prejudice to the moving party." Pall Corp. v. 3M Purification Inc., 279 F.R.D. 209, 213 (E.D.N.Y. 2011).

Here, defendants have focused solely on the acts of plaintiff's counsel in demanding for the imposition of the drastic sanctions of disqualification and preclusion; however, as previously stated, since plaintiffs' counsel engaged in no unethical or sanctionable behavior in the first instance, this argument fails. Further, even if the conduct was sanctionable, it is abundantly clear that neither disqualification nor preclusion are *per se* appropriate responses to the "improper" conduct without any showing of actual, or cognizable – or even theoretical – prejudice suffered as a result. Indeed, the law is clear, "[f]or less severe sanctions, such as fines and cost-shifting, the Court's inquiry focuses mainly on the *misconduct* of the responding party [but] for more *severe* sanctions, such as dismissal, *preclusion* or the imposition of an adverse inference, the Court must *also* assess whether the requesting party *suffered prejudice*." Nycomed U.S. Inc. v. Glenmark Generics Ltd., 2010 WL 3173785, at *3 (E.D.N.Y. 2010). Accordingly, since preclusion as a sanction for unethical conduct is limited to narrow circumstances where there is

compelling need to preclude the evidence based on both the behavior and the prejudice to the moving party, defendants' motion fails as a matter of law.[15]

**B. The Cases Upon Which Defendants Rely Are Wholly Distinguishable and Not Relevant to Their Motion to Preclude**

Defendants rely on a series of cases that are wholly distinguishable and completely irrelevant to facts here. Specifically, defendants lead this section of their brief with a citation to Bruske v. Arnold, 44 Ill.2d 132, 254 (1970), an Illinois Supreme Court decision, that precluded the statement of a defendant that was obtained by the plaintiff's investigator *after* the defendant had *retained counsel*. (See Def. Memo at 16). Similarly, defendants rely on United States v. Thomas, 474 F.2d 110 (10th Cir. 1973), where the court – *in dicta* – noted that preclusion of a statement obtained by the government from a *represented* defendant *might* be warranted, but nonetheless found that the District Court's failure to prelude that same statement at trial was insufficient to warrant reversal of the defendant's conviction. Id. Conversely, in this case, Mr. Leath was *not* represented by counsel when the conversation took place, and therefore these cases fail to provide any analog.[16]

Next defendants rely on Kenyatta v. Kelly, 375 F. Supp 1175 (E.D.P.A. 1974), a case in which the court refused to compel the government to authenticate stolen FBI files based on the invocation of the public interest *privilege*. See id. at 1179 ("defendants may invoke the privilege

---

[15] Even assuming that this Court finds that the extreme sanction of preclusion was warranted, it is well settled that the use of such evidence is still permissible to refresh witnesses' recollections or impeach witnesses, which is plaintiff counsel's sole intention for this evidence anyway. See 20th Century Wear, Inc. v. Sanmark-Stardust Inc., 747 F.2d 81, 93 (2d Cir. 1984)("Permitting the use of unethically obtained evidence to refresh recollection not only avoids miring the court in side issues, but also furthers one of the trial's primary purposes, to uncover the truth: the canons of ethics do not determine what will jog a witness's memory…"); Michigan v. Harvey, 494 U.S. 344, 344, (1990)("A statement to police taken in violation of *Jackson* (right to counsel) may be used to impeach a defendant's testimony"); United States v. Kusek, 844 F.2d 942, 949 (2d Cir. 1988) (holding "that illegally obtained evidence may be used to refresh a witness' memory" and "impeach the defense witness"); Harris v. New York, 401 U.S. 222 (1971) (voluntary statements captured in tape recordings unlawfully obtained in violation of *Miranda* are admissible to impeach defendant).

[16] Defendants also cite to United States v. Killian, 639 F.2d 206, 210 (5th Cir. 1981), another matter where the court found that statements obtained by an attorney from an individual *known to be represented* could be suppressed.

24

against disclosure in the public interest, and that on balance, the defendants' objection to plaintiffs' request for admissions as to the authenticity of the stolen documents should be sustained"). Similarly, in United States v. Rogers, 751 F.2d 1074, 1079 (9th Cir. 1985), the issue of preclusion was never addressed and the alleged ethical violations in that case dealt with an attorney obtaining "*confidential*" information from a *represented* party, which the court still held was insufficient to warrant dismissal of the indictment. Id. at 1079.  By contrast, here there is no claim that Mr. Leath's statement was privileged, confidential or that preclusion was necessary as a matter of public interest and thus these cases are entirely inapplicable.

Finally, defendants' reliance on Trans-Cold Exp., Inc. v. Arrow Motor Transit, Inc., 440 F.2d 1216, 1218–19 (7th Cir. 1971) is equally misplaced. In Trans-Cold, Inc. the court found that preclusion of witness statements was warranted because they were undisputedly obtained through the use of misrepresentations by the investigator who took them. Here, apart from Mr. Leath's utterly incredulous claims of improper inducement, it is undisputed that no such misrepresentations were made in this case. The undersigned clearly identified who he represented and what his interest were, the understanding of which Mr. Leath acknowledged in writing before making any statements. (See GC and LL Emails 11/17/16, Ex. F). Accordingly, since none of the cases relied upon by defendants are even remotely applicable, defendants' motion must be denied.

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that this Court should deny defendants' motion in its entirety and grant such other and further relief as it deems just and proper.

Dated: New York, New York
February 13, 2017

Respectfully submitted,


COHEN & FITCH LLP

By: _____/S_____
GERALD M. COHEN
COHEN & FITCH LLP
Attorney for Plaintiff
233 Broadway, Suite 1800
New York, N.Y. 10279
(212) 374-9115
gcohen@cohenfitch.com