RVB10380

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

ORRIN BACOTE,

Civil Action No.: 16-cv-1599

Plaintiff,

-against-

RIVERBAY CORPORATION, et al.

Defendants.

--------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**.

Respectfully submitted,

ARMIENTI, DeBELLIS, GUGLIELMO

& RHODEN

Attorneys for Defendants

39 Broadway, Suite 520

New York, New York

(212) 809-7074

By:  Vanessa M. Corchia, Esq. (VC 6458)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 2

POINT I .................................................................................................................................. 2

THE SUPREME COURT'S DECISION IN REHBERG PROTECTS STATEMENTS
MADE IN PREPARATION FOR GRAND JURY TESTIMONY. ........................................ 2

POINT II ................................................................................................................................. 4

NOTWITHSTANDING PARTICIPATION IN PREPARATION OF THE CRIMINAL
COMPLAINT AND THE OMNIFORM ARREST AND COMPLAINT FORMS, CORDERO
CANNOT BE LIABLE FOR A DENIAL OF FAIR TRIAL ...................................................... 4

Whether an officer forwarded information known to be false to the district attorney is an
issue that can be determined as a matter of law. ................................................................... 4

POINT III ................................................................................................................................ 6

CONTRARY TO PLAINTIFF'S CONTENTION, HE HAS FAILED TO ESTABLISH A
POST-ARRAIGNMENT DEPRIVATION OF LIBERTY ....................................................... 6

POINT IV ................................................................................................................................ 9

EXCESSIVE FORCE ............................................................................................................. 9

Plaintiff must establish the personal involvement of the individual officers to maintain a
claim for excessive force. ....................................................................................................... 9

Failing to intervene is a separate cause of action, and any alleged failure to intervene on the
part of defendant Officers does not render them liable for the underlying constitutional
violation. ................................................................................................................................. 11

POINT V ................................................................................................................................. 13

DESPITE PLAINTIFF'S CONTENTION, NO QUESTION OF FACT EXISTS WITH
REGARD TO THE UNDERLYING FACTS AVAILABLE TO CERTAIN DEFENDANTS AT
THE TIME OF PLAINTIFF'S ARREST. ................................................................................ 13

Irrespective of the fact that an arrest can be effectuated prior to formally placing an
individual under arrest, defendant Officers cannot be held liable for false arrest if they were
not personally involved in the arrest. ...................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Creighton, 483 US 635 (1987) .................................................................. 14

Annunziata v. City of New York, 2008 U.S. Dist. LEXIS 42097 (S.D.N.Y) ............................. 14

Apostol v. City of New York, 2014 U.S. Dist. LEXIS 40487 (E.D.N.Y.) ................................... 4

Arbuckle v. City of New York, 2016 US Dist. LEXIS 13657 (SDNY) ...................................... 11

Arroyo v. Jones, 695 F.2d 35 (2nd Cir. 1982) ................................................................ 4

Bashir v. Rockdale County, 445 F.3d 1323 (11th Cir. 2006) ................................................ 10

Bilan v. Davis, 2013 U.S. Dist. LEXIS 107619 (S.D.N.Y.) .................................................. 10

Bissinger v. City of New York, 2007 U.S. Dist. LEXIS 70155 (S.D.N.Y) ................................... 7

Britton v. Maloney, 196 F.3d 24 (1st Cir. 1999) ............................................................. 7

Burg v. Gosslin, 591 F.3d 95 (2nd Cir. 2009); Thomas v. City of New York, 2008 U.S. Dist.
   LEXIS 6155 (S.D.N.Y.) ....................................................................................... 7

Caravalho v. City of New York, 2016 U.S. Dist. LEXIS 44280 (S.D.N.Y.) ........................... 9, 10

Coggins v. Buonora, 776 F.3d 108 (2nd Cir. 2015) ......................................................... 2

Cruz v. City of N.Y., 2017 U.S. Dist. LEXIS (S.D.N.Y.) .................................................... 16

Espada v. Schneider, 522 F. Supp. 2d 544 (S.D.N.Y. 2007) ............................................... 9

Gomez v. Vill. Of Sleepy Hollow, 2011 U.S. Dist. LEXIS 72576 (S.D.N.Y) ................. 9, 11, 15

Gonzalez v. City of New York, 2016 US Dist. LEXIS 134474 (SDNY) ............................... 13, 14

Graham v. Connor, 490 U.S. 386 (1989) .................................................................. 13

Johnson v. City of New York, 2008 U.S. Dist. LEXIS 79894 (S.D.N.Y) .............................. 9, 11

Kirk v. Metropolitan Transp. Auth., 2001 U.S. Dist. LEXIS 2786 (S.D.N.Y.) ............................ 7

Kirton v. Hassel, 1998 U.S. Dist LEXIS 6535 (E.D.N.Y) ................................................... 7

Murphy v. Lynn, 118 F.3d 983 (2nd Cir.) .................................................................. 6, 7

Nieves v. McSweeney, 241 F.3d 46 (1st Cir. 2001) ......................................................... 7

O'Donnell v. Card, 2013 U.S. Dist. LEXIS 106609 (S.D.N.Y.) .................................................. 14

Oliveira v. Mayers, 23 F.3d 642 (2nd Cir. 1994) ........................................................................... 17

Pesola v. City of New York, 2016 U.S. Dist. LEXIS 42977 (S.D.N.Y. Mar. 30, 2016).............. 11

Pierre-Antoine v. City of New York, 2006 U.S. Dist. LEXIS 28963 (S.D.N.Y.) .................. 10, 11

Pinter v. City of New York, 48 Fed. Appx. 99 (2nd Cir. 2011)..................................................... 14

Porat v. Lincoln Towers Cmty. Ass'n, 2005 U.S. Dist. LEXIS 4333 (S.D.N.Y.)......................... 7

Posr v. Doherty, 944 F.2d 91 (2nd Cir. 1991)............................................................................... 17

Rehberg v. Paulk, 132 S. Ct. 1497 (2012) ................................................................................. 2, 3

Richardson v. N.Y.City Health & Hosps. Corp., 2009 U.S. Dist. LEXIS 25247 (S.D.N.Y.) ...... 13

Rucks v. City of New York, 96 F. Supp. 3d 138 (S.D.N.Y. 2015) ............................................ 2, 3

Sankar v. City of New York, 2012 U.S. Dist. LEXIS 99975 ........................................................ 3

Sassower v. City of White Plains, F.Supp. 652 (S.D.N.Y. 1998).................................................. 7

Singer v. Fulton County Sherriff, 63 F.3d 110 (2nd Cir. 1995).................................................... 13

Thomas v. City of New York, 2008 U.S. Dist. LEXIS 6155 (S.D.N.Y.) ...................................... 7

United States ex re. Wood v. Allen, Inc., 2017 U.S. Dist. LEXIS 50103 (S.D.N.Y.).................... 4

Wright v. Smith, 21 F.3d 496 (2nd Cir. 1994) ............................................................................... 9

**Statutes**

42 USC §1983 ..................................................................................................................... passim

Model Penal Code §2.02(a) and (b)............................................................................................... 4

## PRELIMINARY STATEMENT

Based upon the facts and arguments set forth in defendant Officers Brief in Support of summary judgment and contained herein, the following causes of action should be dismissed as against the following defendants:

- Plaintiff's claims for denial of a fair trial and federal claim for malicious prosecution must be dismissed as against all defendants because plaintiff has failed to establish that he suffered a post-arraignment deprivation of liberty.

- False arrest and state and federal malicious prosecution claims should be dismissed as against Officers Rivera, Cordero, Marsonico, Lambert, Leath and Ifill on the grounds that these officers has probable cause for plaintiff's arrest or, in the alternative, are entitled to qualified immunity with regard to probable cause.

- False arrest must be dismissed as against Officers Mendoza and Lambert, as they were not personally involved in plaintiff's arrest.

- Denial of a fair trial and state and federal malicious prosecution claims must be dismissed as against Officer Cordero because he did not forward information known to be false to the district attorney.

- Denial of a fair trial and state and federal malicious prosecution claims must be dismissed as against Officers Mendoza, Marsonico and Catala, because any conversations they had with the district attorney was in preparation for their grand jury testimony and thus immunized from subsequent civil litigation based upon said conversations.

- Excessive force must be dismissed as against Officers Mendoza and Lambert, as they were not personally involved in the alleged force used against the plaintiff.

- Failure to intercede must be dismissed as against Officer Mendoza as she did not have a realistic opportunity to intervene, as well as, Officers Rivera, Cordero, Marsonico, Lambert, Leath and Ifill on the grounds of qualified immunity.

Accordingly, as defendants have established their entitlement to summary judgment and plaintiff has failed to raise an issue of material fact, it is requested that the Court grant defendants' motion for partial summary judgment.

1

**ARGUMENT**

**POINT I**

**THE SUPREME COURT'S DECISION IN <u>REHBERG</u> PROTECTS STATEMENTS MADE IN PREPARATION FOR GRAND JURY TESTIMONY.**

Any subsequent civil action based upon defendant's grand jury testimony or conversations with the district attorney in preparation of defendants Grand jury testimony is protected by the absolute immunity set forth by the Supreme Court in its decision in the <u>Rehberg v. Paulk,</u> 132 S. Ct. 1497 (2012).[1]

For example, in <u>Coggins v. Buonora</u>, 776 F.3d 108 (2nd Cir. 2015), cited by plaintiff, the court acknowledged that conversations held in preparation for grand jury testimony falls within the absolute immunity afforded by the Supreme Court in <u>Rehberg</u>. Specifically in footnote seven (7) of the Court's decision, which is within the portion of this decision cited by the plaintiff, the court states

> If discovery where to establish that Buonora's statements to the district attorney constituted preparatory activity conducted in advance of his grand jury testimony, Buonora would be entitled to absolute immunity for the limited contact, as stated by the Supreme Court in <u>Rehberg</u> and discussed above.

Thus, the Court unambiguously qualified its decision to ensure that the protections afforded under <u>Rehberg</u> were not circumvented by attempting to base a subsequent civil action on conversations had in preparation for grand jury testimony.

In this regard, the Court in <u>Rucks v. City of New York</u>, 96 F. Supp. 3d 138 (S.D.N.Y. 2015), also cited by the plaintiff, followed the qualification expressed in <u>Coggins</u> stating that a determination of whether conversations with the district attorney are immunized "requires a

---

[1] Plaintiff acknowledges this immunity in footnote 15 of his Brief in Opposition to defendants' motion for summary judgment.

Court considering a claim of denial of a fair trial based upon statements (rather than physical evidence) to distinguish between preparatory activity and pre-preparatory activity in determining absolute immunity." Thus, there is no question that conversations with the district attorney that were for the purpose of preparing for grand jury testimony are immunized from subsequent civil rights action actions. Moreover, the Court in Rucks makes it clear that the determination of whether a conversation was had in preparation for grand jury testimony is one that is to be made by the Court.[2]

Notably, while the plaintiff cites to the Court's decision in Sankar v. City of New York, 2012 U.S. Dist. LEXIS 99975, it is entirely distinguishable from the matter, sub judice. The defendants in Sankar argued that the Supreme Court's ruling in Rehberg protects all of defendant officers activities prior to their grand jury testimony, including the allegedly false statements defendants included in the police report and criminal complaint simply because the defendant subsequently testified before the grand jury. The Court found that such an interpretation of Rehberg would be too broad, which is the language quoted by plaintiff at page 26 of his Brief in Opposition to defendants' motion for summary judgment. However, it is clear that the quoted language is referring to the broad interpretation that defendants are completely immunized from any subsequent civil action **as long as** they testified at the grand jury, which is <u>not</u> the contention made by officers in the matter, sub judice. Defendant officers in this matter, particularly Officers Catala, Gregory and Mendoza simply seek to enforce the absolute immunity with regard to their preparatory conversations with the district attorney, as is required by the Supreme Court in Rehberg.

---

[2] To allow the matter or immunity to go to the jury would be a means by which to get the content of defendant officer's otherwise immunized grand jury testimony and preparatory conversations before the jury, as the contents of the conversations would likely be elicited during the inquiry.

3

Plaintiff has provided no evidence to suggest that the conversation had by defendants Catala, Mendoza, and Marsonico prior to the grand jury testimony for anything but preparation for grand jury testimony. By the time the district attorney had spoken to any of the above mentioned defendants, the criminal complaint had already been signed and the next event in the case was the grand jury.  Thus, any discussions with the district attorney were in preparation for defendant Officers' grand jury testimony.

Accordingly, as Officers Catala, Marsonico and Mendoza met with the district attorney in preparation for their grand jury testimony plaintiff's claims for denial of a fair trial and malicious prosecution based upon these conversations must be dismissed.

### POINT II

**NOTWITHSTANDING PARTICIPATION IN PREPARATION OF THE CRIMINAL COMPLAINT AND THE OMNIFORM ARREST AND COMPLAINT FORMS, CORDERO CANNOT BE LIABLE FOR A DENIAL OF FAIR TRIAL**

**Whether an officer forwarded information known to be false to the district attorney is an issue that can be determined as a matter of law.**

An action for denial of a fair trial requires that the defendant forward known false information to the district attorney.  Apostol v. City of New York, 2014 U.S. Dist. LEXIS 40487 (E.D.N.Y.)("[the] forwarding to the prosecutors of known false evidence works as an unacceptable corruption of the truth-seeking function of the trial process").  A finding that someone acted with the knowledge that the information transmitted was false is different than a finding that someone acted intentionally. See generally, Model Penal Code §2.02(a) and (b); United States ex re. Wood v. Allen, Inc., 2017 U.S. Dist. LEXIS 50103 (S.D.N.Y.); Arroyo v. Jones, 695 F.2d 35 (2nd Cir. 1982). The question as to whether Officer Cordero forwarded information that he knew to be false is a matter that should be decided as a matter of law. Even

4

viewing the facts in the light most favorable to the plaintiff, there is no question that Officer Cordero did not know the information forwarded to the district attorney was not correct, which is required to sustain a claim for denial of a fair trial, and malicious prosecution.

Importantly, plaintiff admits at page 9, at paragraphs 42 and 44 of his Brief in Opposition to defendants' motion for summary judgment that it is undisputed that defendant Cordero relied on the information conveyed to him by his fellow officers in preparing the police report and in communicating the circumstances of plaintiff's arrest to the District Attorney's Office. Plaintiff may not assert the argument that defendant Cordero possessed personal knowledge of the events, as it is contradictory to his own statement of undisputed facts. Thus, there is no dispute that Officer Cordero was not with Officers Gregory and Catala during their initial interaction with the plaintiff, and relied on the information provided to him by his fellow officers in filling out the reports and speaking with the DA.[3]

Accordingly, as was discussed in the defendants' Brief in Support of the motion for summary judgment, under the fellow officer room, defendant Cordero was permitted to assume the information provided to him by his fellow officers was correct and accurate. Thus, in forwarding that information to the District attorney, defendant Cordero did not forward known false information, and plaintiff's claim for malicious prosecution and denial of a fair trial must be dismissed as to Officer Cordero

---

[3] While plaintiff point to Officer Rivera's testimony to suggest that Officer Cordero was in the area and must have seen the events as they transpired, in that same deposition plaintiff's counsel asks Officer Rivera, "Did there come a point where you were actually close enough to observe Mr. Bacote struggling with the officers?" See, the deposition testimony of Officer Rivera, annexed to the Declaration of Vanessa M. Corchia, dated May 10, 2017 as Exhibit "W" at pgs. 30-31. Thus, admitting that the location of Officers Rivera and Cordero was not close enough to observe the altercation between Officers Catala and Gregory, and the plaintiff. Moreover, Officer Rivera testified that he and Officer Cordero's attention was on the father and son and did not turn their attentions to the plaintiff until they heard officer Catalan scream in pain. See, Exhibit "W" at pg. 30.

## POINT III

### CONTRARY TO PLAINTIFF'S CONTENTION, HE HAS FAILED TO ESTABLISH A POST-ARRAIGNMENT DEPRIVATION OF LIBERTY

Deprivation of plaintiff's liberties must be established for plaintiff to maintain a 42 USC §1983 claim for both malicious prosecution and denial of a fair trial. Plaintiff in this case has failed to establish that the requirement to appear in court on several occasions constitutes a deprivation of liberty. Accordingly, absent a deprivation of liberty plaintiff's cause of action for malicious prosecution and denial of a fair trial fails against defendants.

Plaintiff sites to a number of cases, all of which rely on the 2 to 1 holding in Murphy v. Lynn, 118 F.3d 983 (2nd Cir.); however, this case is widely debated. The plaintiff in Murphy was arrested following a traffic stop. As a result of his arrest plaintiff was indicted by grand jury on two counts of felony assault in the second degree and one count of resisting arrest. Ultimately, plaintiff's case was dismissed on speedy trial grounds. In determining that the plaintiff in Murphy had suffered a deprivation of liberty the court acknowledged that the "freedom to travel from state to state is a fundamental right that can properly be restricted only in the narrowest circumstances." The Court stated that the condition that the plaintiff not leave the state until the matter was resolved was an "obvious curtailment of his otherwise unquestionable constitutional right to travel outside of the state." Accordingly, the Court found that the fact that Murphy was restrained in his ability to leave the state *together with* his requirement to appear for Court appearances equated to a deprivation of liberty.

Plaintiff herein does not contend he was so restrained. He was released on his own recognizance (p. 91 lines 11-13).

Some courts have interpreted <u>Murphy</u> in the manner that plaintiff has, grasping on the one sentence of the opinion where the court stated "he remains apprehended, arrested in his movements indeed 'seized' for trial, so long as he is bound to appear in court and answer to the states charges." However, it is clear from a reading of the entire opinion, that the court's finding of a deprivation of liberty was based primarily on the restraint of the plaintiff's ability to leave the state of New York until the completion of his prosecution.

Conversely, many courts have held that merely being required to appear in court for appearances following an arrest is not sufficient to support a claim for deprivation a liberty. See, <u>Porat v. Lincoln Towers Cmty. Ass'n</u>, 2005 U.S. Dist. LEXIS 4333 (S.D.N.Y.); <u>Burg v. Gosslin</u>, 591 F.3d 95 (2nd Cir. 2009); <u>Thomas v. City of New York</u>, 2008 U.S. Dist. LEXIS 6155 (S.D.N.Y.); <u>Bissinger v. City of New York</u>, 2007 U.S. Dist. LEXIS 70155 (S.D.N.Y); <u>Nieves v. McSweeney</u>, 241 F.3d 46 (1st Cir. 2001); <u>Britton v. Maloney</u>, 196 F.3d 24 (1st Cir. 1999).

For example in <u>Nieves</u>, *supra*, the court noted that the plaintiff cited <u>Murphy</u> and a number of cases that followed <u>Murphy</u>.[4] The court stated"

> However, Murphy and his progeny are readily distinguishable from the present case. One of the conditions imposed upon the Murphy plaintiffs released was that he not leave the state of New York pending the resolution of the charges against him. Plaintiff does not allege that he was subject to any such restriction on his travel.

Accordingly, the court found the plaintiff failed to establish that he had suffered a deprivation of liberty.

Likewise, and <u>Thomas</u>, *supra*, the plaintiff brought an action under §1983 alleging that the requirement to appear for approximately 3 court appearances resulted in a deprivation of his

---

[4]  The plaintiff in *Nieves* cited to <u>Kirk v. Metropolitan Transp. Auth.</u>, 2001 U.S. Dist. LEXIS 2786 (S.D.N.Y.); <u>Kirton v. Hassel</u>, 1998 U.S. Dist LEXIS 6535 (E.D.N.Y); and <u>Sassower v. City of White Plains</u>, F.Supp. 652 (S.D.N.Y. 1998); all of which were cited by plaintiff in the matter, *sub judice*.

liberty.  The Court found that the requirement that the plaintiff appear in court did not rise to the level of an infringement upon plaintiff's constitutional rights, again distinguishing <u>Murphy</u> on the grounds that <u>Murphy</u> required not only Court appearances but also a restriction on plaintiff's ability to travel.

Notably, the dissenting opinion in <u>Murphy</u>, which was written by Judge Jacobs, states, quite correctly, that

> under the majorities analysis, every defendant in a criminal case will be deemed to be seized: at one end of the continuum, a defendant will be in jail in this be seized in fact; at the other end, I defend it will be released on the cognizance open parentheses like Murphy) and B team season anyway by reason of the incidental travel restriction in the obligation to appear in court.

Thus, Judge Jacob found that a limited restriction of interstate travel did not rise to the level of a deprivation of liberty.

Contrary to plaintiff's contention, no distinction should be drawn between plaintiffs who are given non-felony summonses and plaintiffs were arrested on felony charges and released on their own recognizance, as both scenarios result in the plaintiff being released with the requirement to appear in Court to address the charges against them. Importantly, the plaintiff in <u>Murphy</u> was indicted on felony charges and the finding of deprivation of liberty was based primarily on the requirement that the plaintiff not leave the state of New York while the charges were pending.

Just as in the above mentioned cases, plaintiff in the matter, sub judice, has not alleged that he was restrained from leaving the state of New York during the pendency of the charges brought against him. Plaintiff merely alleges that he was required to show up for court appearances over the course of less than one year.   As expressed by Judge Jacobs in Murphy, if

the requirement to appear in court following plaintiff's arraignment is the only necessary requirement to show a deprivation of liberty, then every plaintiff would suffer a deprivation of liberty, thus, eliminating any distinction between the State claim for malicious prosecution and federal claim.

Accordingly, he has not established that he has suffered and deprivation a liberty and his claims for malicious prosecution and denial of a fair trial must be dismissed on this ground.

## POINT IV

### EXCESSIVE FORCE

**Plaintiff must establish the personal involvement of the individual officers to maintain a claim for excessive force.**[5]

The Second Circuit requires "personal involvement of a defendant as a prerequisite to a damages award for a §1983 claim." Espada v. Schneider, 522 F. Supp. 2d 544 (S.D.N.Y. 2007) citing Wright v. Smith, 21 F.3d 496 (2nd Cir. 1994). Thus, even if it was found that as a whole the police used excessive force against the plaintiff, it must be established that each individual defendant were personally involved in the use of excessive force for plaintiff to recover against the individual defendants. Gomez v. Vill. Of Sleepy Hollow, 2011 U.S. Dist. LEXIS 72576 (S.D.N.Y). The "inability to identify which particular officer or officers [caused the specific claimed excessive force] dooms [plaintiff's] claim that any particular officer used this type of force." Johnson v. City of New York, 2008 U.S. Dist. LEXIS 79894 (S.D.N.Y).

While a plaintiff is able to establish personal involvement through circumstantial evidence, Caravalho v. City of New York, 2016 U.S. Dist. LEXIS 44280 (S.D.N.Y.), proof that a defendant was present during the alleged use of excessive force does not amount to a claim that said defendant was personally involved in the use of excessive force. Bilan v. Davis, 2013 U.S.

---

[5] Defendants maintain that the force applied was reasonable. Further, defendants do not concede that the claim of excessive force must to the jury; particularly with regard to those defendants who did not utilize any force.

Dist. LEXIS 107619 (S.D.N.Y.); see also Pierre-Antoine v. City of New York, 2006 U.S. Dist. LEXIS 28963 (S.D.N.Y.).  In Bilan, *supra*, plaintiff was in the custody of the New York City Department of Correction at GMDC as "pre-trial detainee."  Plaintiff brought a claim based on an incident that occurred while he was at GMDC, when a struggle broke out between another detainee and officers in the visiting area.  During the struggle plaintiff was stuck in his lower back, and fell to the floor hitting his shoulder.  He stated that there were 10-15 officers in the room.  He alleged that he was suddenly kicked from behind; however he did not identify who kicked him.  He simply stated that Officer Fernandez was standing closest to him when he was kicked.  This was insufficient to create a triable issue of fact as to any personal involvement by that officer.  See also, in Caravalho v. City of New York, 2016 U.S. Dist. LEXIS 44280 (S.D.N.Y.).

Here, there is not even circumstantial evidence to suggest that Officers Mendoza or Lambert were involved in the excessive force.  First, for the duration of the incident Officer Mendoza, an EMT, was tending to Officer Catala after he suffered an ankle fracture and dislocation as a result of the altercation with plaintiff.  Thus, there is no evidence to suggest that Officer Mendoza was in any way involved in the alleged excessive force.  Finally, Officer Lambert was in no way involved in attempting to retrain plaintiff, and thus could not have been involved in the alleged excessive force.

Accordingly, Officers Mendoza and Lambert are entitled to summary judgment with regard to plaintiff's claim for excessive force.[6]

---

[6] It must be noted that while plaintiff contends that if the search was illegal, **any** force employed would be deemed excessive, the Court in Bashir v. Rockdale County, 445 F.3d 1323 (11th Cir. 2006), cited by plaintiff, found that a claim for excessive force grounded in the argument that the arrest was illegal is already encompassed in the plaintiff's claim for false arrest.  Thus, the claim for excessive force must be dismissed.

**Failing to intervene is a separate cause of action, and any alleged failure to intervene on the part of defendant Officers does not render them liable for the underlying constitutional violation.**

Contrary to plaintiff's contention, failing to intervene does not make a defendant liable for excessive force; particularly in light of the fact that plaintiff brought a cause of action for failure to intervene separate and apart from the cause of action for excessive force.  See, the Third Amended Complaint annexed to the Corchia Dec. as **Exhibit "G"**.  A defendant "cannot be liable for both the underlying constitutional deprivation and a failure to intervene to stop themselves from committing the violation."  Arbuckle v. City of New York, 2016 US Dist. LEXIS 13657 (SDNY).

To be liable for failure to intervene the defendant must have had "a realistic opportunity to intervene to prevent the harm from happening."  Pesola v. City of New York, 2016 U.S. Dist. LEXIS 42977 (S.D.N.Y. Mar. 30, 2016).  Thus, a defendant is entitled to summary judgment with regard to his failure to intervene if no reasonable jury could find that the officer had time to prevent the constitutional violation.  Johnson v. City of New York, 2008 U.S. Dist. LEXIS 79894 (S.D.N.Y.).  Moreover, to be found liable "the failure to intercede must be under the circumstances making it **objectively unreasonable** for [an officer] to believe that his fellow officers' conduct did not violate [a suspect's clearly established statutory of constitutional rights of which a reasonable person would have know.]" Gomez v. Vill. Of Sleepy Hollow, 2011 U.S. Dist. LEXIS 72576 (S.D.N.Y.).  Accordingly, if an officer presented with the same facts known to the defendant Officer at the time of the occurrence would not have intervened, defendant Officer is entitled to summary judgment.

In Pierre-Antoine v. City of New York, 2006 U.S. Dist. LEXIS 28963 (S.D.N.Y.), the plaintiff was walking down the street carrying a cane sword in open view.  Officer Williams

approached plaintiff, took hold of the witness and attempted to handcuff him.  A scuffle followed and plaintiff Gulshan, Williams other officers when down to the ground.     Plaintiff Paul attempted to stop officers from arresting Gulshan by pushing against Officer Williams.  Plaintiff Paul claimed that officers grabbed him, hit and kicked him for ten to fifteen seconds.  Neither plaintiff was able to identify the officers that engaged in the excessive force.

The Court dismissed plaintiff Paul's claims for failure to intercede against Williams because

> There is neither evidence nor any specific allegation that Williams himself actually observed [the] use of force and had a realistic opportunity to intervene to prevent it during the approximately fifteen seconds during which it is alleged to have occurred.  On the contrary, the only relevant evidence in the record suggests that Williams was engaged in a struggle on the ground with Gulshan and thus could not have intervened even if he had observed an excessive use of force during the fifteen seconds in question.

Moreover, the Court found Williams would have been entitled to qualified immunity because "it would not be clear to a reasonable officer that, at or about the same time that he was attempting to arrest a suspect engaged in resistance, he also had an affirmative duty to intercede to prevent fifteen seconds of limited force against another disorderly suspect at the scene."

Here, Officers Mendoza did not have a realistic opportunity to intervene in the alleged excessive force.  As stated above, Officer Mendoza was tending to Catala who had a fractured ankle, thus, it was not realistic that she would have had the opportunity to intervene.

Moreover, Officers Rivera, Cordero, Marsonico, Lambert, Leath and Ifill are entitled to summary judgment with regard to their alleged failure to intervene because, under the circumstances, it was objectively reasonable to believe that no constitutional violation had occurred.  The above mentioned officers were responding to either a radioed call, the loud argument between Catala and plaintiff or the scream of Catala breaking his leg.  By the time they

arrived, they Officers Gregory and Catala were already trying to place plaintiff under arrest. Thus, the facts available to them at the time supported a conclusion that there was probable cause to arrest the plaintiff.  Moreover, it was objectively reasonable to believe the force used was reasonable.   In determining whether force is reasonable the Court must assess the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest. Graham v. Connor, 490 U.S. 386 (1989).  In applying these factors to the facts available to defendant officers at the time, it was objectively reasonable for defendant Officers Marsonico there was no constitutional violation for which they were required to intervene.

Accordingly, Officer's Officers Rivera, Cordero, Marsonico, Lambert, Leath and Ifill are entitled to summary judgment as to their alleged failure to intercede with regard to the excessive force.

## POINT V

### DESPITE PLAINTIFF'S CONTENTION, NO QUESTION OF FACT EXISTS WITH REGARD TO THE UNDERLYING FACTS AVAILABLE TO CERTAIN DEFENDANTS AT THE TIME OF PLAINTIFF'S ARREST.

There is no question of fact with regard to the circumstances that underlie the contention that defendant officers who approached plaintiff following the initial interaction with the plaintiff had probable cause, or at least arguable probable cause.  In determining whether probable cause or arguable probable cause exists, the officer's motivation for the arrest is not to be considered. Singer v. Fulton County Sherriff, 63 F.3d 110 (2nd Cir. 1995); Richardson v. N.Y.City Health & Hosps. Corp., 2009 U.S. Dist. LEXIS 25247 (S.D.N.Y.). Moreover, "a finding of probable cause turns on the *knowledge of the arresting officers* at the time of the arrest**.**" Gonzalez v. City of New York, 2016 US Dist. LEXIS 134474 (SDNY).  Furthermore, state officials performing

discretionary functions are shielded from liability for monetary damages if they can prove that their conduct does not violate clearly established statutory of constitutional rights which any reasonable person would have known.  Anderson v. Creighton, 483 US 635 (1987); Pinter v. City of New York, 48 Fed. Appx. 99 (2nd Cir. 2011).  A clearly established right is one which is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Gonzalez v. City of New York, 2016 U.S. Dist. LEXIS 134474 (S.D.N.Y.).  With respect to probable cause, qualified immunity applies and shields individual officers from liability "if he can establish that there was arguable probable cause… Arguable probable cause exists if (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  O'Donnell v. Card, 2013 U.S. Dist. LEXIS 106609 (S.D.N.Y.).

In Annunziata v. City of New York, 2008 U.S. Dist. LEXIS 42097 (S.D.N.Y), the Court found that defendant Detectives Walker and Gasser had probable cause to arrest the plaintiff based upon the fellow officer rule and qualified immunity.  The Court stated

> A police officer is entitled to qualified immunity if it was objectively reasonable for him to believe that his actions did not violate plaintiff's clearly established rights.  A police officer is entitled to rely on the contents of a fellow officer's radio report and to presume that a statement alleging criminality is justified by probable cause.  Therefore while an arrest may be found unconstitutional, if probable cause was in fact lacking, an officer who participates in the arrest is nonetheless immune from suit in his or her individual capacity under the doctrine of qualified immunity, if it was objectively reasonable for him to rely on a fellow officer's report indicating the existence of probable cause.

The Court found that plaintiff failed to offer any evidence to establish that the Detectives had any reason to disbelieve that probable cause existed for the arrest.  Thus, the Court found

that Detectives Walker and Gasser were entitled to qualified immunity as to plaintiff's false arrest claim.

Similarly in <u>Gomez v. Vill. of Sleepy Hollow</u>, 2011 U.S. Dist. LEXIS 72576 (S.D.N.Y.), when defendant Officers Gasker and D'Allesandro arrived the plaintiff was already involved in a struggle with Officer Quinoy. Accordingly, the Court found that a reasonable officer could determine that there was probable cause for plaintiff's arrest. Accordingly, the Court dismissed the plaintiff's claim for false arrest, excessive force and failure to intervene as against Officers Gasker and D'Allesandro.

Here, it is undisputed that only Officers Gregory and Catala initially approached the plaintiff. It is further undisputed that Officer Catala suffered an ankle fracture and dislocation during the initial interaction with plaintiff. Further, plaintiff admits that at some point after being initially approached by Officer's Gregory and Catala, he was on the ground with officer trying to handcuff him. Accordingly, there is no question as to the facts available to the officers that arrived after the initial interaction, whether responding to a radioed call or to the Catala's scream after breaking his ankle. These responding officers had probable cause to arrest the plaintiff for assaulting an officer, or resisting arrest. Moreover, even assuming *arguendo*, that the officers did not possess actual probable cause, there was questionable probable cause in that circumstance, and thus defendant Officers Rivera, Cordero, Marsonico, Lambert, Leath, and Ifill, are entitled to qualified immunity, and plaintiff's claim for false arrest must be dismissed as against them.

**Irrespective of the fact that an arrest can be effectuated prior to formally placing an individual under arrest, defendant Officers cannot be held liable for false arrest if they were not personally involved in the arrest.**

While an individual may be deemed to have been arrested prior to any physical contact with that individual, to maintain a claim under §1983 for false arrest, it must be established that the individual defendants were personally involved in the arrest.   To be deemed to have been personally involved in the arrest, the officer must have been involved in the events that led to plaintiff feeling as though he was not free to leave. See, Cruz v. City of N.Y., 2017 U.S. Dist. LEXIS (S.D.N.Y.).

In Cruz, *supra*, plaintiff claimed that Officer Donnelly was personally involved in his arrest because "(1) [he] was listed as the arresting officer in the arrest records, (2) [he] processed Cruz throughout the arrest process, including by driving him from this apartment to the precinct and (3) [he] ultimately signed under oath the criminal court complaint charging Cruz…" However, the Court found that this was not sufficient to find that Donnelly was personally involved in Cruz's arrest.   Donnelly was not among the officers that initially encountered the plaintiff in his apartment and who handcuffed him.   The Court found that the evidence established that Officer Donnelly did not come into contact with the plaintiff until after he had been arrested stating

> Based on Cruz's account, by the time Donnelly entered the apartment, Cruz had already been slammed into a wall, handcuffed, and thrown onto the floor by multiple armed officers who entered his apartment.  By then, he was clearly not free to leave and unavoidably, had been arrested. (internal quotations and citations omitted).

The Court went on to say

> [E]ven crediting that Donnelly was present at the point that Cruz signed for the package [which was the grounds for his arrest], that would not affect the result here; because there is no evidence that Donnelly participated in the arrest that followed the delivery.

Accordingly, the Court found that Officer Donnelly was not personally involved in plaintiff's arrest and dismissed plaintiff's false arrest claim as against Officer Donnelly.

While plaintiff cites to a number of cases to support his contention that an arrest can take place without physically touching the plaintiff, none of the cases cited speak to the personal involvement requirement of §1983 cases.  For example, plaintiff cites to <u>Posr v. Doherty</u>, 944 F.2d 91 (2nd Cir. 1991) and <u>Oliveira v. Mayers</u>, 23 F.3d 642 (2nd Cir. 1994).  In both cases the Court ruled that an arrest had occurred prior to the plaintiffs' formal arrests.  However, neither Court opines as to the personal involvement of the individual officers.  In <u>Posr</u> the officer in question was physically restraining the plaintiff prior to his formal arrest, thus, there was no question of his personal involvement.  Similarly, in <u>Oliveira</u>, *supra*, the defendant Officer had barricaded plaintiffs' vehicle with their patrol cars, ordered the plaintiffs out of the car, instructed them to kneel and handcuffed them.  Thus, again, the Court did not opine as to the personal involvement of the officers.  Notably, in both <u>Posr</u> and <u>Oliveria</u> the plaintiffs were physically restrained in some way by the defendant Officers prior to their formal arrest.

Conversely, in the matter, *sub judice*, Officer's Mendoza, Marsonico, Rivera and Lambert, though present, were not personally involved in plaintiff's arrest.  Officer Mendoza was tending to Officer Catala following his injury.  Thus, was not involved in the restraint on plaintiff's ability to leave. Officer Rivera had left the scene of the occurrence to flush his eyes. Further, it is clear from the video that Marsonico was not involved in the arrest; rather he was simply present at the periphery of the melee.  Finally, just as in <u>Cruz</u>, while Officer Lambert walked plaintiff to the van after he was handcuffed, he did not participate in the arrest of plaintiff and contrary to plaintiff's contention, being present, and ready to step in if necessary is not equivalent to being personally involved in an arrest.

## CONCLUSION

For the foregoing reasons defendants' motion for partial summary judgment must be granted.


Dated:  New York, New York,
        June 30, 2017

                                    _____/S/_____
                                    VANESSA M. CORCHIA (VC 6458)
                                    Armienti, DeBellis, Guglielmo & Rhoden, LLP
                                    Attorneys for Defendants
                                    39 Broadway, Suite 520
                                    New York, New York 10006